1   Robb C. Adkins (SBN: 194576)
    Chardaie C. Charlemagne (*Admitted Pro Hac Vice*)
2   BAKER & HOSTETLER LLP
    Transamerica Pyramid Center
3   600 Montgomery Street, Suite 3100
    San Francisco, CA
4   Telephone:    415.659.2600
    Facsimile:    415.659.2601
5   Email:        radkins@bakerlaw.com
                  ccharlemagne@bakerlaw.com
6
    Attorneys for JOHN FRANCIS PORTER
7

8               IN THE UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,          )  **CASE NO.: 22-CR-270-WHO**
                                       )
12                   Plaintiff,        )  **HON. WILLIAM H. ORRICK**
                                       )
13          v.                         )  **NOTICE OF MOTION AND MOTION**
                                       )  **TO DISMISS, OR IN THE**
14  JOHN FRANCIS PORTER,               )  **ALTERNATIVE, FOR A BILL OF**
                                       )  **PARTICULARS**
15                   Defendant.        )
                                       )  Date:          December 1, 2022
16                                     )  Time:          1:30 pm
                                       )  Excludable Time:   23 Days
17                                     )
                                       )

18

19          **PLEASE TAKE NOTICE** that on December 1, 2022 at 1:30 pm or on a date to be set by

20  the Court, defendant JOHN FRANCIS PORTER, through counsel, Robb C. Adkins, will and does

21  hereby move to dismiss the Indictment, or in the alternative, for a bill of particulars as to the

22  allegations of Counts One and Two of the Indictment.

23          Defendant moves to dismiss the Indictment in its entirety, pursuant to Federal Rules of

24  Criminal Procedure 7 and 12, the record in this action, the memorandum of points and authorities

25  filed concurrently with this notice, and such argument as counsel may present prior to a decision in

26  this matter.

27          The parties have met and conferred regarding a stipulated briefing schedule for this motion,

28  but could not agree on a proposed schedule.  Defendant proposes and respectfully requests a

briefing schedule in accordance with Criminal Local Rule 47-2 and your Honor's previous guidance that Defendant file any anticipated motion to dismiss to be heard by early December 2022. Accordingly, Defendant proposes that the government's opposition be filed on or before November 15, 2022 and Defendant's Reply be filed on or before November 21, 2022.   In accordance with this court's scheduling calendar and Criminal Local Rule 47-2, Defendant respectfully requests a hearing date on December 1, 2022 or some other date to be set by the Court.

The government respectfully requests additional time to respond to the motion to dismiss because the government plans to seek a superseding indictment with additional charges that were part of the same course of conduct as charged in the Indictment.  The government has previously informed defense counsel that the government plans to seek a superseding indictment on November 29, 2022.  Accordingly, the government respectfully requests additional time to respond to the motion to dismiss because it may become moot once the superseding indictment would be filed.  The government respectfully submits that allowing the government to respond after the superseding indictment would also conserve judicial resources.  The government requests to file its response to the motion to dismiss no later than December 6, 2022, a week after the superseding indictment.

Defendant respectfully opposes the government's proposed briefing schedule.  For reasons previously discussed before the Court during the hearing on September 8, 2022, Defendant has a strong desire to ensure that his trial commences as scheduled on February 6, 2023.  On November 1, 2022, the government informed Defendant that it had concluded the bulk of its discovery production.  Defendant informed the government that he would then be filing his motion to dismiss. The government then informed Defendant that the government planned to supersede the indictment by the end of November.  Defendant is mindful of the Court's request that he file his motion to dismiss so that it will be heard in early December.  Defendant has no ability to affect when or if the government decides to file a superseding indictment, and certainly shares the desire to conserve judicial resources.  However, Defendant respectfully believes that the government's apparent decision to file a superseding indictment at the end of this month, one year and seven months after

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    filing its criminal complaint against Defendant, based on the same course of conduct as the current

2    indictment, should not be a basis to delay briefing in this matter by a month.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

|  | | | **Page** |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 2 |
| | A. | John Porter and Recology | 2 |
| | B. | The Allegations in the Indictment | 3 |
| | | 1. Allegations of Mr. Porter Purportedly Entering a Criminal Bribery Conspiracy in 2015 | 3 |
| | | 2. Allegations Regarding Non-Profit A | 5 |
| | | 3. Allegations of Mr. Giusti's Conduct | 5 |
| | | 4. Allegations of Mr. Porter Making a Bribe by Approving a Payment for a Holiday Party in 2018 | 7 |
| III. | LEGAL STANDARD | | 8 |
| IV. | ARGUMENT | | 9 |
| | A. | The Indictment Fails to Allege that Mr. Porter Bribed Mr. Nuru Under 18 U.S.C. § 666 | 9 |
| | | 1. The Indictment Fails to Allege a "Bribe" Based on Donations to a DPW Holiday Party and Clean-Up Events or that Mr. Porter Gave Anything of Value to Mr. Nuru as a Private Gain | 10 |
| | | 2. The Indictment Fails to Allege that Mr. Porter Had Corrupt Intent | 12 |
| | | 3. The Alleged Conduct Is Excluded from § 666 | 15 |
| | B. | The Indictment Fails to Allege that Mr. Porter Conspired to Bribe Mr. Nuru Under 18 U.S.C. § 371 | 18 |
| | C. | The Forfeiture Allegations in the Indictment Are Unsupported and Expressly Do Not Apply to the Charges Against Mr. Porter | 18 |
| | D. | The Government Must Provide a Bill of Particulars | 19 |
| | | 1. Count One: 18 U.S.C. § 371 | 20 |
| | | 2. Count Two: 18 U.S.C. §§ 2 and 666(a)(2) | 21 |
| | | 3. Forfeiture | 22 |
| V. | CONCLUSION | | 22 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Kelly v. United States,*
    140 S. Ct. 1565 (2020) ........................................................................................................ 1

*Martinez-de Ryan v. Whitaker,*
    909 F.3d 247 (9th Cir. 2018) .................................................................................. 4, 5, 8, 12

*McCormick v. United States,*
    500 U.S. 257 (1991) ........................................................................................................... 1

*McDonnell v. United States,*
    136 S. Ct. 2355 (2016) ....................................................................................................... 1

*People v. Hyde,*
    156 A.D. 618, 141 N.Y.S. 1089 (1913) ........................................................................... 11

*Sabri v. United States,*
    541 U.S. 600 (2004) ......................................................................................................... 10

*Skilling v. United States,*
    561 U.S. 358 (2010) ........................................................................................................... 1

*United States v. Blagojevich,*
    794 F.3d 729 (7th Cir. 2015) ........................................................................................... 10

*United States v. Boren,*
    278 F.3d 911 (9th Cir. 2002) ............................................................................................. 9

*United States v. Cecil,*
    608 F.2d 1294 (9th Cir. 1979) ......................................................................................... 20

*United States v. Choy,*
    309 F.3d 602 (9th Cir. 2002) ........................................................................................... 18

*United States v. Davis,*
    183 F.3d 231 (3d Cir. 1999), *amended,* 197 F.3d 662 (3d Cir. 1999) ........................ 10, 11

*United States v. Frega,*
    933 F. Supp. 1536 (S.D. Cal. 1996) .................................................................................. 9

*United States v. Giese,*
    597 F.2d 1170 (9th Cir. 1979) ......................................................................................... 20

*United States v. Kaplan,*
    836 F.3d 1199 (9th Cir. 2016) ......................................................................................... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*United States v. Long*,
706 F.2d 1044 (9th Cir. 1983)................................................................20

*United States v. McNair*,
605 F.3d 1152 (11th Cir. 2010)...................................................4, 12, 13

*United States v. Mills*,
140 F.3d 630 (6th Cir. 1998)...............................................................1, 15

*United States v. Nuru*,
Case No. 21-cr-00490-001-WHO, ECF No. 112 (Aug. 18, 2022) ................................*passim*

*United States v. Rosi*,
27 F.3d 409 (9th Cir. 1994).....................................................................8

*United States v. Short Accountancy Corp.*,
785 F.2d 1448 (9th Cir. 1986)..................................................................9

*United States v. Sorich*,
523 F.3d 702 (7th Cir. 2008)..................................................................10

*Yeargain v. United States*,
314 F.2d 881 (9th Cir. 1963)..................................................................20

**Statutes**

18 U.S.C. § 2 ...........................................................................3, 8, 9, 21

18 U.S.C. § 371 ............................................................................*passim*

18 U.S.C. § 666(a)(2) .....................................................................*passim*

18 U.S.C. § 666(c) .................................................................2, 15, 18

18 U.S.C. § 981(a)(1)(C)....................................................................18

18 U.S.C. § 981(a)(1)(D)(i).................................................................19

18 U.S.C. § 1952 .............................................................................11

28 U.S.C. § 2461(c) .........................................................................18

New York Penal Law § 200.25 ...............................................................11

**Rules**

Federal Rule of Criminal Procedure 7(c)(1) ............................................8

Federal Rule of Criminal Procedure 7(f) ...........................................19, 20

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) ...............................1, 8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**Other Authorities**

Black's Law Dictionary 435 (11th ed. 2019) ............................................................. 13

H.R. Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138 ............. 15, 18

S. Rep. No. 98–225, p. 370 (1983) ...................................................................... 10

U.S. Const., Fifth Amendment .......................................................................... 20

U.S. Const., Sixth Amendment .......................................................................... 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

Pursuant to Federal Rules of Criminal Procedure 7(c) and 12(b)(3)(B)(v), defendant John Francis Porter respectfully submits this memorandum of law in support of his motion to dismiss the Indictment, or in the alternative, for a bill of particulars.

## I.   INTRODUCTION

The Indictment presents a seemingly novel theory of prosecution under a federal criminal statute, known colloquially as the "federal programs bribery statute," 18 U.S.C. § 666.   The government attempts to allege bribery under § 666 based upon two payments to non-profit organizations to support city clean-up efforts and a holiday party, where the payments went to non-profit organizations for their stated purposes and were not misdirected to any public official.   The defense is unaware of any case in which the government has tried to extend § 666 in this way. Congress made clear that, "despite its abhorrence for acts of bribery, not every such misdeed should be subjected to federal oversight and punishment," *United States v. Mills*, 140 F.3d 630, 632 (6th Cir. 1998).   Nevertheless, in certain instances, federal prosecutors seek to impermissibly expand the reach of such statutes, requiring courts to rein them in.   *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020); *McCormick v. United States*, 500 U.S. 257, 273 (1991); *Skilling v. United States*, 561 U.S. 358 (2010); *McDonnell v. United States*, 136 S. Ct. 2355 (2016).   As explained below, the Indictment in this case impermissibly stretches the boundaries of the federal programs bribery statute beyond its breaking point.

The types of actions that make up the heartland of bribery charges are wholly absent here. There are no allegations of illicit payments by Mr. Porter to a government official for private gain. No allegations of concealment, obstruction, or destruction of evidence.   No allegation of any personal benefit to Mr. Porter.   No allegation that Mr. Porter knew that payments approved in the regular course of Recology's business were unlawful.   And no allegation that Mr. Porter gave anything of value to Mohammed Nuru for his personal benefit.

To the contrary, the government alleges that Mr. Porter eventually assumed a position at Recology that included the responsibility to approve payments that had been approved by his predecessor in the regular course of business to the same entities and in the same way.   These payments were used for their intended purpose and were never misused or secretly funneled to Mr.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nuru or any public official.  Tellingly, Mr. Porter's predecessor who approved these same payments to these same entities was never charged.

The Indictment is fatally flawed and should be dismissed for five reasons.  First, the payment of a donation to a charity to fund a holiday party or to a non-profit for city clean-up events, both of which occurred as intended by the payment and were never misdirected to a public official, cannot—as a matter of law—constitute a bribe.  Second, the Indictment fails to allege Mr. Porter had the requisite corrupt intent.  Third, the alleged acts of bribery are explicitly excluded under Section 666(c).  Fourth, the Indictment fails to adequately allege that Mr. Porter conspired to bribe Mr. Nuru. Finally, the Indictment includes forfeiture allegations that make no sense because Mr. Porter did not receive any illicit proceeds, and the forfeiture statute cited in the Indictment expressly does not apply to the charges alleged against Mr. Porter.  For these reasons, the Indictment should be dismissed.  At the very least, the government should be required to clarify its allegations with a bill of particulars so that Mr. Porter may be placed on the proper notice necessary to defend himself.

## II.   STATEMENT OF FACTS

### A.   John Porter and Recology

Accepting as true the allegations in the Indictment, as required in a motion to dismiss, the alleged conduct relating to Mr. Porter is as follows.  John Porter is a Certified Public Accountant and the former Vice President and Group Manager for Recology Inc. ("Recology"), a waste management company based in San Francisco.  Indictment ¶ 1–2.  Mr. Porter worked his way up the ranks at Recology, first working at Recology's parent company in June 2013 as an Assistant Controller, then serving as Recology's Controller from January 2015 to December 2017, and finally serving as a Vice President and Group Manager at Recology from January 2018 through January 2021.  *Id.* ¶¶ 2, 8.  In attaining the Vice President and Group Manager position in 2018, Mr. Porter inherited responsibility for approving payments submitted to him from others at Recology.  *Id.* ¶ 8.

Paul Giusti was Recology's Group Government and Community Relations Manager.  *Id.* ¶ 3.  At all times relevant to the Indictment, Mr. Giusti reported to Recology Executive 1, who was the Vice President and General Manager of Recology's San Francisco Group, until Mr. Porter assumed that position in January 2018, at which point Mr. Giusti reported to Mr. Porter.  *Id.* ¶ 6.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Mr. Giusti served as Recology's liaison to San Francisco community organizations and elected officials, including Mr. Nuru, the Director of the San Francisco Department of Public Works ("DPW"). *Id.* ¶¶ 3–4.  Mr. Nuru oversaw the process that governed the rates Recology charged for its residential solid waste collection, and was the city official responsible for setting the "tipping fees" that Recology could charge DPW for dumping materials at a Recology facility. *Id.* ¶ 4.

### B. The Allegations in the Indictment

The Indictment charges Mr. Porter with two counts.  Count One charges Mr. Porter with conspiracy to commit bribery of a public official under 18 U.S.C. § 371. *Id.* ¶¶ 12–13.  Count Two charges Mr. Porter with bribery of a public official in violation of 18 U.S.C. §§ 2 and 666(a)(2). *Id.* ¶¶ 14–17.

The Indictment is drafted in such a way that it fluctuates temporally, making it difficult to follow, and it is unclear in many instances which allegations the government contends Mr. Porter was involved in, had knowledge of, and must defend against.  We attempt below to summarize the Indictment's charges chronologically, and specifically with respect to what appears to be the allegations against Mr. Porter.

### 1. Allegations of Mr. Porter Purportedly Entering a Criminal Bribery Conspiracy in 2015

The Indictment alleges that after a seminal meeting with Mr. Giusti, Mr. Porter joined a criminal bribery conspiracy with Mr. Giusti and other known and unknown individuals "no later than in or about May 2015." *Id.* ¶¶ 5, 9.  The material omissions in the Indictment underscore its defects.  Nowhere does the Indictment allege that at this purported meeting, Mr. Porter corruptly agreed with Mr. Giusti to bribe Mr. Nuru, or to provide Mr. Nuru with any personal benefits or private gain.  Instead, the Indictment merely alleges that in or around February 2015, a question was raised to Mr. Porter's attention about donation payments to an entity referred to as Non-Profit A, and that Mr. Porter was instructed to speak to Mr. Giusti about it. *Id.* ¶ 9.

The Indictment further alleges that, in the spring of 2015, Recology began to prepare a rate application. *Id.*  In May 2015, Mr. Giusti was notified by Non-Profit A that Recology was late in making a scheduled donation payment. *Id.*  Mr. Giusti informed Mr. Porter that Mr. Nuru was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

unhappy about the missed payment.  *Id.*  Mr. Porter responded that he and Mr. Giusti "should meet to discuss politically-sensitive payments that Recology made on a recurring basis to ensure that those payments were made regularly."  *Id.*  Thereafter, Mr. Porter processed a $30,000 recurring payment to Non-Profit A.  *Id.*  Mr. Porter then forwarded an email from Mr. Giusti about Mr. Giusti's "encounter" with Mr. Nuru, to the Assistant Corporate Controller of Recology's parent company, stating that Mr. Nuru approved the rate application and that "keeping [Nuru] happy is important."  *Id.*  The Indictment alleges that Mr. Porter joined a pre-existing conspiracy no later than May 2015; thus, it appears to allege that this otherwise innocuous interchange in May 2015 with Mr. Giusti about a failure of timely payment processing is when Mr. Porter joined a criminal conspiracy to corruptly bribe Mr. Nuru.  *Id.* ¶ 5.

The Indictment only alleges that "[a]t least one purpose of this payment was to influence Nuru's actions in connection with Recology's planned rate increase application."  *Id.* ¶ 9.  The Indictment is written in the passive and does not allege that *Mr. Porter* believed the purpose was to influence the rate application, and more importantly, does not allege that any such purpose in ensuring timely payment to a non-profit was undertaken by Mr. Porter *with corrupt intent*.  *Id.* There are no allegations that this donation was illegally misdirected to Mr. Nuru personally, that Mr. Nuru received any private gain or personal benefit from the donation, or that Mr. Porter otherwise acted "dishonestly" to accomplish "an unlawful end or result" or a "lawful result by an unlawful method or means."  *Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 250 (9th Cir. 2018) (quoting *United States v. McNair*, 605 F.3d 1152, 1193 (11th Cir. 2010)).  Nor are there allegations of concealment or destruction of evidence.  Instead, the Indictment merely states that the meeting resulted in an email sent by Mr. Porter to the Assistant Corporate Controller at Recology's parent company, repeating what Mr. Giusti had told him: that it was important to keep Mr. Nuru happy. *Id*. ¶ 9.  This alone is not surprising, given that Mr. Nuru was the head of DPW, which was in essence a customer of Recology's waste disposal service.  The Indictment does not even allege that Mr. Porter understood the need to "keep Mr. Nuru happy" to mean to do so by illegal and corrupt means.  Instead, according to the Indictment, Mr. Porter was merely seeking to avoid late payments,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    which he communicated in his email to the Assistant Corporate Controller, who was responsible

2    for internal controls and processing payments at the company.  *Id.*

3         2.    Allegations Regarding Non-Profit A

4         Regarding Non-Profit A, the Indictment separately alleges that from at least 2014, several

5    years before Mr. Porter assumed the role of Vice President and before the government even alleges

6    he joined a criminal conspiracy, Recology had begun making regular payments to Non-Profit A.

7    *Id.* ¶¶ 8–9.  The Indictment alleges that "Recology paid or provided to Nuru . . . approximately

8    $150,000 per year, in $30,000 installments, from in or around ***2014*** through approximately the end

9    of 2019, to San Francisco Non-Profit A, with the knowledge that Nuru could ultimately control

10   how this money was used[.]"  *Id.* ¶ 8 (emphasis added).  The allegation is written in such a way

11   that it is unclear who the government is alleging had the "knowledge" that Nuru "could" ultimately

12   control how the money was used.  But presumably it is meant to allege that Mr. Giusti had such

13   knowledge, not Mr. Porter, since the allegation dates back to 2014, four years prior to Mr. Porter's

14   alleged role as a supervisor from 2018 to 2020, as stated at the beginning of the paragraph.  *Id.* ¶¶

15   2, 8.  The Indictment does not provide any other detail, nor does it allege that Mr. Porter had any

16   knowledge whatsoever that Mr. Nuru had control, or "could" control, the money paid to Non-Profit

17   A, that any money was ever misdirected to Mr. Nuru's control, or when Mr. Porter allegedly knew

18   of any such thing as part of any conspiracy.  *Id.* ¶ 8.  This lack of clarity in the Indictment appears

19   to have been intentional, since Mr. Nuru has made clear at his own sentencing that none of the

20   funds contributed to Non-Profit A went to Mr. Nuru's personal benefit and instead were used for

21   the purposes intended by Non-Profit A, which the government has not disputed.  *See* Defendant

22   Mohammed Nuru's Sentencing Memorandum and Motion for Downward Variance at 15, *United*

23   *States v. Nuru*, Case No. 21-cr-00490-001-WHO, ECF No. 112 (Aug. 18, 2022) (explaining that

24   these specific non-profit donations were "unlike" the criminal bribes Mr. Nuru received because he

25   did not receive any of these funds).

26        3.    Allegations of Mr. Giusti's Conduct

27        The Indictment, confusingly, also contains two paragraphs that discuss actions taken by *Mr.*

28   *Giusti* a year prior to Mr. Porter allegedly joining any conspiracy, beginning in or about 2014,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   without making clear which of these actions Mr. Porter knew of or participated in. *Id.* ¶¶ 7–8.

2       First, the Indictment alleges that Mr. Giusti, from *2014* through January 2020, "with the

3   knowledge and approval of his supervisors"—presumably the uncharged Executive 1 and then Mr.

4   Porter at different time periods—directed a stream of benefits to "Nuru or his designees," including

5   gifts and other things of value. *Id.* ¶ 7. The Indictment does not allege what, if any, of these

6   unnamed gifts or things of value Mr. Porter had any role in or knowledge of, to whom each gift or

7   thing was provided, or which of the unnamed gifts or things of value occurred while Mr. Porter was

8   Mr. Giusti's supervisor beginning in 2018. *Id.*

9       Instead of indicating what exactly the government alleges Mr. Porter knew, the Indictment

10  broadly alleges that from 2018 to 2020, Mr. Porter, as Mr. Giusti's supervisor, approved "many of

11  these payments." *Id.* ¶ 8. It then lists various alleged "payments" that "Recology paid or provided

12  to Nuru," again without alleging which, if any, Mr. Porter had any knowledge of or involvement

13  in, including time periods before the government even alleges Mr. Porter joined any conspiracy, as

14  well as prior to his supervisory status over Mr. Giusti in 2018. *Id.* These payments include: (1)

15  "$60,000 in funding for the annual DPW holiday party in the period from 2016 to 2019, in the form

16  of purported 'holiday donations' to the Lefty O'Doul's Foundation for Kids"; (2) "a job for Nuru's

17  son at Recology"; and (3) "Recology-funded internships for Nuru's son, in the summer of 2017 and

18  summer of 2018, at another San Francisco non-profit on whose board Giusti served." *Id.* Because

19  of the way the allegation is written, it is unclear which of these actions the government is alleging

20  Mr. Porter had any role in, although presumably not all of them given that some predate Mr. Porter's

21  role as a supervisor in 2018 as alleged in the same paragraph. *Id.* ¶¶ 6, 8.

22      The Indictment also fails to allege Mr. Porter's knowledge of the acts committed by Mr.

23  Giusti, Mr. Porter's knowledge of the illegality of any such acts, or any unlawful objectives known

24  by Mr. Porter when he performed his role at Recology in approving payments submitted to him. It

25  is insufficient for the government to plead that an employee of Recology (Mr. Giusti) may have

26  engaged in improper conduct, and then attribute that conduct to Mr. Porter due to Mr. Porter's role

27  as the approver of payments, without alleging which, if any, of those payments Mr. Porter approved,

28  much less whether he did so knowingly and corruptly, as bribes.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### 4. Allegations of Mr. Porter Making a Bribe by Approving a Payment for a Holiday Party in 2018

Setting aside the allegations regarding Mr. Giusti's conduct, Mr. Porter appears to take no alleged unlawful action for more than three years after allegedly joining the conspiracy in 2015. *Id.* ¶¶ 9–11. The Indictment alleges that in November 2018, Mr. Porter bribed Mr. Nuru by approving Mr. Giusti's request for a payment by Recology to an entity named Lefty O'Doul's. *Id.* ¶¶ 10–11. This was a recurring payment that pre-dated Mr. Porter's tenure as a Vice President. The Indictment alleges that, from 2016 through 2019, Recology paid Mr. Nuru four annual payments totaling $60,000 to fund the annual DPW holiday party in the form of "holiday donations" to Lefty O'Doul's. *Id.* ¶ 8.

Although the Indictment alleges four annual payments to the holiday party, including payments that were approved by Mr. Porter's predecessor who was not charged, the Indictment does not allege a *quid pro quo* or other benefit received in return for any of these recurring payments prior to 2017, nor does it allege there was any expected *quid pro quo* or any other benefit in exchange for the 2019 payment. Instead, the Indictment appears to allege that the payment in 2018 was somehow corruptly intended to help raise tipping fees charged by Recology to the City. The Indictment appears to be trying to establish that the 2018 holiday party payment had a corrupt purpose by tying it to a decision by DPW that was made five months before. The Indictment alleges that, in June 2018, Recology tried, unsuccessfully, to raise the "tipping fees" it charged the City. *Id.* ¶ 10. Throughout the summer and fall of 2018, Mr. Porter and a Recology employee identified as San Francisco Group General Manager A, allegedly sought Mr. Nuru's assistance with Recology's efforts to raise its tipping fees and enlisted the help of Mr. Giusti. *Id.*

In November 2018, Mr. Giusti allegedly agreed with Mr. Nuru to provide a $20,000 payment from Recology to help fund the annual DPW holiday party. *Id.* ¶ 11. On November 27, 2018, Mr. Porter approved a payment of $20,000 from Recology to Lefty O'Doul's that was intended to fund DPW's annual holiday party. *Id.* ¶ 17. As with the 2015 Non-Profit A payment, this 2018 payment is not alleged to have ever been made to Mr. Nuru personally or to any other public official. *Id.* ¶¶ 12–17. Nevertheless, the Indictment alleges that this payment was "an illegal

gift to Mohammed Nuru" even though there is no allegation that he misappropriated the funds for his own use, no allegation that it was used for a purpose other than the annual holiday party as in years past, and no allegation of how this was an illegal gift to Mr. Nuru. *Id.* ¶ 17, *passim*. As with the 2015 conspiracy allegations, Mr. Porter never communicated with Mr. Nuru concerning the November 2018 payment. *Id*. And as was the case with the 2015 conspiracy allegations, the alleged purpose of this payment is written in the passive and does not allege that *Mr. Porter* believed the purpose was to influence Mr. Nuru, much less that Mr. Porter did so to accomplish "an unlawful end or result." *Id*. *Martinez-de Ryan*, 909 F.3d at 250. In the end, Mr. Nuru and the City did not increase the tipping fee and provided no benefit to Recology.

This $20,000 payment, which was spent to support the holiday party for DPW, is the only overt act alleged in the conspiracy charge in Count One of the Indictment and is the sole basis for the 18 U.S.C. §§ 2 and 666(a)(2) bribery charge in Count Two of the Indictment. *Id.* ¶¶ 12–17. To summarize: according to the Indictment, this single 2018 payment, which is one of four such recurring annual payments that occurred before and after Mr. Porter became Vice President and Group Manager and was made responsible for the approval of Recology payments in 2018, did not go to Mr. Nuru personally, but was known to Mr. Porter to be a corrupt bribe because it occurred within five months of a City decision on tipping fees that was never changed.

### III. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 7(c)(1), "[t]he indictment or information must be a plain, concise, and definite statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment may withstand a defendant's motion to dismiss if "it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted). Here, the Indictment does not provide sufficient detail

Baker & Hostetler LLP
Attorneys at Law
San Francisco

8

to allow Mr. Porter to prepare his defense, ensure Mr. Porter that he is being prosecuted based on the facts presented to the grand jury, or inform the Court of the facts so it may determine the sufficiency of the charge.  In considering a defendant's motion to dismiss, the Court "must accept the truth of the allegations in the indictment" in determining whether the prosecution has charged a cognizable offense.  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  A court may determine a motion to dismiss "if it involves questions of law rather than fact."  *United States v. Short Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).  But, where, as here, the government has alleged facts that even if true do not establish criminal liability and where it is clear that the factual allegations do not suffice to constitute a violation of the charged statute, the Court must dismiss the Indictment.  *See, e.g.*, *United States v. Frega*, 933 F. Supp. 1536, 1543 (S.D. Cal. 1996) (dismissing a Section 666 bribery charge where "the indictment [did] not allege that federal funds were corruptly administered, were in danger of being corruptly administered, or even could have been corruptly administered").

## IV.  ARGUMENT

### A.  The Indictment Fails to Allege that Mr. Porter Bribed Mr. Nuru Under 18 U.S.C. § 666

Count Two charges Mr. Porter with violating 18 U.S.C. §§ 2 and 666(a)(2).  The elements of § 666(a)(2) are: (1) the defendant corruptly gives or offers to give anything of value to any person, (2) with the intent to influence or reward an agent of a State, (3) in connection with any agency business or transaction involving anything with a value of $5,000 or more, and (4) the agency receives during the relevant period in excess of $10,000 of federal program funds per year.  18 U.S.C. § 666(a)(2).  Even accepting the government's allegations as true, the Indictment fails to allege that Mr. Porter bribed Mr. Nuru or "gave something of value to [Mr. Nuru]," fails to adequately allege that Mr. Porter acted "corruptly," and alleges conduct that is expressly excluded from 18 U.S.C. § 666.  *See* 18 U.S.C. § 666(a)(2), (c).

Baker & Hostetler LLP
Attorneys at Law
San Francisco

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1. <u>The Indictment Fails to Allege a "Bribe" Based on Donations to a DPW Holiday Party and Clean-Up Events or that Mr. Porter Gave Anything of Value to Mr. Nuru as a Private Gain</u>

Section 666(a)(2) makes it a crime to corruptly give or offer "anything of value to any person, with intent to influence or reward an agent of an organization of a State, [or] local government." 18 U.S.C. § 666 (a)(2).  "The design [of Section 666(a)(2)] was generally to 'protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery.'" *See Sabri v. United States*, 541 U.S. 600, 606 (2004) (quoting S. Rep. No. 98–225, p. 370 (1983)).  Thus, despite the statute's broad scope in defining what may constitute a bribe, the Supreme Court has ruled that the statute is not unduly coercive or impermissibly sweeping precisely because "Section 666(a)(2) is authority to bring federal power to bear directly on individuals who convert public spending into unearned ***private gain***, not a means for bringing federal economic might to bear on a State's own choices of public policy." *Id.* at 608 (emphasis added).

Accordingly, a conviction for federal programs bribery requires "the swap of an official act for a *private* payment." *United States v. Blagojevich*, 794 F.3d 729, 734 (7th Cir. 2015) (reversing the conviction of former Illinois governor Rod Blagojevich on honest services fraud and federal programs bribery charges because the jury instructions did not make clear that the jury could only convict if they found "the swap of an official act for a private payment") (emphasis added).  The "purpose of the *private gain requirement*—and one that does not depend on who gets the spoils— is to prevent the conviction of individuals who have breached a fiduciary duty to an employer or the public, *but have not done so for illegitimate gain*." *United States v. Sorich*, 523 F.3d 702, 710 (7th Cir. 2008) (emphasis added).  Indeed, in other analogous contexts federal courts have recognized that even where there are alleged intangible benefits "what is commonly known by the collective word 'bribe,' is something *more than the personal satisfaction arising from the gratification of a wish*" and a bribe "must consist of something real, substantial and of value to the receiver, as distinguished from *something imaginary, illusive, or amounting to nothing more than the gratification of a wish or hope on his part*." *United States v. Davis*, 183 F.3d 231, 245 (3d Cir.

10

1999), *amended,* 197 F.3d 662 (3d Cir. 1999) (quoting *People v. Hyde,* 156 A.D. 618, 141 N.Y.S. 1089 (1913)).

    *Davis* demonstrates why a private gain is required in federal bribery cases.  In *Davis*, the Third Circuit reviewed the conviction of a defendant charged with the use of a telephone in aid of racketeering in violation of 18 U.S.C. § 1952.  The government charged the defendant with the substantive "unlawful activity" of bribery under New York Penal Law § 200.25.  Similar to 18 U.S.C. § 666, New York Penal Law § 200.25 makes it unlawful for a public servant to receive a reward for official misconduct when he solicits, accepts, or agrees to accept any benefit from another person for having violated his duty as a public servant.  Under New York law, a "benefit" is defined as "any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary."  The court ruled that "[w]here the alleged benefit consists of an intangible course of conduct, we think that it must be sufficiently specific to constitute a clearly defined and direct advantage to the defendant, or to a third party in whom he has some interest."  *Davis*, 183 F.3d at 247.  As in the *Davis* case, the government's allegations here are simply "too gossamer" to sufficiently allege that Mr. Porter bribed Mr. Nuru in approving donations for a DPW holiday party or charity Non-Profit A, both of which were spent as intended, were never misdirected to Mr. Nuru personally, and resulted in no private gain.  *Id.*

    In addition to failing to allege any private gain, the Indictment does not allege that Mr. Porter "gave anything of value to a person."  18 U.S.C. § 666(a)(2).  Here, the "person" as alleged in the Indictment is Mr. Nuru.  It is alleged that Mr. Giusti and others entered into a conspiracy to bribe Mr. Nuru. *Id.* ¶¶ 4-5.  It is alleged that Mr. Giusti helped direct a stream of benefits from Recology to Mr. Nuru or his designees.  *Id.* ¶¶ 7-9.  It is alleged that Mr. Giusti agreed with Mr. Nuru that Recology would issue a $20,000 check for a "holiday donation" to Lefty O'Doul's Foundation for Kids, that Mr. Giusti sent the check to Mr. Nuru, and that Mr. Nuru gave the check to Nick Bovis, the head of the Lefty O'Doul's Foundation, to be used for expenses associated with the DPW holiday party.  *Id.* ¶ 11.  It is alleged that Mr. Porter conspired with Mr. Giusti to give payments to Mr. Nuru with the intent to influence Nuru to use his power to perform official acts to Recology's benefit.  *Id.* ¶ 13.  It is alleged that "Porter, Giusti, and others" committed overt acts in

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

furtherance of the conspiracy including requesting a tipping fee increase and issuing the $20,000 check for the "holiday donation" to the Lefty O'Doul's Foundation for Kids, but that this donation was also somehow a "gift" to Mr. Nuru himself.  *Id.* ¶¶ 16–17.

There was no "gift" from Mr. Porter to Mr. Nuru.  Indeed, the Indictment does not allege that the payments to the DPW holiday party or the charity Non-Profit A were misdirected to Mr. Nuru, much less that Mr. Porter knew of any such gift.  Mr. Nuru admitted as much in his own case before this Court.  In his sentencing memorandum, Mr. Nuru admitted to soliciting donations from Recology for non-profit clean-up efforts and the DPW holiday party.  Defendant Mohammed Nuru's Sentencing Memorandum and Motion for Downward Variance at 15, *United States v. Nuru*, Case No. 21-cr-00490-001-WHO, ECF No. 112 (Aug. 18, 2022).  But Mr. Nuru specifically pointed out that these donations were "unlike" the criminal bribes he admittedly received because he did not receive any of these funds personally.  *Id.*  Instead, Mr. Nuru sought these payments from Recology "primarily to benefit city programs and support employees."  *Id.*  As a result, Mr. Nuru urged the Court to *not* consider the payments Mr. Porter approved because they were not "part of the remuneration received directly by [him] for his own personal benefit."  *Id.*  The government fails to allege that these payments for the holiday party and charity clean-up events provided Mr. Nuru with anything "*more than the personal satisfaction arising from the gratification of a wish,*" if that, and thus fail to allege a bribery offense.

Accordingly, the Indictment does not allege the private gain requirement, and does not allege any "gift" or thing of value provided by Mr. Porter to Mr. Nuru.  The Indictment should be dismissed on this basis.

2.    The Indictment Fails to Allege that Mr. Porter Had Corrupt Intent

Count Two of the Indictment, pursuant to 18 U.S.C. § 666(a)(2), requires that a defendant "corruptly" seek to influence or reward a governmental agent.  The Ninth Circuit has held that a defendant acts "corruptly" when he "dishonestly" seeks to accomplish "an unlawful end or result" or a "lawful result by an unlawful method or means."  *Martinez-de Ryan*, 909 F.3d at 250; *see United States v. Garrido*, 713 F.3d 985, 1002 (9th Cir. 2013) (to act "corruptly" means "dishonestly seeking an illegal goal or a legal goal illegally") (quoting *McNair*, 605 F.3d at 1188.  The term also

Baker & Hostetler LLP
Attorneys at Law
San Francisco

12

"indicates a wrongful desire for pecuniary gain or other advantage." *United States v. Lonich*, 23 F.4th 881, 902–03 (9th Cir. 2022) (quoting Black's Law Dictionary 435 (11th ed. 2019)).  Other courts have noted that corrupt intent is evidenced by "the extent to which the parties [go] to conceal their bribes." *McNair*, 605 F.3d at 1197; *see United States v. White*, 663 F.3d 1207 (11th Cir. 2011) (finding corrupt intent when alleged bribery payments were kept secret); *see United States v. Roberson*, 998 F.3d 1237 (11th Cir. 2021) (finding corrupt intent where meetings were secretly recorded, payments were hidden, and the parties' relationship were kept secret).  Courts frequently find corrupt intent when the alleged bribe was secretly misdirected to an official for personal use. *See, e.g., United States v. Hamilton*, 46 F.4th 389 (5th Cir. 2022) (defendant bribed politician with money that the politician misappropriated for her personal use).

Mr. Porter did not act with corrupt intent and the Indictment does not make any factual allegation otherwise.  Nowhere does the Indictment allege that Mr. Porter acted dishonestly to accomplish anything unlawful.  Mr. Porter did not destroy evidence or engage in concealment. *Cf. White*, 663 F.3d at 1208; *Roberson*, 998 F.3d at 1238.  He did not meet with Mr. Nuru, Mr. Giusti, or anyone else in secrecy, nor did he secretly record any such meetings. *Cf. Roberson*, 998 F.3d at 1239.  The payments were not secretly misappropriated by Mr. Nuru for his personal enrichment. *Cf. Hamilton*, 46 F.4th at 391.  He did not direct anyone to lie about the payments, and they were processed and paid by Recology in the same manner as they had been with Mr. Porter's predecessor, who was never charged with any crime for making the same payments to the exact same entities for the same purposes, for years.  And finally, the Indictment does not allege in any way that Mr. Porter acted with any kind of "wrongful desire for pecuniary gain" – indeed, he received no pecuniary gain. *Cf. Lonich*, 23 F.4th at 902–03.

The Indictment's only attempt at alleging corrupt intent is to passively and unclearly allege that a "purpose of [Recology's] payment[s] was to influence Nuru's actions in connection with Recology's planned rate increase application." *See* Indictment ¶¶ 9, 11.  But the Indictment says nothing about *Mr. Porter's* understanding of the purpose of the payments, much less that he believed he was doing so by illegal means.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Indictment does not adequately allege that Mr. Porter acted with any corrupt intent by simply ensuring timely payment to a non-profit.  In connection with the May 2015 payment, Mr. Porter told another Recology employee that "keeping [Nuru] happy" was "important."  *Id.* ¶ 9.  The Indictment does not even attempt to explain how Mr. Porter was acting corruptly when he sent this email over his employer's email server and said nothing in the email about keeping Nuru happy by any illegal means.  But more importantly, the Indictment implies that Mr. Porter had the ability to keep Mr. Nuru "happy" by approving more payments to unnamed third-party entities.  But at the time Mr. Porter made this statement, he was merely Recology's Controller.  *Id.* ¶ 2.  He was not yet the Vice President with approval authority and was in no way in charge of making payments to Mr. Nuru or anyone else.  In fact, Mr. Porter would not become the Vice President with such approval authority until almost two years later.

The November 2018 payment to Lefty O'Doul's was used for its intended purpose—to pay for expenses associated with the DPW holiday party.  Recology's sponsorship of this party, which other companies also openly sponsored, was typical, transparent, and publicly acknowledged.  Mr. Porter approved this payment with the intent it would be used for the DPW holiday party, and nothing else, just as it had in prior years when his predecessor approved such payments.  And, as stated above, there is no support for the allegation that this was an "illegal gift" to Mr. Nuru; the payment was not made to Mr. Nuru and there is no allegation that Mr. Nuru misappropriated the funds for his own use.  This case is thus a novel outlier from the vast majority of bribery cases in which a defendant is alleged to have bribed a government official with something of value for the official's personal use.  *See, e.g., Hamilton*, 46 F.4th at 391.

The Indictment is also carefully worded to avoid stating what, if any, other purported benefits and gifts *Mr. Porter* had any involvement in corruptly providing to Mr. Nuru.  With respect to the "stream of benefits" that Mr. Giusti directed to Mr. Nuru, the Indictment says nothing about Mr. Porter's role with respect to these gifts and which of these gifts Mr. Giusti directed to Nuru while Mr. Porter was Mr. Giusti's supervisor.  And with respect to the alleged payments to Non-Profit A, the Indictment alleges that Recology made these payments "with the knowledge that Nuru could ultimately control how this money was used."  *See* Indictment ¶ 8.  The Indictment does not

14

allege that Mr. Porter had any knowledge whatsoever that Mr. Nuru had control, or "could" control, the money paid to Non-Profit A, that any money was ever misdirected to Mr. Nuru's control, or when Mr. Porter is alleged to have known any such thing. Not to mention that these payments to Non-Profit A began in 2014, a year before Mr. Porter is even alleged to have joined the purported criminal conspiracy.

Without the ability to clearly allege Mr. Porter's corrupt intent, the Indictment resorts to vague allegations about what Mr. Porter knew and relies almost exclusively on the knowledge and behavior of Mr. Giusti. For example, the Indictment alleges that it was Mr. Giusti who "helped direct a stream of benefits from Recology to Nuru" for years. *Id*. ¶ 7. With respect to the May 2015 payment, the Indictment alleges that Mr. Giusti had an unpleasant "encounter" with Mr. Nuru when Recology failed to make its regular payment on time. With respect to the November 2018 payment, the Indictment alleges that Mr. Giusti "agreed with Nuru" to provide the payment to Lefty O'Doul's. Nowhere does the Indictment allege any such conduct on Mr. Porter's behalf, other than Mr. Porter's vague "approval" of some unknown number of Mr. Giusti's actions, without any allegations of what was known or agreed to by Mr. Porter with corrupt intent. *Id*. ¶¶ 9–11.

The Indictment falls far short of adequately alleging Mr. Porter's corrupt intent, which is the central issue in this matter, and the required element that allows a charge to proceed under § 666. On this basis, the Indictment should be dismissed.

### 3.  The Alleged Conduct Is Excluded from § 666

The bribery charges must be dismissed under § 666(c) which excludes bona fide commercial and business practices. In accordance with congressional intent to limit § 666 to the most egregious offenses, the statute provides a restriction: § 666 "does not apply to bona fide salary, wages, fees, or other compensation paid, ***or expenses paid or reimbursed, in the usual course of business***." 18 U.S.C. § 666(c) (emphasis added). Importantly, § 666(c) protects against the prosecution of "acceptable commercial and business practices," H.R. Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153; *see also Mills,* 140 F.3d at 632, 634 (pointing to this "restriction on the reach of 18 U.S.C. § 666" as evidence that not all instances of bribery "merit the attention of the federal courts").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Here, the Indictment alleges that in November 2018, Mr. Porter allegedly bribed Mr. Nuru by approving Mr. Giusti's request for the next in a series of recurring payments by Recology to an entity named Lefty O'Doul's, which was intended for the benefit of the annual holiday party for DPW employees. *See* Indictment ¶ 10–11. The government's primary allegations are that Mr. Giusti bribed Mr. Nuru while Mr. Porter, merely as a function of his position as Vice President and Group Manager, approved this recurring payment, as he did in his role for all Recology payments, and as his predecessor had done with respect to this same payment in prior years. Indeed, whoever served as Recology's Vice President and Group Manager was responsible for approving all payments from the company. Porter stepped into the shoes of his former supervisor, referred to as Recology Executive 1 in the Indictment, *id.* ¶ 6, when promoted to that role in 2018. As his predecessor had done hundreds of times before him, Porter approved the same payments which had been approved by Recology Executive 1, including the contributions to Non-Profit A and the DPW holiday party. Despite these expenses having been approved by Mr. Porter in the continued, ordinary course of business after he was promoted, Mr. Porter was charged with bribery while Recology Executive 1 was never charged for previously approving the very same payments and performing the same business function as Mr. Porter was required to do.

As stated above, all payments approved by Mr. Porter for the DPW holiday party and Non-Profit A events were processed, paid, and used for their intended purpose. The government does not allege that any payments approved by Mr. Porter were misdirected or not used for their stated purpose. The government does not allege that any of the payments approved by Mr. Porter were directed to Mr. Nuru personally or benefitted Mr. Nuru in anyway. The government does not allege that Mr. Porter had any knowledge that in approving these payments in the ordinary course of business, he was directing any funds to be misused by Mr. Nuru. In fact, the only allegation the government has made on this point is that Mr. Porter approved payments and that Mr. Giusti made such payment "with knowledge that Nuru could ultimately control how this money was used." *Id.* ¶ 8. Even if accepted as true, this does not sufficiently allege that Mr. Porter knew of any misappropriation of funds by Mr. Nuru because the allegation dates back to 2014, four years prior to Mr. Porter's alleged role as a supervisor from 2018 to 2020, as stated at the beginning of the

16

paragraph. *Id.* ¶¶ 2, 8. And again, the Indictment does not allege that Mr. Porter had any knowledge whatsoever that Mr. Nuru controlled or misappropriated any money paid to Non-Profit A. *Id.* ¶ 8. To the contrary, Mr. Porter understood and witnessed the expenses he approved being used for their stated purpose.

Although the Indictment is unclear, it appears to allege that Mr. Porter (or perhaps someone else) was attempting to conceal the holiday party sponsorship because the payment from Recology went to Lefty O'Doul's rather than being paid directly to the DPW for the holiday party. *Id.* ¶ 11. But this allegation ignores the fact that these types of sponsor payments to the City were widely accepted and in fact were an appropriate way to make such payments.

It was publicly known that donations through a third-party entity, known as behested payments or "friends of" payments, had been a widely acceptable, common practice with the City for many years. The City has publicly acknowledged that hundreds of such "friends of" and behested sponsor accounts existed across dozens of City departments. Indeed, there were subsequent efforts to amend the rules concerning behested payments after Mr. Nuru's indictment, which was necessitated by the fact that such payments were permissible and widespread under the prior rules. Subsequent proposed edits to the City ordinance governing such payments was recently drafted in January 2022 to specifically prohibit elected officials from soliciting behested payments from interested parties[1]. And Proposition E appeared on the local ballot with a proposed new law concerning behested payments that would "amend" the City's behested payment law to prevent Board of Supervisor members from seeking such payments from contractors who received Board approval[2]. The need to change the City code to prohibit these actions makes clear that such action was not prohibited by the Code when Mr. Porter was approving the payments, and was instead an acceptable business practice. Accordingly, at the time the donations to Lefty O'Doul's were made, the practice of making payments through non-city organizations were pervasive, generally accepted, and not prohibited. Whether these rules and business practices were well conceived or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[1] *See* Submittal Form For Proposed Initial Measure(s) Prior to Submittal to the Department of Elections, *available at* https://sfelections.sfgov.org/sites/default/files/20220118_BehestedPayments.pdf.

[2] *See* Voter Information Pamphlet & Sample Ballot at 70, *available at* https://sfelections.sfgov.org/sites/default/files/Documents/Voting/2022/J22_SFVIP_EN.pdf.

17

1  sound is a separate question, and certainly not one that Mr. Porter was in a position to decide.  At

2  the time of the conduct in question, the payments to non-city organizations for events like the DPW

3  holiday party were widely accepted, were made by other entities in addition to Recology, were not

4  prohibited by the City code, and were an acceptable business practice and are thus excluded under

5  § 666(c).  *See* H.R. Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138,

6  6153.

7  **B.  The Indictment Fails to Allege that Mr. Porter Conspired to Bribe Mr. Nuru**
   **Under 18 U.S.C. § 371**

8

9  In addition to failing to allege that Mr. Porter bribed Mr. Nuru, the Indictment fails to allege

10  that Mr. Porter conspired to bribe Mr. Nuru under 18 U.S.C. § 371.  Accepting the government's

11  allegations as true, the Indictment fails to adequately allege the substantive crime, and thus fails to

12  allege conspiracy to commit that crime.

13  To prove a conspiracy under 18 U.S.C. § 371, the government must show: "(1) an agreement

14  to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3)

15  the requisite intent to commit the substantive crime." *United States v. Kaplan*, 836 F.3d 1199, 1212

16  (9th Cir. 2016); *see United States v. Choy*, 309 F.3d 602, 605 (9th Cir. 2002) (Noting that a

17  "conspiracy conviction must be overturned if the conviction on the substantive count for either

18  bribery or money laundering was the result of 'legal error.'").

19  For all the reasons stated above, the Indictment fails to adequately allege that Mr. Porter

20  engaged in criminal activity under § 666 and fails to adequately allege the requisite corrupt intent.

21  Accordingly, having failed to adequately allege the substantive crime and the requisite corrupt

22  intent, the Indictment has failed to allege conspiracy to commit that crime.

23  **C.  The Forfeiture Allegations in the Indictment Are Unsupported and Expressly Do**
   **Not Apply to the Charges Against Mr. Porter**

24

25  The Indictment contains forfeiture allegations against Mr. Porter pursuant to 18 U.S.C.

26  § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  (Ind. ¶¶ 18-20.)  However, Section 981(a)(1)(C) expressly

27  does not extend forfeiture to the charges the government has alleged in its Indictment against Mr.

28  Porter.  Section 981(a)(1)(C) applies only to specified criminal statutes, of which the criminal

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

statues charged in the Indictment (18 U.S.C. §§ 371 and 666) are *not* included.  Relying on a statute that excludes the forfeiture the government is seeking here, requires dismissal of those allegations on their face.

It is possible that the government made an error in its Indictment and used the incorrect statutory section.  18 U.S.C. § 981(a)(1)(D)(i), which the government did not rely upon in its Indictment, does permit forfeiture of  "[a]ny property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of … section 666(a)(1) (relating to Federal program fraud)."  However, again, this statute applies to Section 666(a)(1), not Section 666(a)(2), which is the charge the government has brought against Mr. Porter in its Indictment.  *See* Indictment ¶¶ 14–17.  Simply stated, the government's forfeiture allegation is not applicable to these charges.

It may be that the government merely included a forfeiture allegation similar to those it has alleged in the charges it has brought against other defendants in its broad corruption effort involving Mr. Nuru, without adequately contemplating how Mr. Porter is different from all of those other cases.  There are no allegations anywhere in the Indictment that Mr. Porter benefitted in any way, much less that he received "property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations."  That is because Mr. Porter received no property derived from proceeds from alleged criminal conduct, and indeed Mr. Porter received no proceeds whatsoever from any charged violations, as the government well knows.  Mr. Porter did not receive, and is not alleged to have received, any criminal proceeds from Mr. Nuru or anyone else.  Accordingly, it is unclear why the government included these allegations, other than perhaps in error, and they should be dismissed.

### D.  The Government Must Provide a Bill of Particulars

Given the aforementioned deficiencies in the Indictment, the charges against Mr. Porter should be dismissed in their entirety.  However, should the Court decline to grant defendant's motion to dismiss, Mr. Porter respectfully moves under Federal Rule of Criminal Procedure 7(f) for an order requiring the government to provide a bill of particulars as to both charged counts in the Indictment and the forfeiture notice.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A bill of particulars is warranted where it will enable adequate preparation of the defense and prevent surprise at trial. *United States v. Giese*, 597 F.2d 1170, 1180–81 (9th Cir. 1979). It provides a defendant with the details of the charges necessary to present a defense, to avoid prejudicial surprise at trial, and to protect against a second prosecution based on the same facts. *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983); *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979).

Mr. Porter has rights under the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(f) to notice of the charges against him and to a fair trial with an opportunity to defend himself against the charges. In addition, a bill of particulars guarantees a defendant's Fifth Amendment right to be tried on a charge found by a grand jury, as a defendant is entitled to know the government's theory as to a particular count. *See Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963).

Here, the Indictment does not identify the specific bribes the government alleges Mr. Porter knowingly provided to Mr. Nuru for Mr. Nuru's personal benefit. It does not make clear whether it is relying on some novel theory of "reputational benefit" or some other theory. It is unclear what the government alleges evinces Mr. Porter's corrupt intent. Moreover, it is not clear how or why the government believes that Mr. Porter acted corruptly in serving in his role at the company approving payments, especially considering the fact that identical payments were approved by previous Recology executives at Recology and other companies in the City, none of whom have been charged with any offense. The vague, passive language in the Indictment prevents Mr. Porter from understanding whether he is being tried on the conduct the grand jury found supported the charging decision, and what conduct Mr. Porter must defend against.

Accordingly, Mr. Porter requests disclosure of the following particulars, and reserves his right to provide additional arguments in support of his motion to dismiss based on the government's disclosure:

1. Count One: 18 U.S.C. § 371

(1)    Identify all alleged co-conspirators and the time periods of their participation in the charged conspiracy. *See* Indictment ¶ 5.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(2)     Identify all things of value that were knowingly and corruptly given to Mr. Nuru or any other person, intending to influence his official actions, as part of the charged conspiracy, and that the government contends were agreed upon and reasonably foreseeable to Mr. Porter, in violation of 18 U.S.C. § 371.  *Id.* ¶¶ 5–13.

(3)     Identify all of the official actions that the government alleges were influenced or intended to be influenced as part of the charged conspiracy, and that the government contends were agreed upon and reasonably foreseeable to Mr. Porter. (*Id.*)

(4)     Clarify whether the government contends that Mr. Porter understood the need to "keep Mr. Nuru happy" in the May 2015 meeting to mean to do so by illegal and corrupt means, and what allegations support that contention.  *Id.* ¶ 9.

### 2.   Count Two: 18 U.S.C. §§ 2 and 666(a)(2)

(1)     Identify all things of value that the government alleges Mr. Porter knowingly and corruptly gave or caused to be given to Mr. Nuru for Mr. Nuru's personal benefit, intending to induce his official actions, in violation of 18 U.S.C. §§ 2 and 666(a)(2).  *Id.* ¶¶ 7, 8, 14-17.

(2)     Identify all things of value that the government alleges Mr. Porter knowingly and corruptly gave or caused to be given to anyone other than Mr. Nuru, intending to induce their official actions, in violation of 18 U.S.C. §§ 2 and 666(a)(2).  *Id.* ¶¶ 7, 8, 14-17.

(3)     Identify the personal benefit or gain allegedly provided by Mr. Porter to Mr. Nuru pursuant to the government's bribery charge in Count Two and clarify whether the government alleges that Mr. Porter gave or caused to be given to Mr. Nuru a gift that was of some other value –tangible or otherwise.  *Id.* ¶ 17.

(4)     Identify any funds that Mr. Porter provided or caused to be provided to Non-Profit A or the DPW holiday party that were misappropriated to Mr. Nuru's personal benefit.  *Id.* ¶ 8.

(5)     Clarify whether the government alleges that Mr. Porter had knowledge that Mr. Nuru had control of, "could" control, or misappropriated for himself the funds paid to Non-Profit A.  *Id.* ¶ 8.

(6)     Identify the basis for the required element of corrupt intent with respect to Count Two against Mr. Porter.  *Id.* ¶¶ 14-17.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3. Forfeiture

(1)     List all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of Counts One and Two, as the government has alleged in the Indictment, as well as the nexus between any such property and the charged offense, and your legal basis for such forfeiture. *Id.* ¶¶ 18-20.

## V. CONCLUSION

For the foregoing reasons, Mr. Porter respectfully requests this Court to dismiss the Indictment, or in the alternative, order a bill of particulars as to the allegations of Counts One and Two of the Indictment and the forfeiture allegations.

Dated:     November 8, 2022

Respectfully submitted,

BAKER & HOSTETLER LLP

By:     */s/ Robb C. Adkins*
        Robb C. Adkins
        Chardaie C. Charlemagne (*Admitted Pro Hac Vice*)

*Attorneys for Defendant John Francis Porter*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO