STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR 22-00270 WHO |
| Plaintiff, | ) |
| | ) **UNITED STATES' OPPOSITION TO** |
| | ) **DEFENDANT'S MOTION TO DISMISS OR** |
| v. | ) **FOR A BILL OF PARTICULARS** |
| | ) |
| JOHN FRANCIS PORTER | ) |
| | ) Hearing Date: December 19, 2022 |
| Defendant. | ) Honorable William H. Orrick |
| | ) Courtroom Two, 17th Floor |

I

# **TABLE OF CONTENTS**

I. INTRODUCTION …………………………………………………………………………...1

II. PROCEDURAL HISTORY ………………………………………………...…………………1

III. ALLEGATIONS IN THE SUPERSEDING INDICTMENT ……………………………….. 2

IV. LEGAL STANDARD …..……………………………………………………………………...4

V. ARGUMENT ………………………………………………………………………………….4

    A. The Superseding Indictment Sufficiently Alleges Defendant Porter Bribed and Conspired to Bribe a Public Official, and Committed Honest Services Fraud……………………………...4

        1. The Superseding Indictment Alleges Multiple Payments Made to Benefit Nuru ………..4

        2. The Government Does Not Need to Allege a Private Gain to Nuru ……………………...6

        3. The Superseding Indictment Alleges Defendant Porter Acted With Corrupt Intent ……..8

        4. The Alleged Conduct is Not Excluded Under 18 U.S.C. § 666(c) ……………………...10

    B. The Superseding Indictment Alleges Porter Conspired to Commit Bribery ………………..13

    C. The Forfeiture Allegations in the Superseding Indictment Apply to the Charges …………..14

    D. The Defendant is Not Entitled to a Bill of Particulars ………………………………………14

VI. CONCLUSION ……………………………...……………………………………………….....16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Fischer v. United States,* 529 U.S. 667 (2000) .................................................................................. 10

*Martinez-de Ryan v. Whitaker*, 909 F.3d 247 (9th Cir. 2018) ............................................................. 8

*Pasquantino v. United States*, 544 U.S. 349 (2005) ............................................................................ 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ............................. 7

*United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1972) .................................................................... 15

*United States v. Ayala*, 2019 WL 2518122 (D. Or. June 8, 2019) ..................................................... 11

*United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ...................................................................... 15

*United States v. Baroni*, 909 F.3d 550 (3d Cir. 2018) ....................................................................... 11

*United States v. Boren*, 278 F.3d 911, (9th Cir. 2002) .................................................................... 1, 4

*United States v. Bryant*, 556 F. Supp. 2d 378 (D. N.J. 2008) ........................................................... 11

*United States v. Clay*, 476 F.2d 1211 (9th Cir. 1973) ....................................................................... 15

*United States v. Davis*, 183 F.3d 231 (3d Cir. 1999) ...................................................................... 5, 6

*United States v. George*, 842 F.3d 55 (1st Cir. 2016) ...................................................................... 11

*United States v. Giese*, 597 F.2d 1179 (9th Cir. 1979) ..................................................................... 15

*United States v. Inzunza,* 638 F.3d 1006 (9th Cir. 2011) ............................................................. 7, 15

*United States v. Jensen*, 93 F.3d 67 (9th Cir. 2002) ........................................................................... 4

*United States v. Johnson*, 804 F.2d 1078 (9th Cir. 1986) ................................................................... 4

*United States v. Kimbrew*, 944 F.3d 810 (9th Cir. 2019) ................................................................... 7

*United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009) ............................................................... 4

*United States v. Leyva*, 282 F.3d 623 (9th Cir. 2002) ........................................................................ 8

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) ................................................................ 14, 15

*United States v. Lonich*, 23 F.4th 881 (9th Cir. 2022) ........................................................................ 8

*United States v. Manetti*, 323 F. Supp. 683 (D. Del. 1971) .............................................................. 15

*United States v. McNair*, 605 F.3d 1152 (11th Cir. 2010) .................................................................. 8

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) .................................................................... 15

*United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984) ................................................................... 15

*United States v. Nukida*, 8 F.3d 556 (9th Cir. 1993) ........................................................................... 4

*United States v. Skilling* 561 U.S. 358 (2010) .................................................................................... 6

*United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) ...................................................................... 14

*United States v. Sorich.* 523 F.3d 702 (7th Cir. 2008) .................................................................... 7, 8

*United States v. Tadios*, 650 Fed. Appx. 394 (9th Cir. 2014) ..................................................... 10, 11

*United States v. Williams*, 507 F.3d ................................................................................................. 11

**FEDERAL STATUTES**

18 U.S.C. § 201 ................................................................................................................................ 7
18 U.S.C. § 371 ......................................................................................................................... 1, 2, 7
18 U.S.C. § 666 ........................................................................................................................ passim
18 U.S.C. § 981 .............................................................................................................................. 14
18 U.S.C. § 1341 .............................................................................................................................. 2
18 U.S.C. § 1346 .......................................................................................................................... 2, 6
18 U.S.C. § 1349 .............................................................................................................................. 2
18 U.S.C. § 1956 ............................................................................................................................ 14
18 U.S.C. § 1343 .............................................................................................................................. 2
28 U.S.C. § 2461 ............................................................................................................................ 14

**FEDERAL RULES**

Fed. R. Crim. P. 7 ................................................................................................................ 4, 14, 16
Fed. R. Crim. P. 12 .......................................................................................................................... 4

**CONGRESSIONAL RECORD**

1986 U.S.C.C.A .............................................................................................................................. 10

## I. INTRODUCTION

On November 7, 2022, Defendant Porter filed a motion to dismiss the indictment in the above-captioned case. Defendant raises three general claims: 1) that the alleged bribe payments do not qualify as bribes because they went to their stated purpose, they were not misdirected, and the indictment failed to allege any personal benefit to a public official, in this case Mohammed Nuru, the then-Director of the San Francisco Department of Public Works; 2) that the indictment fails to allege that Porter acted with corrupt intent, and; 3) that the bribery statute's "safe harbor' exception," 18 U.S.C. § 666(c), here for expenses in the usual course of business, applies and bars this prosecution. All of these claims fall short.

The Superseding Indictment properly alleges an honest services fraud scheme and conspiracy, and a bribery conspiracy, in which payments were misdirected, were made to influence Nuru as public official, and that the payments provided a personal benefit to Nuru. Moreover, a private gain to an honest services bribe recipient is not required to be alleged in an indictment. The Superseding Indictment properly alleges facts sufficient to show defendant Porter acted with corrupt intent, including allegations that he concealed and misrepresented the bribe payments. And the defendant fails to assert facts in his Motion sufficient to warrant dismissal of the indictment under 18 U.S.C. § 666(c).

Throughout his motion, defendant asks this court to make anticipatory factual determinations, and to rely on extrinsic evidence and argument, which is improper in the context of a motion to dismiss. In a motion to dismiss, the court is bound by the four corners of the indictment, and must accept the truth of the allegations therein in determining whether a cognizable offense has been charged. *See United States v. Boren*, 278 F.3d 911, 914, (9th Cir. 2002).

## II. PROCEDURAL HISTORY

Defendant Porter was originally charged in this case by a Criminal Complaint, on April 13, 2021. *Dkt. 1*. The defendant was subsequently charged in an indictment filed on July 21, 2022. *Dkt. 40*. The indictment charged Porter with one count of conspiracy to commit bribery in violation of 18 U.S.C. § 371, and one count of bribery of a local official in violation of 18 U.S.C. § 666(a)(2). *Id.* The indictment alleged a bribery conspiracy involving Porter, executives at Recology, and others, beginning in 2014 and continuing until January 2020. *Id.* The indictment further alleged that, as part of the bribery conspiracy, a stream of benefits were paid to Nuru or his designees, including payments for

1

Nuru's holiday parties, as well as payments made by Recology, at Nuru's request, to Non-Profit A, with the knowledge that Nuru could ultimate control how the funds were used. *Id.* The indictment alleges that this stream of bribe payments included meals, drinks, and an internship for Nuru's son, paid for by Recology. *Id.* The bribery count in the indictment alleged that in December 2018, Porter approved a $20,000 payment to a non-profit, the Lefty O'Doul's Foundation for Kids, that was in fact a bribe to Mohammed Nuru to pay for a holiday party. *Id.*

The grand jury returned a Superseding Indictment on November 29, 2022. *Dkt. 67*. The Superseding Indictment adds charges alleging that Porter conspired to commit honest services fraud in violation of 18 U.S.C. § 1349, (Count One), participated in an honest services wire fraud scheme in violation of 18 U.S.C. §§ 1343 and 1346 (Counts Two and Three), and participated in an honest services mail fraud scheme in violation of 18 U.S.C. §§ 1341 and 1346 (Count Four), all for engaging in a scheme to defraud the City of San Francisco of the honest services of Mohammed Nuru. As the then-Director of DPW, Nuru had enormous influence over Recology's business. The Superseding Indictment also charges Porter with Conspiracy to Commit Bribery in violation of 18 U.S.C. § 371 (Count Five), and with bribery of a local official in violation of 18 U.S.C. § 666(a)(2) (Count Six).

The Superseding Indictment narrows the dates of the alleged bribery and honest services fraud conspiracies to December 2016 through January 28, 2020, and alleges Porter joined no later than October 2017. *Id.* The Superseding Indictment's bribery count is for the same conduct as alleged in the original indictment, a $20,000 payment in December 2018 to fund Nuru's holiday party. The Superseding Indictment alleges, as did the original indictment, that the $60,000 in total payments for Nuru's holiday parties, concealed as "holiday donations" to the Lefty O'Doul's Foundation for Kids, were bribes for purposes of the bribery and honest services fraud scheme and conspiracy. However, the Superseding Indictment does not allege that payments to Non-Profit A were part of the honest services fraud scheme or the bribery conspiracy.

III. ALLEGATIONS IN THE SUPERSEDING INDICTMENT

Accepting as true all of the allegations in the Superseding Indictment, as the Court must on a motion to dismiss, the government alleges the following:. Beginning no later than December 2016, employees of Recology and others conspired to deprive the City of San Francisco of the honest services

2

of Mohammed Nuru through a stream of bribe payments. *Dkt. 67.* As part of this scheme and conspiracy, Porter and others conspired to pay $60,000 to fund Nuru's holiday parties, as well as paying for meals, drinks, and other things of value to Nuru. *Id.*

The Superseding Indictment alleges that Porter personally approved $55,000 of the payments for Nuru's holiday parties, and he misrepresented and concealed them by falsely claiming on payment approval forms that they were "holiday donations" to the Lefty O'Doul's Foundation for Kids. *Id.* In fact, as alleged in the Superseding Indictment, the payments went to fund elaborate holiday parties Nuru held each year from 2016 to 2019. *Id.* Porter approved these payments knowing they were being made at Nuru's request, and knowing they were going to Nuru's personal and political benefit by paying for holiday parties for his friends, political supporters, and some DPW employees. *Id.*

In addition, the Superseding Indictment alleges that Porter and co-conspirators regularly paid for meals, drinks, and other things of value for Nuru, including an $1,182 dinner at Harris Steak House in December 2018 for Nuru and a group of Recology executives that Porter personally paid for with his corporate Recology credit card. *Id.*

The Superseding Indictment alleges that Porter and co-conspirators directed this stream of benefits to Nuru in order to influence Nuru to act in Recology's favor, and to have Nuru take official action and exercise official influence in Recology's favor. *Id.* Indeed, as the Director of the San Francisco Department of Public Works (DPW), which regulated Recology and set the rates it could charge, Nuru was well-positioned to exercise his official influence on behalf of Recology. *Id.*

The Superseding Indictment further alleges that Porter and others participated in a conspiracy to commit bribery, and committed bribery of a local official, when they conspired to make, and did make, a $20,000 payment from Recology, at Nuru's request, in December 2018, to fund one of Nuru's holiday parties. *Id.* This payment was intended as an illegal gift to Nuru in order to induce his official actions on Recology's behalf. *Id.*

The Superseding Indictment alleges that all of these payments or benefits were given to Nuru, or made for his benefit, during the time that Nuru could take official action to benefit or harm Recology, including but not limited to: 1) recommending whether Recology's request for an increase in the rates it could charge in the City of San Francisco - Recology's primary source of revenue - should be approved;

3

2) deciding whether to approve Recology's tipping fees paid by DPW for dumping materials at a Recology recycling facility, and 3) noting that Nuru "could also approve, deny, or otherwise affect other payments to Recology, as well as operational changes requested by Recology that would affect Recology's business." *Id.*

IV. <u>LEGAL STANDARD</u>

An indictment should "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it: 1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and; 2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotations omitted). It is generally sufficient for the indictment to set forth the charged offense in the words of the statute itself. *United States v. Johnson*, 804 F.2d 1078, 1084 (9th Cir. 1986).

A motion to dismiss an indictment may be brought under Federal Rule of Procedure 12(b)(3), which permits a pretrial motion for "failure to state an offense." In ruling on a pretrial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment. *Boren*, 278 F.3d at 914. "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . The Court should not consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 67, 669 (9th Cir. 2002). The "unavailability of Rule 12 in determination of general issues of guilt or innocence . . . helps ensure that the respective provinces of the judge and jury are respected . . ." *United States v. Nukida*, 8 F.3d 556, 570 (9th Cir. 1993).

V. <u>ARGUMENT</u>

    **A.    The Superseding Indictment Sufficiently Alleges Defendant Porter Bribed and Conspired to Bribe a Public Official, and Committed Honest Services Fraud**

        1.    <u>The Superseding Indictment Alleges Multiple Payments Made to Benefit Nuru</u>

Defendant first claims that the Indictment must be dismissed because it fails to allege that the defendant gave anything of value to Mohammed Nuru as a private gain. *Dkt. 60*, pg. 10. The defendant's motion claims that a bribe cannot be "something imaginary, illusive, or amounting to nothing more than the gratification of a wish or hope on his part." *Id, quoting United States v. Davis*,

1  183 F.3d 231, 245 (3d Cir. 1999), *amended*, 197 F.3d 662 (3d Cir. 1999).  Defendant Porter argues that
2  the only bribes alleged in the indictment were "based on two payments to non-profit organizations to
3  support city clean-up efforts, and a holiday party, where the payments went to non-profit organizations
4  for their stated purposes and were not misdirected to any public official." *Id.*  The defendant claims that
5  the indictment must be dismissed because there are "[n]o allegations of any personal benefit to Mr.
6  Porter . . . [and] "no allegation that Mr. Porter gave anything of value to Mohammed Nuru for his
7  personal benefit." *Id*

8  　　　This is incorrect.  The Superseding Indictment clearly alleges that the payments to Nuru's
9  holiday parties were made to benefit Nuru, personally and politically.  The Superseding Indictment
10  states that the payments were made "to fund increasingly elaborate and expensive holiday parties Nuru
11  hosted for friends, political supporters, and select DPW employees." *Dkt. 67,* ¶ 11.  The Superseding
12  Indictment quotes Nuru requesting a $20,000 payment from Recology, to pay for one of "his" holiday
13  parties, stating "*I always have to get more . . . so if you could give me twenty, that would be nice.*" *Id.*
14  As alleged, Nuru clearly asked for the money for himself ("I always have to get more" and "if you could
15  give *me* twenty") demonstrating that Nuru saw these payments as benefits to him, which they were.  As
16  the Superseding Indictment alleges, the money went to fund parties Nuru held for *his* friends, *his*
17  political supporters, and select DPW employees who reported to him.

18  　　　The Superseding Indictment further alleges that the stream of benefits to Nuru included meals
19  and drinks.  As one example, the Superseding Indictment alleges that on December 20, 2018, defendant
20  Porter attended and paid for an $1,182 dinner with Nuru and others Recology executives at Harris
21  Restaurant, a San Francisco steakhouse.  *Dkt. 67,* ¶ 19.  The Superseding Indictment further alleges that
22  Porter and other Recology executives also paid for breakfasts for Nuru and DPW executives at Stacks
23  Restaurant.  *Id.*  All were benefits personally conferred upon Nuru by Porter and others at Recology.

24  　　　The defendant relies heavily on the quote from *United States v. Davis*, a 1999 Third Circuit case,
25  that the bribe must be "something more than the personal satisfaction arising from the gratification of a
26  wish" but rather "must consist of something real, substantial, and of value to the receiver, as
27  distinguished from something imaginary, illusive, or amounting to nothing more than the gratification of
28  a wish or hope on this part." 183 F.3d 231, 245 (3d Cir. 1999). *Dkt. 60.*  The facts in *Davis*, however,

5

are inapposite to this case. In that case, the question turned on whether efforts that might harm a rival to his love interest constituted a "benefit" to the public official. *Id.* at 245. The Superseding Indictment in this case does not allege such an ill-defined benefit, but rather a much more direct, personal, and financial benefit to Nuru - $60,000 in payments made to buy food and drinks and other items for holiday parties Nuru personally hosted, as well as meals and drinks, including an $1,182 bill for a lavish meal at the steakhouse Harris Restaurant. *Dkt. 67*.

Defendant Porter concedes in his motion to dismiss, as he must, that private payments "must consist of something real, substantial, and of value to the receiver." *Dkt. 60, quoting Davis,* 183 F.3d at 245. By any reasonable interpretation, a party that Nuru collected money for, referred to as his "big party" and was described as a payment made to Nuru "to fund increasingly elaborate and expensive holiday parties Nuru hosted for friends, political supporters, and select DPW employees" meets any reasonable definition of a private gain to Nuru.

To the extent the defendant's motion to dismiss refers to payments made to Non-Profit A, those arguments are moot, as the Superseding Indictment does not charge that any payments to Non-Profit A were part of the honest services scheme to defraud or the bribery conspiracy.

2. <u>The Government Does Not Need to Allege a Private Gain to Nuru</u>

The Superseding Indictment alleges facts sufficient to establish a personal or private gain to Nuru. However, a private gain is not required in the Ninth Circuit for bribes made as part of an honest services fraud scheme or conspiracy. Defendant Porter is charged with honest services wire and mail fraud, which requires that the government prove a scheme and conspiracy to defraud the public of the rights to the honest services of a public official. *See 18 U.S.C. § 1346.* Honest services fraud schemes cover only schemes involving bribes or kickbacks. *See United States v. Skilling* 561 U.S. 358 (2010). The government is not required to show that the scheme was successful, or that bribes or kickbacks were even paid, because the criminal act is the creation of a "scheme" to defraud. *See Pasquantino v. United States*, 544 U.S. 349, 371 (2005) ("the wire fraud statute punishes the scheme, not its success"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (for mail and wire fraud, it is not necessary to show that the scheme was successful or that the intended victim

6

suffered a loss or that the defendants secured a gain); *see also United States v. Kimbrew*, 944 F.3d 810, 815 (9th Cir. 2019) (liability for bribery of a public official, in violation of 18 U.S.C. § 201(b)(2)(A), "does not depend on an outcome; the offense is complete at the moment of agreement, and that agreement need not even be accompanied by the bribe recipient's genuine intentions to follow through.").

Defendant Porter is also charged with Conspiring to Commit Bribery, in violation of 18 U.S.C. § 371, alleging that there was a conspiracy to bribe a public official, Mohammed Nuru, that defendant Porter became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it, and that one member of the conspiracy committed an overt act for the purpose of carrying out the conspiracy. *See Ninth Circuit Criminal Model Jury Instruction* No 22.1 (2022) (modified). Finally, the Superseding Indictment charges that defendant Porter with violating 18 U.S.C. § 666(a)(2), the elements of which are that that the defendant corruptly gave or offered to give anything of value *to any person*, with the intent to influence or reward an agent of a State, in connection with any agency business or transaction involving anything with a value of $5,000 or more, and that the agency received during the relevant period in excess of $10,000 of federal program funds per year. *See* 18 U.S.C. § 666(a)(2). (italics added).

Defendant Porter claims that the payments for the holiday parties cannot be considered bribes because they do not provide a "private gain" to Nuru. *Dkt. 60, citing United States v. Sorich*. 523 F.3d 702, 710 (7th Cir. 2008). The Ninth Circuit in *United States v. Inzunza*, however, specifically rejected the approach of the Seventh Circuit in *Sorich* to the extent that it held that a private gain requirement is an element of honest services fraud involving bribery. 638 F.3d 1006, 1018 (9th Cir. 2011). In *Inzunza*, the Ninth Circuit explained its rationale in rejecting the "private gain" requirement for honest services fraud charges involving bribery:

> A court requiring the prosecution to show private gain in such an instance might be forced to stretch that requirement beyond recognition. Indeed, the Seventh Circuit has opined that the prosecution could satisfy the "private gain" element by proving that the gain ran to an unrelated third party, even a charity. *Sorich*, 523 F.3d at 709 - 10 ("Robin Hood may be a noble criminal, but he is still a criminal."). Are charitable donations "private gain" in the sense that they gratify the spirit of the criminal? Rather than reckon with such imponderables, we join the majority of circuits in holding that

7

private gain is not an "implied" or "necessary" element of honest services fraud. [citation omitted]. Neither the indictment nor the jury instructions need mention it."

*Id.*

### 3. The Superseding Indictment Alleges Defendant Porter Acted With Corrupt Intent

Defendant Porter next claims that the indictment fails to allege that he acted with corrupt intent. For purposes of the bribery counts, the term "corruptly" refers to the defendant's intent to influence an official act. *See United States v. Lonich*, 23 F.4th 881, 902 (9th Cir. 2022). In *Lonich*, the jury was instructed that, to find the defendant acted corruptly, "it must determine he intend[ed] to be influenced or rewarded in connection with any business transaction," which the Court concluded "appropriately stated the law." *Id.; see also Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 250 (9th Cir. 2018) (explaining that for purposes of 18 U.S.C. § 666, "[a]n act is done 'corruptly' if it is performed voluntarily, deliberately, and dishonestly, for the purpose of either accomplishing an unlawful end or result or of accomplishing some otherwise lawful end or lawful result by an unlawful method or means'); *United States v. Leyva*, 282 F.3d 623, 626 (9th Cir. 2002).

Evidence that a party took steps to conceal the bribe is strong evidence of corrupt intent. *See United States v. McNair*, 605 F.3d 1152, 1197 (11th Cir. 2010).

The Superseding Indictment properly alleges that defendant Porter and his co-conspirators acted with corrupt intent. As an initial matter, the Superseding Indictment states that the "stream of payments and benefits from Porter and Recology were paid with the purpose of influencing or attempting to influence and reward Nuru with regard to his official position with the DPW." Dkt. 67, ¶ 20. On a motion to dismiss an indictment, this allegation must be accepted as true. The Superseding Indictment's bribery charge (Count Six) further alleges that Porter authorized a $20,000 payment in December 2018 to the Lefty O'Doul's Foundation for Kids that was in fact a bribe payment to Nuru to fund his holiday party, and that the payment was made by Porter "intending to influence and reward an agent of the Department of Public Works of the City and County of San Francisco, namely, Mohammed Nuru, in connection with a transaction and series of transactions of the Department of Public Works involving $5,000 or more." *Id.* ¶ 32.

//

The Superseding Indictment alleges that Porter and Recology provided a stream of benefits to Nuru to influence his official acts, and specifically lists two sets of official acts Nuru could perform on Porter and Recology's behalf - his influence over Recology's application for an increase in the rates they could charge San Francisco Residents, and Nuru's influence over Recology's request to raise the "tipping fees" that DPW paid to Recology to accept truckloads of asphalt and cement waste that DPW brought to a recycling facility owned by Recology. *Id.* ¶ 10.

Defendant Porter claims in his motion to dismiss that the indictment "says nothing about Mr. Porter's understanding of the purpose of the payments, much less that he believed he was doing so by illegal means." *Dkt. 60*, pg. 13. That is incorrect. The original indictment stated that "Giusti agreed with Nuru, *with the knowledge and approval of Porter*, that Recology would give $20,000 to Nuru's for Nuru's use" in paying for the 2018 holiday party. *Dkt. 40* (Indictment) ¶ 11. And the Superseding Indictment alleges that Porter knowingly concealed and misrepresented the true nature of the bribe payments. *Dkt. 67*. The Superseding Indictment alleges that Porter approved payments, at Nuru's request, for holiday parties, in 2017, 2018, and 2019. *Id.*, ¶¶ 16, 17, 18. In each instance, Porter signed a Recology expense approval form that falsely labeled the payments as "holiday donations" to the Lefty O'Doul's Foundation for Kids. *Id.* The Superseding Indictment alleges that Porter did so *knowing* that in fact the monies were not going to a non-profit to benefit underprivileged children, but were in fact used to pay for Nuru's holiday parties." *See e.g id.*, ¶ 18 ("[o]n or about November 12, 2019, Porter approved another $20,000 payment from Recology to the Lefty O'Doul's Foundation for Kids falsely labeled '2019 Holiday Donation' that Porter knew was in fact a payment to Nuru to fund his annual holiday party.").

The Superseding Indictment properly alleges that the alleged stream of payments to Nuru and his designees, including payments for his holiday parties, meals, drinks, and other items of value, were all part of the scheme and conspiracy to defraud the citizens of the City of San Francisco of the honest services of Mohammed Nuru, and to bribe and to conspire to bribe Nuru.

4. The Alleged Conduct is Not Excluded Under 18 U.S.C. § 666(c)

Defendant claims that the conduct alleged in the indictment, and thus as applied to the Superseding Indictment, falls outside of the scope of the bribery statute, 18 U.S.C. § 666, because, under

9

18 U.S.C. § 666(c) bribery "does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." *Id.*  Defendant cites to the legislative history of the statutes, specifically House Report No. 797, 99th Cong. 2nd Session, to note that prosecutions under 18 U.S.C. § 666 should not be used to prosecute "acceptable commercial and business practices." *See* 1986 U.S.C.C.A. N. 6138, 6153.  The full text of that section, however, adds the following in a footnote: "18 U.S.C. 666 prohibits bribery of certain public officials, but does not seek to constrain lawful commercial business transactions.  Thus, 18 U.S.C. § 666 prohibits corruptly giving or receiving anything of value for the purpose of influencing or being influenced in connection with any business, transaction, or series of transactions." *Id.* at fn. 9.

More broadly, Section 666(c) refers to "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."  Therefore, the term usual course of business and acceptable commercial and business practices should be construed in the context of payments of bona fide salary, wages, and compensation, and expenses paid or reimbursed, only, and not more broadly to other, undefined business practices.  The Supreme Court did just that in *Fischer v. United States* declining to broaden Section 666(c)'s definition of expenses.  529 U.S. 667 (2000).  In *Fischer*, the Supreme Court rejected an argument that Medicare benefits qualified under the Section 666(c) exception for bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.  *Id.* at 677-678.  The Court held that Section 666(c) should be construed narrowly, that "[t]he payments in question have attributes and purposes well beyond those described in subsection (c)." *Id.*

Additionally, a salary or wage or expense is excluded from 666(c)'s safe harbor if they are not "bona fide" expenses, and are instead meant as a bribe or a payment meant to influence an official act.  *See e.g., United States v. Tadios*, 650 Fed. Appx. 394, 426-427 (9th Cir. 2014).  In *Tadios*, the defendant claimed that the district court erred in failing to dismiss the Section 666(a) bribery count against her for using funds from the clinic where she worked for personal travel, claiming that she properly obtained approval for use of the funds, and they were therefore legitimate expense reimbursements.  *Id.*  The Ninth Circuit upheld the district court's refusal to dismiss the indictment on that basis, holding that there was a question of whether they were *bona fide* expenses.  *Id.* ("[e]ven if the Tribe could authorize

10

Tadios' use of tribal funds for personal travel, whether Tadios in fact obtained permission is a question of fact for the jury to decide.). *See also United States v. Bryant*, 556 F. Supp. 2d 378 (D. N.J. 2008).

Finally, the question of whether Section 666(c)'s safe harbor provision for "bona fide" expenses applies is generally a question of fact for the jury. *See Tadios* 650 Fed. Appx. at 427 (refusing to dismiss an indictment based on claims that the payments fell within 666(c)'s safe harbor, holding that this was a question for the jury). Multiple other circuits have reached the same conclusion. *See also United States v. Baroni*, 909 F.3d 550, 578 (3d Cir. 2018), *United States v. George*, 842 F.3d 55, 62-63 (1st Cir. 2016); *United States v. Williams*, 507 F.3d at 909; *United States v. Ayala*, 2019 WL 2518122 (D. Or. June 8, 2019).

Even if an indictment could be dismissed in some instances based on claims that any alleged bribes fell within Section 666(c)'s safe harbor ambit, defendant Porter has failed to allege sufficient facts to support dismissal at this stage. Defendant Porter claims that payments for Nuru's holiday parties were bona fide expenses, but he fails to present any evidence that that is the case.

First, to the extent defendant is referring to the payments for the holiday parties, he mischaracterizes them. Defendant claims that Porter approved the payments "as his predecessor had done hundreds of times before him." The Superseding Indictment alleges that there were four payments for Nuru's holiday parties, once a year, from 2016 to 2019. Dkt. 67 ¶¶ 16-18. As the Superseding Indictment alleges, all four payments were falsely described as "holiday donations" and all four were concealed and misrepresented by funneling the payments through the Lefty O'Doul's Foundation for Kids, even though the money was not used to aid underprivileged children. *Id.* This concealment and deception is evidence that these payments were not "bona fide" payments made in the "usual course of business." Defendant Porter points to nothing in the Superseding Indictment to support the allegation that it was Recology's usual course of business to approve falsified payment request forms, nor is it in the normal course of business to direct legitimate payments for holiday parties through a non-profit purporting to provide access to baseball equipment to underprivileged kids.

To the extent defendant seeks to rely on extrinsic evidence that the payments were approved "hundreds of times before him," and that the payments were thus exempt from the bribery statute under its Section 666(c) safe harbor, that is a factual issue - much in dispute - that does not provide a proper

11

basis for dismissal of the Superseding Indictment.

The Superseding Indictment alleges that Porter personally approved three of the payments, from 2017 to 2019. The fact that Porter's predecessor may have approved one payment in 2016 does not absolve defendant Porter of culpability for his participation in the scheme and conspiracy, and would require the Court to rely on extrinsic evidence to even consider such a claim, which it must not do.

Defendant claims in his motion that all the payments, including for Nuru's holiday parties, were "processed, paid, and used for their intended purpose." *Dkt. 60,* pg. 16. This is an assertion of facts outside of four corners of the Superseding Indictment. And it is not a correct statement of the allegations in the Superseding Indictment. The Superseding Indictment alleges that the payments for Nuru's holiday parties were falsely labeled as holiday donations to a non-profit for underprivileged children. The Superseding Indictment properly alleges that the payments were used for their true intended purpose, as a bribe to Nuru, but were not used for their stated purpose, or their *misrepresented* intended purpose. *Id.*

Defendant's motion asserts that the government does not allege that "any of the payments approved by Mr. Porter were directed to Mr. Nuru personally or benefited Mr. Nuru in any way." *Id.* In fact, the Superseding Indictment clearly alleges that the payments were directed to benefit Nuru directly by funding, at his request, his holiday parties. *Dkt. 67,* ¶¶ 15-18. The motion to dismiss claims that "the government does not allege that Mr. Porter had any knowledge that, in approving these payments in the ordinary course of business, he was directing any funds to be misused by Mr. Nuru." *Dkt. 60,* pg. 16. In fact, the Superseding Indictment alleges that defendant Porter knew that the funds were being used to fund Nuru's holiday parties. It further alleges that, despite knowing that, he signed payment forms falsely claiming they were holiday donations to an ostensible independent charity. Because Porter knew the funds were in fact going to Nuru to fund his holiday parties, the Superseding Indictment properly alleges that he therefore knew that the funds were being misdirected from what he falsely asserted to Recology they were to be used for.

Finally, defendant Porter claims that the payments for Nuru's holiday parties were an accepted business practice because they were a type of what defendant describes as a "widely acceptable, common practice within the City for many years" and permitted by rules governing "behested

payments." *Dkt. 60*.  But defendant Porter provides no explanation as to what the behested policy was at the time, and does not explain why the payments alleged in the Superseding Indictment would fit within that policy.  Nor does defendant Porter claim that he or anyone at Recology relied on any legal advice or guidance that the payments were what he characterizes them as, acceptable "behested" payments.  Moreover, defendant's claim that these payments were widely accepted and common is belied by the fact that Porter and others concealed and misrepresented them to Recology and others, and hid the payments by directing them through a non-profit.  And regardless, his claims go well beyond the four corners of the Superseding Indictment are not properly adjudicated on a motion to dismiss.

Defendant Porter also fails to show how payments made to fund a public official's elaborate holiday parties would even meet the definition of "expenses paid or reimbursed" under 18 U.S.C. § 666(c).  Porter provides no explanation for his assertion that the Nuru holiday parties were "bona fide" payments within the limits of behested payment rules, he presents no evidence that the payments were approved by his superiors or by his attorneys, and he relies on assertions extrinsic to the Superseding Indictment, which are not to be considered in the context of a motion to dismiss.  To the extent defendant's claims focus on payments to Non-Profit A, those are moot as the Superseding Indictment does not allege that those payments were part of this honest services fraud scheme and conspiracy, or the bribery conspiracy.

Defendant Porter can, and likely will, raise these issues at trial.  Whether the payments were bona fide expenses paid in the usual course of business will then be for the jury to decide.  But the Superseding Indictment should not be dismissed on these grounds and this record.

**B.     The Superseding Indictment Alleges Porter Conspired to Commit Bribery**

Defendant next argues in his Motion to Dismiss that the Indictment must be dismissed because it failed to adequately allege the underlying crime of bribery, and therefore the conspiracy count cannot stand.  *Dkt 60*, pg. 18. Specifically, defendant Porter asserts that the bribery conspiracy count must be dismissed because the indictment failed to allege that defendant Porter engaged in criminal activity (i.e., bribery), and failed to allege the requisite corrupt intent.  *Id.*  Because, as explained in detail above, the Superseding Indictment does properly allege that there was a conspiracy to bribe Mohammed Nuru, and that defendant Porter joined that conspiracy knowing of at least one of its objects and intending to help

13

accomplish it, and that overt acts in furtherance of the conspiracy were committed, the conspiracy to commit bribery charge (Count Five) must stand.

### C. The Forfeiture Allegations in the Superseding Indictment Apply to the Charges

Defendant Porter argues that the forfeiture allegations in the indictment (and now in the Superseding Indictment), both pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) do not apply to the bribery charges. They do.

Title 18, United States Code, Section 981(a)(1)(C) cross references to 18 U.S.C. § 1956(c)(7) and indicates that the proceeds of any "specified unlawful activity, or a conspiracy to commit such offense" are subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(C). The referenced code section, 18 U.S.C. § 1956(c)(7)(B)(iv), provides that a specified unlawful activity includes the "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official." Thus, even though Sections 666 and 371 are not cited specifically in Section 981, they are nonetheless covered by the terms of Section 981(a)(1)(C) and the statutes referenced therein. Finally, Title 28, United States Code, Section 2461(c), allows the government to use Section 981(a)(1)(C) for criminal and civil case, so it is a proper basis for alleging forfeiture here. *See United States v. $100,000 Seized from Redstone Credit Union Account No. 3207*, 2017 WL 11636180 (C.D. Cal. 2017) (bribery of a public official is included in § 1956(c)(7)(iv) and therefore funds traceable to that scheme are subject to forfeiture).

### D. The Defendant is Not Entitled to a Bill of Particulars

An indictment need only be "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. E. Crim. P. 7(c)(1). The purpose of a bill of particulars is limited in nature. It provides "only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). A bill of particulars "is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). "Where an indictment is sufficient, the court is within its discretion in denying a request for a bill of particulars." *United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991). The United States is not required to "weave the information at its

1 command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States*
2 *v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972). A bill of particulars may not be used "to compel the
3 government to describe in detail the manner in which the crime was committed, thereby forcing the
4 prosecution to fix irrevocably the perimeters of its case in advance of trial." *United States v. Manetti*,
5 323 F. Supp. 683, 696 (D. Del. 1971).

6 In deciding whether to grant a motion to order a bill of particulars, a Court should consider
7 whether the defendant has been advised adequately of the charges through the indictment and all other
8 disclosures made by the government. *United States v. Giese*, 597 F.2d 1179, 1180 (9th Cir. 1979). Full
9 discovery will obviate the need for a bill of particulars. *Id; see also United States v. Clay*, 476 F.2d
10 1211, 1215 (9th Cir. 1973); *Long*, 706 F.2d at 1054 ("In determining if a bill of particulars should be
11 ordered in a specific case, a court should consider whether the defendant has been advised adequately of
12 the charges through the indictment and all other disclosures made by the government."); *United States v.*
13 *Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (bill of particulars unnecessary if indictment provides
14 "sufficient details" and "if the government provides full discovery"); *United States v. Mejia*, 448 F.3d
15 436, 446 (D.C. Cir. 2006) (bill of particulars properly denied where information sought was contained in
16 discovery such that "if the defendants felt ambushed, it was not because the government was lying in
17 wait, but because the defendants were not looking").

18 The defendant argues that the government has failed to identify specific bribes the government
19 alleges Mr. Porter knowingly provided to Mr. Nuru for Mr. Nuru's personal benefit. *Dkt. 67*. As
20 discussed above, the government adequately described the benefits Porter and his co-conspirators
21 provided to Mohammed Nuru, including four specific payments for Nuru's holiday parties, as well as
22 meals and drinks, including breakfasts at Stacks Restaurant and an $1,182 diner at Harris Restaurant,
23 and made clear that a personal benefit to Nuru is not required to be alleged under the bribery and honest
24 services fraud statutes. *See Inzunza,* 638 F.3d at 1018. The defendant claims that "it is not clear how or
25 why the government believes that Mr. Porter acted corruptly." *Id.* The Superseding Indictment, and this
26 opposition, make clear the standard for corrupt intent, and some of the evidence of defendant Porter's
27 corrupt intent. The defendant finally complains that the "vague, passive language in the Indictment"
28 leaves him unable to know what conduct he must defend against. *Id.* The Superseding Indictment is

15

sufficiently clear and addresses defendant's concerns sufficiently so that a Bill of Particulars is not warranted, at least not as to the questions and points defendant raises in this Motion to Dismiss.

The motion for a bill of particulars should be denied.

## VI.     CONCLUSION

The Superseding Indictment in this case is "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and therefore meet the requirements of Federal Rule of Criminal Procedure 7. *See* Fed. R. Crim. P. 7(c)(1). The Superseding Indictment provides more than sufficient facts to enable defendant Porter to adequately prepare for trial. A bill of particulars is not warranted.

Defendant's Motion to Dismiss should be denied.

STEPHANIE M. HINDS
United States Attorney

Dated: December 5, 2022

\_\_*/s/ David J. Ward*_____
DAVID J. WARD
ILHAM A. HOSSEINI
Assistant United States Attorneys