1  Robb C. Adkins (194576)
   Chardaie C. Charlemagne (*Admitted Pro Hac Vice*)
2  BAKER & HOSTETLER LLP
   Transamerica Pyramid Center
3  600 Montgomery Street, Suite 3100
   San Francisco, CA
4  Telephone:    415.659.2600
   Facsimile:    415.659.2601
5  Email:        radkins@bakerlaw.com
                 ccharlemagne@bakerlaw.com
6
7  Attorneys for JOHN FRANCIS PORTER

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN FRANCIS PORTER,<br><br>Defendant. | **CASE NO.: 22-CR-270-WHO**<br><br>**HON. WILLIAM H. ORRICK**<br><br>**DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**<br><br>Hearing Date:    December 19, 2022<br>Honorable William H. Orrick<br>Courtroom Two, 17th Floor |

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. The SI Fails to Ameliorate its § 666 Bribery Counts (Now Counts 5 & 6). ........... 2

        1. The SI Fails to Allege a Bribe under § 666................................................. 2

        2. The SI Fails to Remedy the Other § 666 Defects Raised in the Motion to Dismiss...................................................................................................... 3

    B. The New Honest Services Fraud Counts Should be Dismissed............................. 5

        1. Required Elements of Honest Services Mail and Wire Fraud .................... 5

        2. The SI Fails to Allege Materiality............................................................... 7

        3. The SI Fails to Allege an Implied *Quid Pro Quo* ...................................... 9

        4. The SI Fails to Allege a Specific Intent to Defraud and Bribe ................. 11

    C. The Forfeiture Notice in the SI Remains Without Basis ...................................... 11

    D. The Government Must Provide a Bill of Particulars............................................ 12

        1. Count One: 18 U.S.C. § 1349 ................................................................... 13

        2. Counts Two, Three, and Four: 18 U.S.C. §§ 2, 1341, 1343, 1346............ 13

        3. Count Five: 18 U.S.C. § 371 ..................................................................... 14

        4. Count Six: 18 U.S.C. §§ 2, 666(a)(2)........................................................ 14

        5. Forfeiture.................................................................................................... 15

III. CONCLUSION ................................................................................................................ 15

i

DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS      CASE NO.: 22-CR-270-WHO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carter v. United States*,
  530 U.S. 255 (2000) ............................................................................................................... 6

*Gilbert v. United States*,
  142 S. Ct. 1109 (2022) ........................................................................................................... 4

*McDonnell v. United States*,
  579 U.S. 550 (2016) ............................................................................................................. 10

*McNally v. United States*,
  483 U.S. 350 (1987) ............................................................................................................... 6

*Neder v. United States*,
  527 U.S. 1 (1999) ................................................................................................................... 6

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ......................................................................................... 7, 11

*United States v. Abouammo*,
  No. 19-CR-00621-EMC-1, 2021 WL 718842 (N.D. Cal. Feb. 24, 2021) .............................. 6

*United States v. Addonizio*,
  451 F.2d 49 (3d Cir. 1972) ................................................................................................... 12

*United States v. Avery*,
  719 F.3d 1080 (9th Cir. 2013) ................................................................................................ 5

*United States v. Ayala*,
  821 F. App'x 761 (9th Cir. 2020) .......................................................................................... 2

*United States v. Bryant*,
  655 F.3d 232 (3d Cir. 2011) ............................................................................................. 9, 10

*United States v. Bryant*,
  885 F. Supp. 2d 749 (D.N.J. 2012) ...................................................................................... 10

*United States v. Cabrera*,
  328 F.3d 506 (9th Cir. 2003) .................................................................................................. 2

*United States v. Garrido*,
  713 F.3d 985 (9th Cir. 2013) ............................................................................................. 2, 9

*United States v. Gross*,
  370 F. Supp. 3d 1139 (C.D. Cal. 2019) ................................................................................. 5

ii

DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS                     CASE NO.: 22-CR-270-WHO

*United States v. Hamilton*,
  46 F.4th 389 (5th Cir. 2022) .................................................................................................. 4

*United States v. Holmes*,
  No. 5:18-CR-00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020) ................................ 7

*United States v. Keuylian*,
  23 F. Supp. 3d 1126 (C.D. Cal. 2014) .................................................................................. 11

*United States v. Lonich*,
  23 F.4th 881 (9th Cir. 2022) ................................................................................................... 4

*United States v. Malkus*,
  696 F. App'x 251 (9th Cir. 2017) ......................................................................................... 10

*United States v. Manarite*,
  44 F.3d 1407 (9th Cir. 1995) .................................................................................................. 5

*United States v. McNair*,
  605 F.3d 1152 (11th Cir. 2010) .............................................................................................. 2

*United States v. Milovanovic*,
  678 F.3d 713 (9th Cir. 2012) ........................................................................................... 7, 11

*United States v. Oesterblad*,
  12 F.3d 1110 (9th Cir. 1993) ....................................................................................... 6, 7, 11

*United States v. Phillips*,
  704 F.3d 754 (9th Cir. 2012) .................................................................................................. 6

*United States v. Roberson*,
  998 F.3d 1237 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1109 (2022) ................................. 4

*United States v. Shelton*,
  99 F. App'x 136 (9th Cir. 2004) ............................................................................................ 6

*United States v. Tanabe*,
  No. CR 11-0941, 2012 WL 5868968, at *5 (N.D. Cal. Nov. 19, 2012) .............................. 6, 8

*United States v. Vo*,
  766 F. App'x 547 (9th Cir. 2019) .......................................................................................... 2

*United States v. White*,
  663 F.3d 1207 (11th Cir. 2011) .............................................................................................. 4

*United States v. Woods*,
  335 F.3d 993 (9th Cir. 2003) .................................................................................................. 6

iii

**Statutes**

18 U.S.C. § 2 .................................................................................................................. 13, 14

18 U.S.C. § 371 ............................................................................................................ 1, 13, 14

18 U.S.C. § 666 ............................................................................................................... 1, 2, 3

18 U.S.C. § 666(a)(1)(B) ....................................................................................................... 2

18 U.S.C. § 666(a)(2) ......................................................................................................... 2, 14

18 U.S.C. § 1341 ............................................................................................................ 1, 5, 13

18 U.S.C. § 1343 ............................................................................................................ 1, 5, 13

18 U.S.C. § 1346 ......................................................................................................... 1, 5, 7, 13

18 U.S.C. § 1349 ............................................................................................................ 1, 5, 13

**Other Authorities**

Fed. R. Crim. P. 7(c) ............................................................................................................... 1

Fed. R. Crim. P. 12(b)(3)(B)(v) ............................................................................................. 1

Model Crim. Jury Instr. 9th Cir. 15.32 (2022) ...................................................................... 6

Model Crim. Jury Instr. 9th Cir. 15.34 (2022) ................................................................. 7, 11

Model Crim. Jury Instr. 9th Cir. 15.35 (2022) ...................................................................... 6

iv

DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS          CASE NO.: 22-CR-270-WHO

Pursuant to Federal Rules of Criminal Procedure 7(c) and 12(b)(3)(B)(v), defendant John Francis Porter respectfully submits this reply memorandum of law in support of his motion to dismiss the Superseding Indictment ("SI"), or in the alternative, for a bill of particulars.

## I.     INTRODUCTION

For more than 19 months the government has alleged, both in a criminal complaint, and later by indictment, that Mr. Porter corruptly engaged in bribery in violation of 18 U.S.C. § 666, focusing on donations to two entities: Lefty O'Doul's Foundation for Kids ("Lefty O'Doul's") and an entity referred to as Non-Profit A. ECF Nos. 1 and 40. On November 8, 2022, Mr. Porter filed his motion to dismiss, challenging the allegations as to both donations, explaining that the bribery charges fail to sufficiently allege the required elements of bribery, and that the government failed to allege corrupt intent. ECF No. 60.

In response, on November 29, 2022, the government filed the SI. ECF No. 67. In the SI, the government, for the first time, two months before trial is to commence, has added a new legal theory: that Mr. Porter engaged in honest services mail and wire fraud. The government has admitted that these charges are not based on any newly discovered facts or evidence, noting at the last hearing that the SI is based on the same course of conduct as the prior charges. The SI provides six separate counts – Section 666 bribery, Section 371 conspiracy to commit bribery, Sections 1341, 1343, and 1346 honest services mail and wire fraud, and Section 1349 honest services conspiracy – that are all based on a single set of identical factual allegations.[1] Thus, the SI appears to be an attempt to find a new honest services fraud theory as a fallback due to the infirmity of the long-held bribery allegations.

Furthermore, the government expressly abandoned its allegations related to Non-Profit A, tacitly conceding they were unsupportable, and Mr. Porter is no longer alleged to have engaged in any wrongdoing relating to those matters. The remaining Lefty O'Doul's allegations, however, suffer from the same infirmity and should be dismissed.

---

[1] The SI also adds two counts, Count Two and Four, which separately allege mail fraud and wire fraud based on the jurisdictional mailing of a single check that was later cashed. These two separate counts for the same check appear to have been alleged separately merely as a means to add counts. Compare SI ¶ 25 with SI ¶ 27.

1

## II. ARGUMENT

The government contends in its Opposition that the SI cures the deficiencies that Mr. Porter identified in his motion to dismiss. This is not true. In fact, not only does the SI fail to correct the many problems that Mr. Porter identified in his motion to dismiss, as described below, it contains additional flaws under the new charges of honest services fraud.

### A. The SI Fails to Ameliorate its § 666 Bribery Counts (Now Counts 5 & 6).

This Reply will attempt to avoid repeating arguments and authorities raised in the motion to dismiss as they apply to Section 666, which are re-alleged in the SI, and instead focus on the government's arguments that the SI's allegations remedy the defects in the bribery counts.

#### 1. The SI Fails to Allege a Bribe under § 666

The government argues that the SI now makes clear the specific bribes that it contends Mr. Porter paid to Mr. Nuru, and in so doing reveals that the bribery charge against Mr. Porter falls short of § 666's requirement that the bribe exceeds $5,000. Opp. 4-6. "Precedent in this circuit interprets § 666(a) to require the 'bribe [to] exceed $5,000,' not the 'business' or 'transaction' exchanged." *United States v. Vo*, 766 F. App'x 547, 550 (9th Cir. 2019) (quoting *United States v. Cabrera*, 328 F.3d 506, 509 (9th Cir. 2003)); *see also United States v. Garrido*, 713 F.3d 985, 1001 (9th Cir. 2013) (noting the "requirement that the illegal gift or bribe be worth over $5,000" for a § 666 charge).[2]

The only things of value that the government alleges Mr. Porter participated in providing to Mr. Nuru are routine business transactions of various breakfasts and one dinner, which were attended by numerous individuals other than Mr. Nuru and Mr. Porter. The government does not, and cannot, allege that these dinners and breakfast added up to food and drink to Mr. Nuru in excess of $5,000—even if some of all of them could be aggregated to meet the necessary amount. *See United States v. Ayala*, 821 F. App'x 761, 763–64 (9th Cir. 2020) (noting ambiguity in the case law on the extent to which transactions may be aggregated).

---

[2] Some courts interpret the $5,000 requirement as relating to the transaction that the bribe seeks to influence. *See, e.g., United States v. McNair*, 605 F.3d 1152, 1186 (11th Cir. 2010) (stating that the "$5,000 in § 666(a)(1)(B) and (a)(2) refers to the value of the 'business, transaction, or series of transactions,' not the value of the bribe" but identifying courts that apply the $5,000 requirement to the bribe). The SI would fail even if the $5,000 requirement applied to the transaction because the government does not identify the value of any transaction.

2

After dropping allegations related to Non-Profit A, which had alleged that Mr. Nuru could access donations for his own personal use and benefit, *see* ECF No. 40 ¶ 8, the SI is left only with donations Recology made to the City Administrator's annual holiday party. Misleadingly, the SI and the government's Opposition refer to these payments being made "to Nuru" for "Nuru's holiday parties." SI ¶¶ 16–17, Opp. at 3, 5-6. The Opposition further tries to characterize the City Administrator's annual holiday party as "an illegal gift to Nuru," describing the holiday party not as a City Administrator's department-wide annual holiday party, but rather parties for Mr. Nuru, specifically for "*his* friends" and "*his* political supporters." Opp. at 3, 5.

But stripped of the Opposition's characterizations, the SI alleges, as it must, that these were not payments to Mr. Nuru personally, but rather to the costs of the annual department-wide holiday party. The SI further alleges, as it must, that these were not private parties for Mr. Nuru, they were annual holiday parties for hundreds of city employees, the city workers who, like numerous other parties across many other departments, wished to hold an event to celebrate the holidays. Nor are there any allegations in the SI that supports the Opposition's characterization that these parties were held to support "political supporters." Mr. Nuru is not an elected official and this event was in no way akin to a benefit that a politician could receive in an election or campaign fundraising event. The only benefit *to Mr. Nuru* at this holiday party would have been the food and drink he consumed—coming nowhere close to the required minimum of $5,000 required under § 666.[3] Counts Five and Six should be dismissed for failing to meet this required element.

    2. <u>The SI Fails to Remedy the Other § 666 Defects Raised in the Motion to Dismiss</u>

Aside from naming the specific bribes Mr. Porter allegedly provided, the SI has failed to provide additional allegations that address the other flaws related to § 666 identified in Mr.

---

[3] In fact, under the government's own allegations in the SI, the total benefit provided to Mr. Nuru is less than $1,000. Six people attended the approximately $1,182 Harris meal, yielding a value of $200 for Mr. Nuru. Mr. Porter used his corporate card to pay for approximately 14 Breakfasts at Stacks, which was a modest locale and was attended by numerous people, thus yielding at most a value to Mr. Nuru of around $300 ($20 multiplied by 14). Finally, hundreds of people attended the City Administrator's holiday party, and $55,000 ($15,000 of which was actually approved by Mr. Porter's boss, not Mr. Porter) divided by 300 people results in a benefit of approximately $184 to Mr. Nuru himself.

Porter's opening brief. Again, we will not repeat all those arguments here and will instead focus on the government's Opposition arguments.

Regarding the failure to sufficiently allege Mr. Porter's corrupt intent, the government argues that the SI describes an alleged "stream of payments" that Mr. Porter and Recology allegedly provided to Mr. Nuru, and that a payment Mr. Porter authorized "was in fact a bribe payment to Nuru to fund his holiday party." Opp. at 8. Merely labeling a payment a bribe is insufficient to allege corrupt intent. Despite the authorities cited in the Motion to Dismiss in which courts have found corrupt intent to have been properly alleged, the SI does not provide any allegations that Mr. Porter attempted to destroy evidence, c*f. United States v. White*, 663 F.3d 1207, 1213–15 (11th Cir. 2011); *United States v. Roberson*, 998 F.3d 1237, 1249 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1109 (2022), and *cert. denied sub nom. Gilbert v. United States*, 142 S. Ct. 1109 (2022); that he met with Mr. Nuru, Mr. Giusti, or anyone else in secrecy, or secretly record any such meetings, c*f. Roberson*, 998 F.3d at 1249; that any funds were secretly misappropriated by Mr. Nuru for his personal enrichment, c*f. United States v. Hamilton*, 46 F.4th 389, 391 (5th Cir. 2022); or that Mr. Porter received any "pecuniary gain" or exhibited a "wrongful desire" for such gain, c*f. United States v. Lonich*, 23 F.4th 881, 902–03 (9th Cir. 2022).

Instead, the SI continues to rely heavily on Mr. Giusti's conduct separate and apart from Mr. Porter's, and in particular, a conversation that Mr. Giusti had with Mr. Nuru on November 26, 2018, in which Mr. Nuru allegedly linked the donation to a separate contract issue. But the government does not claim that Mr. Giusti conveyed this to Mr. Porter. Rather, it only alleges that Mr. Giusti "informed PORTER that Nuru wanted $20,000 to pay for his upcoming holiday party." SI ¶¶ 17, 29(a). A day later, on November 27, 2018, Mr. Porter approved Mr. Giusti's request for a $20,000 payment from Recology to Lefty O'Doul's. SI ¶¶ 17, 29(b) and (c). These allegations only show that Mr. Porter approved a recurring and established (before Mr. Porter's time) payment to Lefty O'Doul's for use in funding the holiday party, a fact that Mr. Porter has never contested and which, as discussed in Section II.B.3, below, fails to sufficiently allege any implied *quid pro quo*, much less corrupt intent.

4

DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS         CASE NO.: 22-CR-270-WHO

Last, the Opposition dedicates almost half of its argument section to addressing Mr. Porter's argument that the payments were made, approved, and paid for their intended events and are therefore excluded under § 666(c) safe harbor for expenses paid or reimbursed in the ordinary course of business. Opp. at 9-14. But the government's argument is essentially that this should be a question of fact for the jury and that the court must remain confined to the four corners of the government's allegations. Mr. Porter disagrees, but will not repeat his arguments here, and, if the SI is not dismissed, the jury will need to be instructed on this established exception.

**B.    The New Honest Services Fraud Counts Should be Dismissed**

The government charges Mr. Porter for the first time with conspiracy to commit honest services mail and wire fraud in violation of 18 U.S.C. § 1349 (Count 1) and honest services mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1346 (Counts 2-4).

### 1.    Required Elements of Honest Services Mail and Wire Fraud

"Section 1346, which defines honest services fraud, is not a standalone criminal offense, but must be charged in conjunction with 18 U.S.C. §§ 1341[, which defines mail fraud] or 1343[, which defines wire fraud,] as the means or theory by which the fraud was committed." *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013). Thus, "[h]onest services fraud is a variant of both mail fraud and wire fraud." *United States v. Gross*, 370 F. Supp. 3d 1139, 1146 (C.D. Cal. 2019). And "Section 1346 merely modifies the definition of 'scheme or artifice to defraud' included in §§ 1341 and 1343 to prohibit one particular manifestation of mail or wire fraud— abuse of a position of trust which the law recognizes as depriving another of the intangible right of honest services." *Avery*, 719 F.3d at 1083.

The mail and wire fraud statutes require the same elements except the mail fraud statute requires the use of mail and the wire fraud statute requires the use of a wire to execute the alleged scheme. Indeed, "[t]he mail fraud and wire fraud statutes 'share identical language' regarding the scheme requirements, so the wire fraud statute is read in light of the case law on mail fraud." *United States v. Manarite*, 44 F.3d 1407, 1411 n.5 (9th Cir. 1995).

Thus, to state an offense of mail or wire fraud under 18 U.S.C. § 1341 or 1343, the government must allege that Mr. Porter "(1) 'devised or intend[ed] to devise a scheme to defraud

(or to perform specified fraudulent acts);' and (2) that he 'use[d] . . . the mail [or a wire] for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts),'" *United States v. Phillips*, 704 F.3d 754, 762 (9th Cir. 2012) (quoting *Carter v. United States*, 530 U.S. 255, 261 (2000)); *see also United States v. Abouammo*, No. 19-CR-00621-EMC-1, 2021 WL 718842, at *3 (N.D. Cal. Feb. 24, 2021); Model Crim. Jury Instr. 9th Cir. 15.32 and 15.35 (2022). "Dishonest methods or schemes designed 'to wrong[ ] one in his property rights,' or 'the deprivation of something of value by trick, deceit, chicane or overreaching' will fulfill the 'scheme to defraud' element." *United States v. Oesterblad*, 12 F.3d 1110 (9th Cir. 1993) (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)).

The government must also allege materiality of falsehood. *See Neder v. United States*, 527 U.S. 1, 25 (1999) ("we hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes"); *see also* Model Crim. Jury Instr. 9th Cir. 15.32 and 15.35 (2022). The allegations necessary to satisfy the materiality element depend on the theory of fraud relied upon by the government. Mail fraud can take the form of "(1) a scheme or artifice to defraud, or (2) obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Woods*, 335 F.3d 993, 1000 n.4 (9th Cir. 2003). If the government relies on a scheme or artifice to defraud theory, they must allege that the scheme is "reasonably calculated to deceive." *United States v. Tanabe*, No. CR 11-0941 SBA, 2012 WL 5868968, at *5 (N.D. Cal. Nov. 19, 2012) (quoting *Woods*, 335 F.3d at 998). If the government relies on a theory of misrepresentations or failure to disclose material facts, they must allege that "the statements made [or facts omitted] as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property." *See* Model Crim. Jury Instr. 9th Cir. 15.32 and 15.35 (2022); *see also United States v. Shelton*, 99 F. App'x 136, 141 (9th Cir. 2004) ("*Neder v. United States* merely required a 'falsehood' to be material, . . . while we have explained that a scheme to defraud need only be reasonably calculated to deceive even if there is no misrepresentation of a single fact.").

Additionally, the government must allege specific intent. *See* Model Crim. Jury Instr. 9th Cir. 15.32 and 15.35 (2022). "The requirement of specific intent . . . is satisfied by 'the existence

6

of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself.'" *Oesterblad*, 12 F.3d at 1110 (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)).

In addition to the elements discussed above, because the government is alleging a scheme and artifice to defraud the public of its right to the honest services of a public official under § 1346, they must also allege that (1) the scheme or plan to defraud was one to deprive the victim of his right to honest services; (2) the scheme or plan consisted of a bribe or kickback in exchange for services; and (3) the violation of a fiduciary duty. *See United States v. Milovanovic*, 678 F.3d 713, 726 (9th Cir. 2012); *see also* Model Crim. Jury Instr. 9th Cir. 15.34 (2022). The failure to allege any one of the aforementioned elements is a fatal flaw necessitating dismissal of an indictment. *See United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *12 (N.D. Cal. Feb. 11, 2020) ("An indictment's failure to recite an essential element of the charged offense, namely materiality, is a fatal flaw that requires dismissal of the indictment."). Accordingly, here, the honest services mail and wire fraud should be dismissed for failure to allege: (1) materiality of falsehood and (2) intent to defraud.

### 2. The SI Fails to Allege Materiality

The government fails to allege the requisite materiality. The government alleges that Mr. Porter joined a "conspiracy and a scheme and artifice to defraud the public of its right to the honest services of a public official, Nuru, through bribery and kickbacks in breach of the official's fiduciary duty" no later than October 2017. SI ¶ 6. The government alleges further that "[t]he scheme and conspiracy was carried out by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts." *Id*. It is unclear if the government is relying on a scheme to defraud or a misrepresentations/failure to disclose material facts theory, but other than this conclusory allegation of fraudulent representations and omissions, the SI does not specify what those representations and omissions are, much less that they are material.

If the government relies on a scheme to defraud theory, it fails to allege that the purported

7

scheme was "reasonably calculated to deceive." *Tanabe*, 2012 WL 5868968, at *5. As discussed in Mr. Porter's opening brief, the government does not allege that Mr. Porter acted dishonestly to accomplish anything unlawful or that Mr. Porter destroyed evidence or that he met with Mr. Nuru, Mr. Giusti, or anyone else in secrecy, or that he secretly recorded any such meetings. The SI similarly fails to allege any such deceit. The holiday party donations were not secretly misappropriated by Mr. Nuru for his personal enrichment and Mr. Porter did not direct anyone to lie about the payments nor did he deceive anyone concerning the donations.

The SI alleges only one potential misrepresentation/concealment by Mr. Porter: that he allegedly concealed payments to fund the DPW holiday party by labeling them as "Holiday Donation[s]" to the non-profit Lefty O'Doul's. *See* SI ¶¶ 15–16. This allegation fails to allege a material misrepresentation for at least two reasons.

First, the government's allegation that Mr. Porter "label[ed]" payments to Lefty O'Doul's to fund the DPW holiday party is based on an internal Recology form signed by Mr. Porter describing the check to be issued as a "Holiday Donation" in the description box. *See* Complaint, ECF No. 1 ¶ 60. This request was first prepared and submitted two years before Mr. Porter had been promoted or had any role in approving such payments and he had nothing to do with it. In 2017 the request was forwarded to Mr. Porter because the person who was responsible at that time for approval, Mark Arsenault, was out of the office. Mr. Porter refused to approve the payment unless instructed to by Mr. Arsenault. Mr. Arsenault talked with Mr. Porter and explained that it was an appropriate expense and that it should be approved. The following year, in 2018, a new form, created by Mr. Porter to specifically track donations and sponsorships was submitted by Mr. Giusti, not Mr. Porter, with the same description "holiday donation" on it. Mr. Porter understood what this payment was for because of the explanation from Mr. Arsenault the year before. Regardless, the alleged misrepresentation in the form was not made by Mr. Porter, and thus the SI makes no allegation that Mr. Porter made this representation or colluded with others in doing so.

Second, a description line on an internal Recology document used to submit check requests to be approved, issued by the company, and describing the requested payment as a

"Holiday Donation," had absolutely *no* tendency to influence, nor was it capable of influencing, the decision of the decision-making body to which it was addressed. According to the government's allegations in the SI, "Paul Frederick Giusti, Mohammed Nuru, Nick Bovis, Recology, and others, known and unknown to the grand jury" conspired to commit honest services mail and wire fraud. SI ¶ 22. Accordingly, anyone who would have seen the check request forms or known that the payments to Lefty O'Doul's were labeled as a "Holiday Donation" on such forms were all co-conspirators in the alleged scheme to defraud. These individuals, as co-conspirators, could not have been influenced by the characterization of the Lefty O'Doul's payments as holiday donations because according to the government's own allegations, they were in on the alleged conspiracy–they allegedly knew the payment was being used to pay for the DPW holiday party. Indeed, the government alleges that "Recology, at Giusti's request, issued a $5,000 check falsely made out as a 'Holiday Donation' to the 'Lefty O'Doul's Foundation for Kids.'" SI ¶ 14. And that Nick Bovis (a person Mr. Porter has never met or communicated with) "participated in the conspiracy, agreeing, at Nuru's urging, to use the Lefty O'Doul's Foundation for Kids to accept corporate donations from Recology and others to pay for Nuru's holiday parties, and to conceal their source." SI ¶ 12. As alleged co-conspirators, the check request forms could not have concealed the source of the Lefty O'Doul's payments and was incapable of influencing the recipient's decision making. Accordingly, the government fails to allege materiality and their honest services mail and wire fraud charges should be dismissed.

### 3. The SI Fails to Allege an Implied *Quid Pro Quo*

A charge for theft of honest services by bribery requires the government to allege "at least an implied quid pro quo." *Garrido*, 713 F.3d at 997 (reversing honest services bribery conviction because jury instructions did not adequately explain that the jury needed to show an implied *quid pro quo*). In other words, "not every payment made to a public official constitutes a bribe." *United States v. Bryant*, 655 F.3d 232, 245 (3d Cir. 2011) (quoting jury instructions). And a "payment made in a general attempt to build goodwill or curry favor with a public official, without more, does not constitute a bribe." *Id*. The government must instead allege that Mr. Porter made some payment to Mr. Nuru with "an intent to influence" Mr. Nuru in providing some

9

benefit to Mr. Porter. *Id.*; *see also United States v. Malkus*, 696 F. App'x 251, 252 (9th Cir. 2017) ("A jury may 'conclude that an agreement was reached if the evidence shows that the public official received a thing of value knowing that it was given with the expectation that the official would perform an 'official act' in return.'") (quoting *McDonnell v. United States*, 579 U.S. 550, 572 (2016)).

The government identifies two *quos*: (1) Recology's 2017 rate increase, and (2) an attempt to increase fees that Recology charged the City to dump material at a Recology recycling facility. ECF No. 67 ¶¶ 8–10. The government admits that the 2017 rate increase was finalized before Mr. Porter supposedly joined the conspiracy to bribe Mr. Nuru, so Mr. Porter cannot have sought to illegally influence that transaction. Compare *id.* ¶ 7 ("Defendant PORTER joined the conspiracy no later than October 2017), *with id.* ¶ 9 (stating that the San Francisco Rate Board approved the rate increase on June 19, 2017).

That leaves the government with a theory that Mr. Porter intended to give Mr. Nuru money to influence the tipping fee contract. This money, according to the government, comes in the form the yearly donation that Recology made to Lefty O'Doul's, which Mr. Porter understood acted as a fiscal agent to support the DPW's yearly holiday party. This donation approved and paid by others prior to Mr. Porter assuming a role of approving such payments. *Id.* ¶ 13-14. The government must allege that Mr. Porter approved the yearly donation this time for the nefarious purpose of bribing Mr. Nuru to influence the tipping fees. The government fails to allege facts showing that Mr. Porter even knew Mr. Giusti intended the payments for that purpose. *See United States v. Bryant*, 885 F. Supp. 2d 749, 767 (D.N.J. 2012) (rejecting bribery charge where government failed to prove the defendant "even had knowledge that the payments made pursuant to the Retainer Agreement were intended to be exchanged for his official acts").

The government attempts to connect the dots in paragraph 29, but tellingly never actually alleges any direct knowledge by Mr. Porter. It alleges that "Nuru told Giusti that Recology should pay more money than last year," and "[o]n the same call told Giusti that Nuru was working on getting PORTER the increase in tipping fees paid to Recology that PORTER and Recology were seeking." ECF No. 67 ¶ 29. Perhaps this is enough to allege an implied

1   agreement to exchange things of value for Mr. Giusti.  But the government fails to allege Mr.
2   Porter ever found out that Mr. Nuru linked the donation to the tipping fee increase; it only alleges
3   that Giusti "informed PORTER that Nuru wanted $20,000 to pay for his upcoming holiday
4   party." (Id.)  And that is all Mr. Giusti told Mr. Porter. The government knows this—its attorneys
5   and agents have interviewed Mr. Giusti several times, and his story has not changed.

6         Mr. Porter simply approved a yearly donation that had been approved before his tenure to
7   an organization that he understood to be a fiscal agent of the City—like numerous other donations
8   that organizations throughout the City have made for parties for years.  To charge Mr. Porter with
9   bribery, the SI must allege more than this.

          4.      The SI Fails to Allege a Specific Intent to Defraud and Bribe

11         As discussed above, "[t]he requirement of specific intent . . . is satisfied by 'the existence
12   of a scheme which was reasonably calculated to deceive persons of ordinary prudence and
13   comprehension, and this intention is shown by examining the scheme itself.'" *Oesterblad*, 12
14   F.3d at 1110 (quoting *Schreiber*, 806 F.2d at 1400).  Where an indictment fails to allege deceit, it
15   must be dismissed. *United States v. Keuylian*, 23 F. Supp. 3d 1126, 1129 (C.D. Cal. 2014) ("The
16   Indictment must also be dismissed because it fails to allege that VCI was ever deceived").
17   Moreover, honest services fraud requires within the intent to defraud, that Mr. Porter intended to
18   deprive the victim of his right of honest services, and that he made a bribe in exchange for
19   services.  *See Milovanovic*, 678 F.3d at 726; *see also* Model Crim. Jury Instr. 9th Cir. 15.34
20   (2022).  For the reasons discussed above regarding the failure to adequately plead bribery and
21   *quid pro quo* (Section II.A and II.B.3), the SI must be dismissed for failing to sufficiently allege
22   intent to defraud and bribery.

23       **C.**    **The Forfeiture Notice in the SI Remains Without Basis**

24         In his motion to dismiss, Mr. Porter argued that the Indictment's forfeiture allegations are
25   unsupported because the Indictment fails to allege that Mr. Porter personally benefitted in any
26   way from his alleged conduct.  Like the Indictment, the SI contains no allegation that Mr. Porter
27   benefitted personally in any way, much less that he received "property, real or personal,
28   constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of those violations." SI ¶ 34.  Mr. Porter received no property derived from proceeds from any alleged criminal conduct or charged criminal violations.  Mr. Porter did not receive any proceeds from Mr. Nuru or anyone else.  Accordingly, the SI's forfeiture notice is misplaced and should be either explained by the government with support, or withdrawn.

### D.  The Government Must Provide a Bill of Particulars

In its Opposition, the government argues that Mr. Porter's motion for a bill of particulars should be denied, noting that Mr. Porter is not entitled to the government's "fully integrated trial theory." Opp. at 15, (quoting *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972)).  This is not what Mr. Porter seeks with his request for a bill of particulars.  Instead, Mr. Porter seeks the answers to the fundamental questions he identified in his motion to dismiss and additional questions raised by the government's continuing evolving charges against him.  The government has made no effort to answer these questions and they remain unanswered by the SI.

The government claims that its SI has now made clear the specific benefits Mr. Porter and his co-conspirators provided to Mr. Nuru: "four specific payments for Nuru's holiday parties," "breakfasts at Stacks Restaurant," and "an $1,182 diner [sic] at Harris Restaurant." Opp. at 15. However, this explanation is not clear because, in the government's SI, it alleges that Mr. Porter did not join the alleged conspiracy until October 2017, after at least one of those four payments; do they allege that the 2016 payment is somehow a benefit that Mr. Porter provided to Mr. Nuru? Moreover, many of the allegations in the prior Indictment have now been removed.  Does that mean that the government is no longer alleging that Mr. Porter criminally conspired to provide such benefits?  For example, Mr. Porter had no role with respect to the summer internship for Mr. Nuru's son, but that allegation was included in the Indictment but has been removed from the SI. Does the government no longer allege that summer internship benefit as part of the alleged bribery that Mr. Porter is alleged to have engaged in?

The confusing multiplicity of counts in the SI, all premised on the same conduct, creates further need for a bill of particulars.  The SI breaks the previously alleged conspiracy into two conspiracies, deriving from the same course of conduct covering the same period of time, but listing different conspirators under different statutes.  SI ¶¶ 21–23, 30–32.  This renders unclear to

12

DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS                    CASE NO.: 22-CR-270-WHO

Mr. Porter what he is defending (and risks jury confusion) with multiple conspiracies with different conspirators. And each of these conspiracies are devoid of any specific allegations other than incorporating by reference the identical preliminary allegations under the heading "*Honest Services* Fraud Scheme and Conspiracy" applied to both the honest services *and* bribery conspiracies. *See id.* ¶¶ 6–20. To make matters worse, the SI simply lists "Recology" as a co-conspirator in the Section 1349 conspiracy but not in the Section 371 Conspiracy. It is unclear to Mr. Porter, and presumably to the grand jury, and eventually to the jury, who, among the thousands of people at "Recology," Mr. Porter is now alleged to have conspired with. The SI also removed any references to Recology Executive 1, Mr. Porter's former supervisor and predecessor in his position at Recology; by affirmatively removing him from the new charges, is the government no longer alleging him as a co-conspirator, as they have for the prior 19 months?

Simple questions such as who the government is alleging Mr. Porter conspired with when they charge him with conspiracy, and what they are alleging he conspired to do in each of these separate conspiracies, is not an effort to obtain the government's "fully integrated trial theory" as the Opposition claims, but rather is necessary for Mr. Porter to understand the charges, ensure they are the same charges the grand jury approved, and defend himself from charges filed two months before trial is to commence.

Accordingly, Mr. Porter requests disclosure of the following particulars, and reserves his right to provide additional arguments in support of his motion to dismiss based on the government's disclosure:

    1.    <u>Count One: 18 U.S.C. § 1349</u>

    a)    Identify all alleged co-conspirators and the time periods of their participation in the charged conspiracy. *See* SI ¶¶ 6, 22.

    b)    Identify who at Recology is alleged to have conspired with Mr. Porter, in addition to Mr. Giusti. *See* SI ¶ 22 (alleging that Mr. Porter knowingly conspired with Mr. Giusti, Mr. Nuru, Nick Bovis, and "Recology").

    2.    <u>Counts Two, Three, and Four: 18 U.S.C. §§ 2, 1341, 1343, 1346</u>

    a)    Identify whether the government intends to rely on a scheme to defraud or

misrepresentations/failure to disclose material facts theory as discussed in Section II.B.2.

  b) Identify the basis for the required element of materiality.

  c) Identify the basis for the required element of specific intent.

  3. <u>Count Five: 18 U.S.C. § 371</u>

  a) Identify all alleged co-conspirators and the time periods of their participation in the charged conspiracy. *See* SI ¶¶ 6, 29.

  b) Confirm that paragraphs 1 through 20 of the SI, which are incorporated by reference in Count Five, but which are in a section titled "The Honest Services Fraud Scheme and Conspiracy" are in also intended as the supporting allegations for the Conspiracy to Commit Bribery charged in Count Five. *Id.* ¶¶ 6–20, 29.

  c) Identify all things of value that were knowingly and corruptly given to Mr. Nuru or any other person, intending to influence his official actions, as part of the charged conspiracy, and that the government contends were agreed upon and reasonably foreseeable to Mr. Porter, in violation of 18 U.S.C. § 371. *Id.* ¶¶ 6–20, 28-29.

  d) Identify all of the official actions that the government alleges were influenced or intended to be influenced as part of the charged conspiracy, and that the government contends were agreed upon and reasonably foreseeable to Mr. Porter.

  4. <u>Count Six: 18 U.S.C. §§ 2, 666(a)(2)</u>

  a) Confirm that paragraphs 1 through 20 of the SI, which are incorporated by reference in Count Six, but which are in a section titled "The Honest Services Fraud Scheme and Conspiracy" are in also intended as the supporting allegations for the Bribery charged in Count Six. *Id.* ¶¶ 6–20, 30-32.

  b) Identify all things of value that the government alleges Mr. Porter knowingly and corruptly gave or caused to be given to Mr. Nuru for Mr. Nuru's personal benefit, intending to induce his official actions, in violation of 18 U.S.C. §§ 2 and 666(a)(2).

  c) Identify all things of value that the government alleges Mr. Porter knowingly and corruptly gave or caused to be given to anyone other than Mr. Nuru, intending to induce their official actions, in violation of 18 U.S.C. §§ 2 and 666(a)(2).

   d) Identify the personal benefit or gain allegedly provided by Mr. Porter to Mr. Nuru pursuant to the government's bribery charge in Count Two and clarify whether the government alleges that Mr. Porter gave or caused to be given to Mr. Nuru a gift that was of some other value –tangible or otherwise.

   e) Identify the basis for the required element of corrupt intent with respect to Count Six against Mr. Porter.

   5. <u>Forfeiture</u>

   a) List all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of the charges in the SI, as well as the nexus between any such property and the charged offenses.

## III. CONCLUSION

For the foregoing reasons, Mr. Porter respectfully requests this Court to dismiss the SI, or in the alternative, order a bill of particulars as to the allegations of Counts One through Six of the SI and the forfeiture notice.

Dated: December 12, 2022   Respectfully submitted,

          BAKER & HOSTETLER LLP

          By: */s/ Robb C. Adkins*
            Robb C. Adkins
            Chardaie C. Charlemagne (*Admitted Pro Hac Vice*)

          *Attorneys for Defendant John Francis Porter*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT JOHN FRANCIS PORTER'S REPLY IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS  CASE NO.: 22-CR-270-WHO