STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHN FRANCIS PORTER<br><br>   Defendant. | Case No. CR 22-00270 WHO<br><br>**UNITED STATES' SURREPLY TO DEFENDANT'S MOTION TO DISMISS OR FOR A BILL OF PARTICULARS**<br><br>Hearing Date: January 5, 2023, 1:30 p.m.<br>Honorable William H. Orrick<br>Courtroom Two, 17th Floor |

I

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD ...........................................................................................1

III.  ARGUMENT .........................................................................................................2

    A.   The Superseding Indictment Properly Alleges Bribery Under 18 U.S.C. § 666...................2

        1.   The SI Properly Alleges That the Bribe Involved More than $5,000 ....................2

        2.   The Superseding Indictment Properly Alleges Porter Acted With Corrupt Intent ...................3

    B.   The Superseding Indictment Properly Alleges Defendant Conspired to Commit Honest Services Fraud and Engaged in an Honest Services Fraud Scheme.......................4

        1.   The Superseding Indictment Properly Alleges Materiality ...................4

        2.   The Scheme to Defraud Was Material ...................6

        3.   The Superseding Indictment Properly Alleges Payments Made Intending to Influence ...................7

    C.   Forfeiture in the Superseding Indictment is Properly Alleged .........................11

    D.   The Defendant is Not Entitled to a Bill of Particulars ...................12

IV.   CONCLUSION......................................................................................................13

1

**TABLE OF AUTHORITIES**

2

3

**Federal Cases**

4

*Neder v. United States*, 527 U.S. 1 (1999) .................................................................................. 4, 5

5

*United States v. Berger,* 473 F.3d 1080 (9th Cir. 2007) ................................................................. 2

6

*United States v. Boren*, 278 F.3d 911, (9th Cir. 2002) ................................................................... 1

7

*United States v. Bryant*, 655 F.3d 232 (3d Cir. 2011) ................................................................ 8, 9

8

*United States v. Cabrera*, 328 F.3d 506 (9th Cir. 2003) ............................................................... 2

9

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) .......................................................... 4

10

*United States v. Crow,* 824 F.2d 761, 762 (9th Cir. 1987) ............................................................ 1

11

*United States v. Fernandez,* 388 F.3d 1199 (9th Cir. 2004), modified (9th Cir. 2005) 425 F.3d 1248 ..... 1

12

*United States v. Garrido*, 713 F.3d 985, 1001 (9th Cir. 2013) ..................................................... 2

13

*United States v. Inzunza*, 638 F.3d 1006 (9th Cir. 2011) ............................................................. 3

14

*United States v. Jennings,* 160 F.3d 1006 (4th Cir.1998) ............................................................. 7

15

*United States v. Jensen*, 93 F.3d 67 (9th Cir. 2002) ................................................................... 11

16

*United States v. Kemp,* 500 F.3d 257, 282 (3rd Cir. 2007).......................................................... 7

17

*United States v. Kincaid-Chauncey,* 556 F.3d 923, 943 (9th Cir. 2009) ...................................... 7

18

*United States v. King,* 200 F.3d 1207, 1217 (9th Cir. 1999) ........................................................ 2

19

*United States v. Long*, 706 F.2d, 1044, 1054 (9th Cir. 1983)..................................................... 12

20

*United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012) ....................................................... 4

21

*United States v. Montour*, 2010 WL 1417797 at * 2 (W.D. Wash. April 6, 2010) .............................. 11

22

*United States v. Omer*, 395 F.3d 1087 (9th Cir.2005) ............................................................. 5, 6

23

*United States v. Perry*, 550 F.2d 524 (9th Cir. 1997) ................................................................ 10

24

*United States v. Razo-Quiroz*, 2019 WL 1517571 (E.D. Cal. April 9, 2019) ........................................ 11

25

*United States v. Recology,* 21-CR-356 WHO (N.D. Cal. 2021).................................................... 12

26

*United States v. Rogers,* 751 F.2d 1074–77 (9th Cir. 1985) ........................................................ 2

27

*United States v. Salyer*, 2011 WL 6026119 (E.D. Cal. 2011) ..................................................... 12

28

*United States v. Tanabe,* No. CR 11-0941 SBA, 2012 WL 5868968 (N.D. Cal. Nov. 19, 2012) ........... 7

*United States v. Woodruff,* 50 F.3d 673 (9th Cir. 1995) ............................................................. 1

*United States v. Woods*, 335 F.3d 993 (9th Cir. 2003) ............................................................. 4, 5, 7

## Federal Statutes

18 U.S.C. § 666 ............................................................................................................................. 2, 3

18 U.S.C. § 981 ............................................................................................................................. 11

18 U.S.C. § 1341 ............................................................................................................................ 4

18 U.S.C. § 1343 ............................................................................................................................ 4, 12

18 U.S.C. § 1346 ............................................................................................................................ 4, 12

18 U.S.C. § 1349 ............................................................................................................................ 12

28 U.S.C. § 2461 ............................................................................................................................ 11

## Federal Rules

Federal Rule of Criminal Procedure 7 ....................................................................................... 12, 13

## I.   <u>INTRODUCTION</u>

On November 7, 2022, Defendant Porter filed a motion to dismiss the indictment in the above-captioned case.   On November 29, 2022, the government filed a Superseding Indictment.  On December 5, 2022, the United States filed its opposition to the motion to dismiss.  On December 12, 2022, defendant filed a reply, raising a host of new claims as to why the newly-filed Superseding Indictment should be dismissed.  On December 15, 2022, the Court granted leave to the government to file this surreply to address the new arguments raised by defendant in his reply.

The Superseding Indictment sufficiently alleges a scheme to defraud the City of San Francisco of the honest services of Mohammed Nuru, then Director of the San Francisco Department of Public Works, by Porter and others, through a stream of bribe payments over four years.  The Superseding Indictment properly alleges that this was a scheme intended to deceive.  The Superseding Indictment properly alleges a stream of benefits to Nuru in return of a host of official acts Nuru could and did perform for Recology.

As he did in his original motion, defendant Porter again raises and relies extensively on extrinsic evidence outside the four corners of the indictment, and again asks this Court to in effect make myriad anticipatory rulings on facts and evidence very much in dispute.  This extrinsic evidence, and speculation about facts with no support, cannot be considered in the context of this motion.  In a motion to dismiss the Court must accept as true all of the allegations in the Superseding Indictment in determining whether a cognizable offense has been charged.  *See United States v. Boren*, 278 F.3d 911, 914, (9th Cir. 2002) ("[i]n ruling on a pretrial motion to dismiss an indictment for failing to state an offense, the district court is bound by the four corners of the indictment.").

## II.   <u>LEGAL STANDARD</u>

The Ninth Circuit has repeatedly made clear that "an indictment setting forth the elements of the offense is generally sufficient" to survive a motion to dismiss. *See United States v. Fernandez*, 388 F.3d 1199, 1218-19 (9th Cir. 2004).  In fact, "[i]n the Ninth Circuit, '[t]he use of a "bare bones" information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.' " *United States v. Woodruff,* 50 F.3d 673, 676 (9th Cir. 1995) (quoting *United States v.*

1

*Crow,* 824 F.2d 761, 762 (9th Cir. 1987)).  Moreover, the Ninth Circuit has instructed that an indictment " 'should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.' " *United States v. Berger,* 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King,* 200 F.3d 1207, 1217 (9th Cir. 1999)).  "Because it is a drastic step, dismissing an indictment is a disfavored remedy." *United States v. Rogers,* 751 F.2d 1074, 1076–77 (9th Cir. 1985) (internal citation omitted).

## III.   ARGUMENT

### A.   The Superseding Indictment Properly Alleges Bribery Under 18 U.S.C. § 666

#### 1.   *The Superseding Indictment Properly Alleges a Bribe More than $5,000*

The federal programs bribery statute criminalizes anyone who "corruptly gives, offers, or agrees to give anything of value to any person with the intent to influence or reward an agent of an organization of a state, local or Indian tribal government, or any agency thereof." *18 U.S.C. § 666(a)(2).*  The transaction must involve "anything of value of $5,000 or more." *Id.*  While there is dispute between federal circuits over whether the $5,000 transaction minimum applies to the value of official act performed, or the value of the bribe given, in the Ninth Circuit, it must be the bribe that exceeds $5,000. *See United States v. Cabrera*, 328 F.3d 506, 509 (9th Cir. 2003); *see also United States v. Garrido*, 713 F.3d 985, 1001 (9th Cir. 2013).

Defendant Porter claims that the Superseding Indictment does not properly allege that the bribe charged as Count Five exceeds $5,000. *Dkt.* 71, pg. 3.  This argument has no merit because the Superseding Indictment clearly and explicitly alleges that the bribe was a $20,000 payment made, at Nuru's demand, to pay for an elaborate holiday party he was hosting. *Dkt. 67*, ¶ 32.  The language of the Superseding Indictment cannot be more clear: "On or about November 27, 2018, PORTER approved a payment of $20,000 to the Lefty O'Doul's Foundation for Kids to fund Mohammed Nuru's annual holiday party, a payment intended as an illegal gift to Nuru in order to induce his official actions on Recology's behalf." *Id.*

Because defendant Porter's argument fails on its face, he relies on a novel theory: that the payment was not made to Nuru personally, but was rather a payment for what defendant characterizes (without reference to the indictment) as a "department-wide annual holiday party" and the only benefit

1   to Nuru, if any, would have been the food and drink he consumed at the party." *Dkt. 71*, pg. 3.

2          This argument is legally unavailing.  First, the government strongly disputes defendant Porter's

3   characterization of the party, which the government describes one of a number of elaborate and

4   expensive holiday parties Nuru hosted for friends, political supporters, and select DPW employees.

5   Further, the Superseding Indictment makes clear that Nuru himself admitted in a recorded call that the

6   money was to benefit him.  In a recorded conversation where he presses a Recology executive to give,

7   Nuru said: "I always have to get more . . . so if you could give me twenty, that would be nice." *Id.* ¶ 17.

8   Nuru described the money as going for "the big party that you helped me pay for."  *Id.*

9          Moreover, whether the money went to Nuru personally or not is not dispositive on the question

10   of whether the charges are sufficiently alleged, because the law requires only that the payment was made

11   intending to influence Nuru.  The federal funds bribery statute as issue here, Section 666, states that it is

12   illegal for anyone to give, offer, or agree to give "anything of value" to "any person" intending to

13   influence a public official.  18 U.S.C. § 666(a)(2).  As the government has laid out in detail in its

14   Opposition, the Ninth Circuit has made clear that a private gain to a public official is not an element of a

15   bribe that must be pleaded in an indictment.  *See United States v. Inzunza*, 638 F.3d 1006, 1018 (9th Cir.

16   2011), *Dkt. 67*, pg. 8.

17          The Superseding Indictment clearly states that defendant Porter approved (and conspired with

18   others to pay) $20,000, as demanded by Nuru, to fund a party that Nuru personally hosted.  The

19   Superseding Indictment clearly alleges that this was tied to what Recology perceived as Nuru's

20   influence and ability to take official actions to benefit Recology, including but not limited to an increase

21   in "tipping fees" that DPW was paying to Recology to recycle concrete and asphalt, a business that was

22   important to Recology.  The Superseding Indictment properly alleges a $20,000 payment made with the

23   intention of influencing Nuru, exceeding the $5,000 minimum in the statute.

24          2.      *The Superseding Indictment Properly Alleges Porter Acted With Corrupt Intent*

25          Defendant Porter next argues that the Superseding Indictment fails to properly allege that he

26   acted with corrupt intent for purposes of the bribery and conspiracy to commit bribery charges (Counts

27   Five & Six).  *Id.*  The defendant made similar arguments about the original indictment, and the

28   government responded in its Opposition, addressing the defendant's arguments in the context of the

Superseding Indictment.  The government will respond here to the arguments defendant raises in his Reply.

As a starting point, the Superseding Indictment specifically and explicitly alleges that defendant Porter acted with corrupt intent. *See Dkt. 67*, pg. 8. ("[o]n or about November 27, 2018, in the Northern District of California and elsewhere, the defendant, JOHN FRANCIS PORTER, did *corruptly* give or agree to give a thing of value to any person intending to reward an agent of the Department of Public Works of the City of San Francisco.").  The Superseding Indictment further alleges that Porter also aided and abetted in the commission of bribery of Nuru.  *Id.*

In addition, the Superseding Indictment alleges specific facts sufficient to lead to the necessary inference that Porter acted corruptly.  Specifically, the Superseding Indictment alleges that Porter and his co-conspirators knew that the $20,000 payment and similar payments made in 2016, 2017 and 2019, were in fact used by Nuru to pay for his holiday parties, but were falsely characterized by Porter and others as "holiday donations" to a non-profit that provided access to baseball and baseball equipment to children.  *Dkt. 67*, ¶¶ 5, 29c.  As the Superseding Indictment properly alleges, these payments were not legitimate donations, and Porter and his co-conspirators knew they were not.  *Id.*  These alleged deceptions are sufficient to demonstrate Porter acted with corrupt intent.

B.  <u>The Superseding Indictment Properly Alleges Defendant Conspired to Commit Honest Services Fraud and Engaged in an Honest Services Fraud Scheme</u>

1.  *The Superseding Indictment Properly Alleges Materiality*

To properly allege an offense for honest services fraud, an indictment must allege "a scheme or artifice to 'deprive another, by mail or wire,' of the 'intangible right of honest services.'  *See United States v. Christensen*, 828 F.3d 763, 784 (9th Cir. 2015), *quoting* 18 U.S.C. § 1346, and citing by reference 18 U.S.C. §§ 1341, 1343.  The Ninth Circuit has made clear that, with the enactment of 18 U.S.C. § 1346, Congress has made clear the government can charge a scheme to defraud whereby a person receives a bribe, even if they did not deprive their victim of money or property.  *See United States v. Milovanovic*, 678 F.3d 713, 720-721 (9th Cir. 2012).

As with traditional mail and wire fraud schemes, materiality is an essential element of the crime of honest services fraud.  *See Milovanovic*, 678 F.3d at 726-727; *see also Neder v. United States*, 527

U.S. 1, 20-25 (1999).  But just as in other mail and wire fraud offenses, the government need not prove a specific false statement was made.  *See United States v. Woods*, 335 F.3d 993, 999 (9th Cir. 2003)  (if a scheme is devised with the intent to defraud, the fact that there is no misrepresentation of a single existing fact is immaterial; it is only necessary to prove that it is a scheme reasonably calculated to deceive); *See also United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir.2005) (it is the materiality of the scheme or artifice that must be alleged; the materiality of a specific statement need not be pleaded).

Rather, "the fraudulent nature of the 'scheme or artifice to defraud' is measured by a non-technical standard."  *See Woods*, 335 F.3d at 998. "Thus, schemes are condemned which are contrary to public policy or which fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Id.; see also Omer,* 395 F.3d at 1089 (noting that *"Neder* did not undermine this non-technical standard for measuring fraud, which does not require proof of a specific false statement.").

Defendant Porter claims that the government fails to allege facts sufficient to show that the scheme was "reasonably calculated to deceive," that defendant Porter acted dishonestly, and argues that the Superseding Indictment "fails to allege a material misrepresentation."  *Dkt. 71*, pg. 13.  As with his claims that the Superseding Indictment fails to allege corrupt intent, this argument likewise fails.

The Superseding Indictment clearly describes a scheme to defraud the city of the honest services of Nuru through bribes and kickbacks. *Dkt. 67.*  It describes these bribe payments, which were simply money for Nuru to host elaborate holiday parties, and alleges that they were concealed and misrepresented as payments to a non-profit that was ostensibly providing baseball equipment for under-privileged children. *Id.*  The Superseding Indictment alleges that the money was not in fact used for that purpose, and that Porter and the other conspirators knowingly misrepresented where the funds came from so as to conceal their true source, which was from Recology, a company with significant business before Nuru, and a company over which Nuru had enormous influence. *Id.*  This is evidence sufficient to show that the scheme was reasonably calculated to deceive.

While the government is not required to allege any specific misrepresentations as part of the scheme to defraud, the indictment in fact does.  As noted above, Porter and others misrepresented their payment to Nuru as a "holiday donation" to an entity serving under-privileged children. *Id.*

Defendant Porter next alleges that on the 2018 form, "the alleged misrepresentation in the form was not made by Mr. Porter, and thus the SI makes no allegations that Mr. Porter made this representation or colluded with others in doing so." *Dkt. 71*, pg. 8.   This misstates the Superseding Indictment, which alleges specifically that "[o]n or about November 27, 2018, *Porter* approved another $20,000 payment from Recology, at Giusti's request, to pay for his holiday party."  *Dkt. 67*, pg. 4. (italics added).

Defendant Porter next argues—making a factual allegation outside of, and contrary to, the allegations in the indictment—that "he had nothing to do with it" and was simply relying on forms prepared before he had responsibility for approving the payments.  *Dkt.* 71, pg. 8. That is his defense, but his arguments rely on extrinsic evidence, not what is alleged in the Superseding Indictment.

In fact, the Superseding Indictment clearly alleges that Porter did have something to do with it. He personally approved the payments in 2017, 2018, and 2019, he misrepresented what they were, and in doing so, he helped conceal their true source and purpose - a total of over $55,000 in illegal payments from Recology to a public official, made with the intent to influence official actions he could take on Recology's behalf.

Porter argues that he had no role in approving one payment, that a second was simply forwarded to him for approval, and that he talked to another Recology executive who instructed him to approve it. *Dkt. 71,* pg. 8.  Again, all of these are claims are much disputed.  They are issues for trial.  For the purposes of the motion to dismiss, those claims fall outside the four corners of the indictment and are not to be considered by the Court in a motion to dismiss.

2.     *The Scheme to Defraud Was Material*

Defendant Porter next argues that the statements cannot be material because they could not have influenced the persons to whom they were directed, arguing incorrectly that because some of his co-conspirators at Recology were aware of the forms, they could not have been influenced by any false or misleading statements about the payments on those forms.  This is incorrect in several respects.

First, it is not alleged in the Superseding Indictment that everyone who would have seen or approved the expense forms were co-conspirators.  In fact, many inside Recology who could have seen or reviewed the forms were not members of the conspiracy, and the true source and use of the funds

6

1    would have been concealed from them.  More broadly, Porter's direction on the approval form was his

2    direction that Recology issue a check to be issued to the Lefty O'Doul's Foundation.  That check itself

3    and the flow of the money are part of the misrepresentations and concealment; allowing Porter and his

4    co-conspirators to conceal from the City, the public, and others, the true source of the funds.  This was

5    clearly alleged in the Superseding Indictment, which states that the conspirators were agreeing, "at

6    Nuru's urging, to use the Lefty O'Doul's Foundation for Kids to accept corporate donations from

7    Recology and others to pay for Nuru's holiday parties, and *to conceal their source*." *Dkt. 67*, pg. 4.

8    (italics added).

9         Finally, as noted above, the government need not allege a specific misrepresentation; instead,

10   "schemes are condemned which are contrary to public policy or which fail to measure up to the

11   reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and

12   business life of members of society." *See Woods,* 335 F.3d at 998.  An alleged scheme in which

13   executives at Recology secretly funnel $60,000 to the director of the public agency that oversees and

14   regulates them, and has enormous influence over the rates they can charge, sufficiently pleads a facts

15   which demonstrate a scheme "which fails to live up to the fundamental honesty and right dealing in the

16   general and business life" of the conspirators.  It is not fundamentally honest, and not right dealing in

17   general and business life, to bribe the public official who is your regulator and who has enormous sway

18   over the rates you can charge the public.

19         3.     *The Superseding Indictment Properly Alleges Payments Made Intending to Influence*

20         Defendant Porter next argues that the government fails to allege a proper *quid pro quo*.

21   Defendant misstates the legal standard, and selectively misreads the Superseding Indictment.

22         In the Ninth Circuit, bribery for purposes of an honest fraud charge requires a *quid pro quo* but it

23   may be an implicit *quid pro quo*, and whether or not there is a quid pro quo depends on the intent of the

24   person or conspirators paying the bribes.  *See Kincaid-Chauncey*, 556 F.3d 923, 943 (9th Cir. 200()

25   ([o]nly individuals who can be shown to have had the specific intent to trade official actions for items of

26   value are subject to criminal punishment on this theory of honest services fraud.").  The *quid pro*

27   *quo* necessary for a bribery honest services conviction need not be explicit, and an implicit *quid pro*

28   *quo* need not relate to a single specific official act.  *Id.* (citing *United States v. Kemp*, 500 F.3d 257, 282

7

(3rd Cir. 2007) ("[T]he government need not prove that each gift was provided with the intent to prompt a specific official act.").   Rather, the evidence must show a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official acts favorable to the donor.  *Tanabe*, 2012 WL 5868968 at *6, *citing Kincaid-Chauncey*, 556 F.3d at 943.  ***See also United States v. Jennings,*** 160 F.3d 1006, 1014 (4th Cir.1998) ("The quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor.").

Defendant Porter attempts to argue "payments made in a general attempt to build goodwill or curry favor with a public official, without more, does not constitute a bribe" and that Recology's payments were no more than efforts to build goodwill or curry favor with Nuru.  *Dkt. 71*, pg. 9, *citing United States v. Bryant*, 655 F.3d 232, 245 (3d Cir. 2011).  But defendant misstates *Bryant*, which, when read fairly, is instructive on the scope of a *quid pro quo* in the honest services context.  The Court in *Bryant* specifically held that the following was a correct instruction of the law:

> the Government is not required to present evidence that attributes each official action to a corrupt payment. It is enough for the government to present evidence that shows *a course of conduct* of favors and gifts flowing to a public official in exchange for a *pattern of official actions* favorable to the donor. Thus, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. The evidence of a *quid pro quo* can be implicit, that is, a conviction can occur if the Government shows that [the defendant] accepted payments or other consideration with the implied understanding that he would perform or not perform an act in his official capacity.

655 F.3d at 241. (italics in original)

Here, the Superseding Indictment alleges a scheme and a conspiracy to provide a stream of benefits to Nuru, including $60,000, over four years, to pay Nuru's increasingly elaborate holiday parties, as well as drinks, meals, including regular breakfasts, as well as dinners (including an $1,182 steak dinner), along with other things of value.  The Superseding Indictment alleges that the payments were made in return for official acts Nuru could undertake to Recology's benefit, of which there were many.  The Department of Public Works, headed by Mohammed Nuru, was the primary agency overseeing Recology's business, a multi-million dollar a year regulated monopoly which provided trash

8

1    collection and disposal services for the City of San Francisco.  As the Superseding Indictment alleges, in

2    his role as the Director of the DPW, Nuru had "significant authority and influence over Recology's

3    business."  *Dkt 67*, pg. 4.

4         The Superseding Indictment alleges multiple ways in which Nuru could exercise this influence,

5    including but not limited to: 1) presiding over the process that governed the rates Recology could

6    charge; 2) making recommendations as to whether rate increases Recology could and did apply for

7    should be approved; 3) exercising influence over a specific rate increase Recology sought in 2018 and

8    2019 for "tipping fees" it paid to DPW to recycle waste materials at a Recology recycling facility; 4)

9    approving, denying, or otherwise affecting other payments to Recology; and 5) approving, denying, or

10   otherwise affecting other operational changes requested by Recology that would affect Recology's

11   business.  *Dkt. 67*, pg. 4.

12        The Superseding Indictment in this case sufficiently alleges a stream of payments to Nuru from

13   Recology executives in return for intended official acts that Nuru could and did take on Recology's

14   behalf.  First, the Superseding Indictment alleges that the bribery conspiracy began on or about

15   December 2016.  *Dkt. 67*, pp. 3-4.  The Superseding Indictment specifically alleges that on December 2,

16   2016, Recology executives met with Nuru *to discuss Nuru's concern about items Recology sought to*

17   *include in its rate increase application." Id.*  In the very same conversation, Nuru asked for a

18   "donation" (quotation marks in Superseding Indictment) for his holiday party. *Id.*  The conspirators at

19   Recology, including Porter and Giusti, complied, causing Recology to issue a check on December 12,

20   2016 that was falsely represented as a donation to the Lefty O'Doul's Foundation for Kids. *Id.*

21        The following day, Recology submitted its draft rate increase application to Nuru and DPW.  *Id.*

22   The Superseding Indictment specifically alleges that these payments were made intending to influence

23   Nuru's official action on, among other things, its rate increase application.  *Id.*  Any fair read of the

24   Superseding Indictment makes clear that this was a *quid pro quo* bribe payment.

25        Defendant Porter argues that he was not yet a member of the conspiracy, but this is no defense.

26   It is settled law that one who joins a conspiracy knowing of at least one of its objects and intending to

27   help accomplish it is as liable as his co-conspirators, even if he joins an existing conspiracy.  *See Ninth*

28   *Circuit Model Jury Instructions* (11.1: Conspiracy -Elements) ("[o]ne becomes a member of a

9

conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators."); *See also Ninth Circuit Model Instructions (* 11.4: Conspiracy - Knowledge of and Association with Other Conspirators) ("it is not necessary that all members of the conspiracy join at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme); *see also United States v. Perry*, 550 F.2d 524, 528 (9th Cir. 1997).

The government must allege that the defendant joined the conspiracy knowing of at least one of its objects and intending to help accomplish it. The Superseding Indictment does this. Specifically, the Superseding Indictment alleges that in 2017, Porter first approved a bribe payment to Nuru, concealing it as a payment for a "holiday donation" to the Lefty O'Doul's Foundation for Kids, which it was not, and that Porter did so knowing "it was in fact a payment to Nuru to fund his holiday party" and that it was made intending to influence Nuru. *Dkt. 67, ¶ 15.* This payment is properly alleged as one of a stream of benefits to Nuru.

The Superseding Indictment alleges that Porter next approved a $20,000 payment to Nuru for his holiday party, this time in November 2018, and did so after a phone call between Nuru and co-conspirator Giusti the night before, in which Nuru specifically asked for $20,000 for his party and then immediately pivoted to an assurance to Giusti that he was "working on getting PORTER the increase in tipping fees paid to Recology." *Dkt. 67,* pg. 4. The Superseding Indictment states that the next day (in fact it was less than 12 hours later), Giusti called Porter and "discussed his conversation with Nuru and informed Porter that Nuru wanted $20,000 to pay for his upcoming holiday party." *Dkt. 67*, pp. 4, 8. Defendant Porter concedes that "[p]erhaps this is enough to allege an implied agreement to exchange a thing of value for Mr. Giusti." *Dkt. 71.* That is correct.

Defendant Porter implies in his motion, without saying explicitly, that Giusti's testimony will not implicate Porter. But that is another assertion unsupported by any facts, and regardless, will be an issue for trial. Here, as Porter concedes, the Superseding Indictment sufficiently alleges that one of the official acts Nuru could take was to help Recology with an increase in its tipping fees, and that one of the purposes of the $20,000 payment was as a benefit in return for the expectation that Nuru would take

1    official action on Recology's behalf.

2          Finally, defendant Porter again relies on extrinsic evidence and assertions, including alleging that

3    he believed the bribe was instead a legitimate payment to a "fiscal agent" and that other organizations

4    throughout the city have made for parties for years.  Defendant Porter provides no support for these

5    assertions, and the government rejects them as unsupported or irrelevant, or both.  But regardless, it is

6    irrelevant for purposes of a motion to dismiss, in which a Court must look at the Superseding Indictment

7    and determine if it fairly states the offenses and allows the defendant to prepare for trial.  *See United*

8    *States v. Jensen*, 93 F.3d 67, 669 (9th Cir. 2002) ([a] motion to dismiss the indictment cannot be used as

9    a device for a summary trial of the evidence . . . The Court should not consider evidence not appearing

10   on the face of the indictment.").

11         C.      Forfeiture in the Superseding Indictment is Properly Alleged

12         Defendant Porter argues that the government has failed to allege that defendant Porter benefitted

13   in any way from his alleged conduct, and therefore the forfeiture allegation should be dismissed.  Porter

14   misunderstands the purpose of a forfeiture allegation.  The forfeiture allegation will be addressed only

15   "upon conviction," at which point the Court will consider evidence as to whether Porter has obtained

16   any "property, real or personal, constituting or derived from proceeds the defendant obtained directly or

17   indirectly as the result of those violations, including but not limited to a forfeiture money judgment."

18   *Dkt. 67, ¶ 34.*  If the Court determines that the defendant has obtained any property as a result of the

19   violations for which he was convicted, the Court must then determine if they should be forfeited

20   pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

21         Defendant Porter's arguments are premature and should be denied.  *See United States v. Razo-*

22   *Quiroz*, 2019 WL 1517571 (E.D. Cal. April 9, 2019) ("[b]ecause defendant [] has not yet been

23   convicted, her argument in this regard is premature, and her motion to dismiss will therefore be

24   denied.").  *See also United States v. Montour*, 2010 WL 1417797 at * 2 (W.D. Wash. April 6, 2010)

25   ("denying motion to strike the forfeiture allegation prior to conviction because the facts underlying the

26   forfeiture liability had not been established).

27   //

28   //

                                                           11

D.      The Defendant is Not Entitled to a Bill of Particulars

Defendant Porter renews his motion for a bill of particulars, adding multiple additional requests for disclosure.  *See Dkt. 71*, pp. 13-15.  The government opposed defendant's original motion for a bill of particulars, and legal authority and arguments in that brief still apply to the defendant's request.  *Dkt. 69*, pp. 14-16.

The government, however, will address several specific issues raised by the defendant in his Reply.  Defendant requests that the government identify all conspirators and the time period of their participation in the conspiracy.  The government has stated that the conspiracy members include former Recology executive Paul Giusti, defendant Porter, Mohammed Nuru, Nick Bovis, and others known and unknown to the grand jury. *See Dkt. 67.*   In its original indictment it specifically named as an unindicted co-conspirator Recology Executive A, but did not name him.  He remains a co-conspirator.

Defendant Porter complains that the government in Count One alleges that "Recology" was named as a co-conspirator in the honest services fraud conspiracy count (Count One), but not named specifically in the Conspiracy to Commit Bribery charge (Count Five).  Count Five begins by re-alleging earlier paragraphs in the indictment, but to the extent the defendant is unclear, Recology itself is a co-conspirator in both conspiracies.

Defendant Porter then complains that it is unclear to him "who, among the thousands of people at "Recology" Mr. Porter is alleged to have conspired with. *Dkt.* 71, pg. 13.  This is somewhat disingenuous.  Defendant Porter knows, or should know, that the United States and Recology entered into a Deferred Prosecution Agreement (DPA) filed on September 8, 2021. *See United States v. Recology*, 21-CR-356 WHO.  In this DPA, Recology acknowledged that the government had filed an Information charging it with one count of Honest Services Wire Fraud in violation of 18 U.S.C. §§ 1343, 1346, and 1349. *Id., at Dkt. 2* (Deferred Prosecution Agreement).  Recology further admitted that it was responsible for the acts of its agents and employees "as charged in the Information and set forth in the Statement of Facts" attached to the DPA. *Id.*  As such, defendant Porter is aware who "among the thousands of people at Recology" are alleged as co-conspirators in the honest services fraud scheme charged in that case - the same individuals who are named as conspirators here: Giusti, Porter, Nuru, and Recology Executive A (named as Recology Group Executive 2 in the DPA). *Id.*

1  Finally, defendant Porter has been given extensive discovery in this case, negating the need for a

2  bill of particulars.  *See United States v. Salyer*, 2011 WL 6026119 (E.D. Cal. 2011), *citing United States*

3  *v. Long*, 706 F.2d, 1044, 1054 (9th Cir. 1983) ("full discovery will obviate the need for a bill of

4  particulars.")

5  **IV.    CONCLUSION**

6  The Superseding Indictment in this case is "a plain, concise, and definite written statement of the

7  essential facts constituting the offense charged" and therefore meet the requirements of Federal Rule of

8  Criminal Procedure 7.  *See* Fed. R. Crim. P. 7(c)(1).  The Superseding Indictment provides more than

9  sufficient facts to enable defendant Porter to adequately prepare for trial.  A bill of particulars is not

10 warranted.

11  Defendant's Motion to Dismiss should be denied.

12

13                                             STEPHANIE M. HINDS
                                              United States Attorney
14

15

16  Dated: December 23, 2022                    __/s/ David J. Ward_____
                                              DAVID J. WARD
17                                             ILHAM A. HOSSEINI
                                              Assistant United States Attorneys
18

19

20

21

22

23

24

25

26

27

28