ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-00270 WHO |
| Plaintiff, | **UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY** |
| v. | Pretrial Conference: April 25, 2023, 2:00 p.m. |
| JOHN FRANCIS PORTER | Dept: Courtroom 2 – 17th Floor<br>Judge: Hon. William H. Orrick |
| Defendant. | |

**TABLE OF CONTENTS**

I.  INTRODUCTION …………………………………………………………………………....1

II. LEGAL STANDARD………………………………………………………………………...2

   a. Federal Rule of Evidence 702 ………………………………………………………….2

   b. Federal Rule of Criminal Procedure 16 ………………………………………………..2

III. FACTUAL BACKGROUND ……………………………………………………………..…3

IV. ARGUMENT ………………………………………………………………………………...5

   a. Defendant Porter's Expert Report Does Not Meet Rule 16's Disclosure Requirements ……………………………………………………………………….....5

   b. Ms. Ravel's Testimony Will Serve to Improperly Bolster Defendant's Credibility ….…7

   c. Ms. Ravel's Testimony is Improper Legal Testimony …………………………………...8

   d. Ms. Ravel's Testimony as to Behested Payments Generally is Irrelevant and Prejudicial ……………………………………………………………………………...10

V. CONCLUSION ……………………………………………………………………………...12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ................................................................... 3

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ................................................ 2

*Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001) ............................... 2

*In re Novatel Wireless Sec. Litig.,* 2012 WL 5463214 (S.D. Cal. 2012) ................................ 10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........................................................... 2

*Marx & Co. v. Diner's Club, Inc.* 550 F.2d 505 (2d Cir. 1977) ............................................. 8

*Montgomery v. Aetna Cas. and Sur. Co.,* 898 F.2d 1537 (11th Cir.1990) ………..……………………..8

*SU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140 (N.D. Cal. 2003) ..................................... 3

*United States v. Adams*, 271 F.3d 1236 (10th Cir. 2001) ..................................................... 7

*United States v. Benally*, 541 F.3d 990 (10th Cir. 2008) ..................................................... 7

*United States v. Brodie*, 858 F.2d. 492 (9th Cir. 1988) ........................................................ 8

*United States v. Charley,* 189 F.3d 1251, (10th Cir. 1999)………………………………………..7

*United States v. Christensen*, 186 F.Supp.3d 997 (D. Ariz. 2016) ........................................ 7

*United States v. Rahm*, 993 F.2d 1405 (9th Cir. 1993) ………………………………………….7

*United States v. Toledo*, 985 F.2d 1462 (10th Cir. 1993) .................................................... 7

*United States v. Zipkin*, 729 F.2d 384 (6th Cir. 1984) .......................................................... 8

*United Stats v. Rahm*, 993 F.2d 1405 (9th Cir. 1993) .......................................................... 7

## FEDERAL STATUTES

18 U.S.C. § 666 .................................................................................................................. 9

18 U.S.C. § 1346 ................................................................................................................ 9

## FEDERAL TAX CODES

Section 501(c)(3) .............................................................................................................. 10

## FEDERAL RULES

Fed. R. Evid. 401 ......................................................................................................... 7, 10

Fed. R. Evid. 403 .......................................................................................................... 3, 7

Fed. R. of Crim. P. 16 .......................................................................................... 1, 3, 4, 5, 6, 7

Fed. R. Evid. 702 ....................................................................................................... 3, 7, 8

Fed. R. Evid. 703 ............................................................................................................... 6

## I. INTRODUCTION

On February 27, 2023, defendant Porter notified the government that he intends to call an attorney, Ann Ravel, as an expert to testify for the defense at trial in this case. Ms. Ravel is, among other things, a former Commissioner of the Federal Election Commission, a former Chair of the California Fair Political Practices Commission ("FPPC") and an alumnus of the Civil Division of the U.S. Department of Justice. According to the defense disclosure, Ms. Ravel will opine on a type of donation known as a "behested payment," a payment made to a third-party organization, usually a non-profit, at a public official's request. Ms. Ravel proposes to testify that these types of payments were legal and common at the time of the charged offenses.

Ms. Ravel also proposes to testify about the payments alleged in the Superseding Indictment to be bribes, payments approved by defendant Porter from Recology to the Lefty O'Doul's Foundation for Kids as "holiday donations" that are alleged to be payments to Mohammed Nuru, the then-head of the San Francisco Department of Public Works, to pay for elaborate holiday parties he hosted for friends, political supporters, and select DPW employees. In her expert disclosure, Ms. Ravel proposes to testify that "this type of payment resembles what is known as a behested payment." Ms. Ravel then concludes that Porter's actions in approving them were proper. In a subsequent letter, counsel for defendant Porter changes her proposed testimony, saying that she will say the payments were legal and legitimate behested payments. Ms. Ravel's expert report states no legal or factual basis for either conclusion, or for the change in position. Defendant admits that Ms. Ravel has not done any independent analysis of the evidence in this case other than to read the Superseding Indictment.

Ms. Ravel's testimony should be excluded. Defendant's bare-bones disclosure fails to meet the requirements of Rule 16 that a party seeking to have an expert testify produce a statement of all of the opinions that expert will testify to, and provide the bases and reasons for them.

More fundamentally, Ms. Ravel's proposed testimony would violate two foundational rules regarding expert testimony. First, Ms. Ravel proposes to testify as to legal conclusions she has reached – that the Lefty O'Doul's bribe payments approved by defendant Porter were legal behested payments, and that the defendant's approval of the payments "were consistent with state and local law." This is

improper expert testimony. It is a fundamental and long-established principle that it is the sole province of the judge in a case to say what the law is, and that expert testimony on legal conclusions is improper.

Second, the impact (and likely the true purpose) of Ms. Ravel's testimony will be to bolster the testimony of defendant Porter or other defense fact witnesses who may testify that Porter believed that the Lefty O'Doul's payments were proper behested payments and were made without criminal intent. This is improper. Expert testimony may not be used to bolster the credibility of a fact witness, particularly as to the issue of a defendant's intent.

Finally, to the extent Ms. Ravel intends to testify that "behested payments" in general – unrelated to the bribe payments in this case - were common and accepted during the conspiracy period is wholly irrelevant to whether defendant Porter's approvals of the payments to Nuru, misrepresented and concealed as a payment to a non-profit, were violations of the charged offenses in this case.

Nor is this harmless testimony. Ms. Ravel is an accomplished lawyer, and her testimony, particularly given under the imprimatur of that of a legal expert, would mislead and confuse the jury, improperly bolster defendant's credibility, and creates a real risk that the jury would rely on her legal opinions, rather than those of the Court.

## II.     LEGAL STANDARD

### a.     Federal Rule of Evidence 702

"[S]cientific, technical, or other specialized knowledge" may be admissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. *Id.*

The district court is a "gatekeeper," charged with the duty to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999); *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Even if an expert's opinion is reliable, it will be inadmissible if it is unhelpful to the trier of fact. *Daubert* 509 U.S. at 591-92; *see also Guidroz-Brault,* 254 F.3d at 829. In cases where there is some marginal relevance to the testimony, it should nonetheless be excluded "if its probative value is substantially outweighed by a

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Exclusion of testimony is the only remedy sufficient to protect against the inherent power of expert evidence, which can be "quite misleading because of the difficulty in evaluating it." *Daubert* 501 U.S. at 595. The party who offers the expert testimony must prove its admissibility by a preponderance of the evidence. *See Cooper v.* Brown, 510 F.3d 870, 942 (9th Cir. 2007); SU *Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003).

### b. Federal Rule of Criminal Procedure 16

In December 2022, the expert disclosure requirements of Rule 16 were significantly enhanced, for both the government and the defense. Relevant to this motion, if a defendant intends to use any testimony under Fed. R. Evid. 702, 703, or 705, the defendant must disclose to the government in a timely manner, all of the following: 1) a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case in chief; 2) the bases and reasons for them; 3) the witness's qualifications, including a list of all publications authored in the previous 10 years, and a list of all other cases in which, during the previous four years, the witness has testified as an expert at trial or by deposition. *Fed. R. Crim. P. 16 (b (1)(C)(iii)*.

## III.   FACTUAL BACKGROUND

On February 27, 2023, the parties' stipulated deadline for expert disclosures, Defendant Porter notified the government that he intends to call Ms. Ravel as an expert witness at trial. Defendant provided the government with a 10-page expert report, with several hundred pages of supporting documentation. *See Declaration of David J. Ward*, Exhibit A ("Expert Report of Ann Ravel").

Ms. Ravel's 10-page report begins with three and a half pages reciting her legal background and experience. *Id.* According to the disclosure, Ms. Ravel is an attorney "with years of experience working in law and policy regarding campaign finance, conflicts of interest, and government ethics." *Id.* She is a former FEC Commissioner, and a former Chair of the California Fair Political Practices Commission. *Id.* Prior to that, she was a Deputy Assistant Attorney General in the Civil Division of the U.S. Department of Justice, and prior to that she was a County Counsel in Santa Clara County. *Id.* She is a graduate of UC College of the Law, San Francisco (formerly U.C. Hastings College of the Law). *Id.*

1   The next six pages of Ms. Ravel's 10-page report is a general description of behested payments, and their use in San Francisco and California prior to 2020. *Id.* ¶¶ 15-40. According to Ms. Ravel's proposed testimony, "behested payments" were donations made, generally to charitable organizations, at the behest of a public official. *Id.* ¶ 28. To qualify as a legitimate behested payments, the donation must be "made for a legislative, governmental, or charitable purpose" and cannot be "a gift (made for personal purposes), or a contribution (made for election-related activity) to the elected official." *Id.* at App. B_4. Ms. Ravel proposes to testify as to her legal conclusion that "[b]ehested payments were not prohibited at either the state or local level during the relevant time period." *Id.*

Ms. Ravel's report contains only two paragraphs that reflect her opinions on the facts of this case. The government has alleged that as part of the honest services fraud conspiracy charged in this case, defendant Porter approved three payments to Mohammed Nuru to fund elaborate holiday parties, in 2017, 2018, and 2019, and concealed and misrepresented them as "holiday donations" to the Lefty O'Doul's Foundation for Kids. *See Dkt. 67* (Superseding Indictment). The government also alleges that the 2018 payment, of $20,000, was a bribe to Nuru, made at his request for funds for "his party," made by Porter and his co-conspirators to influence Nuru to approve an increase in a fee paid to Recology by the City of San Francisco which would have meant millions of dollars in additional revenues to Recology, all in violation of 18 U.S.C. § 666.

Ms. Ravel proposes to testify to the following as it relates to the Lefty O'Doul's payments:

> *This type of payment resembles what is known as a "behested payment," which is a payment made to third-party organization (sic), often a nonprofit organization, because of a public official's request.* Ravel Report ¶ 17.

Despite no additional information or explanation, or analysis of the facts and evidence in this case, Ms. Ravel's proposed testimony then concludes with the following sweeping legal conclusion:

> "[t]he actions of Mr. Porter in approving funding to the non-profit Lefty O'Doul's Foundation for Kids to host a public employee celebration were consistent with the State and Local law regarding behested payments." Id. ¶

On March 2, 2023, the government wrote counsel for defendant Porter, requesting additional information. *See Ward Decl.*, Exhibit B (Ward Letter, March 2, 2023). Specifically, the government requested that defendant Porter disclose all the bases for Ms. Ravel's two opinions above related to the

4

Lefty O'Doul's payments. *Id.* Defendant Porter responded by letter that Ms. Ravel would now testify that the Lefty O'Doul's payments alleged in the Superseding Indictment <u>are</u> behested payments, not that they simply resemble behested payments. *See Ward Decl.* Exhibit C (Adkins Letter, March 13, 2023). ("Ms. Ravel will testify that the Lefty O'Doul's donations described in the Superseding Indictment as payments requested by Mohammed Nuru to Lefty O'Doul's to fund the DPW holiday party are behested payments."). Defendant Porter's letter states that Ms. Ravel has read the Superseding Indictment, and bases her conclusion on those facts alone. *Id.*

Ms. Ravel mischaracterizes and misquote the Superseding Indictment, which alleges that the payments were made, not for a legitimate DPW holiday party but rather made "to Nuru to fund increasingly elaborate and expensive holiday parties Nuru hosted for friends, political supporters, and select DPW employees." *Dkt. 67*, ¶ 11. The Superseding Indictment also alleges that the payments were concealed and misrepresented as a "Holiday Donation" for a non-profit whose purported purpose was to raise funds "to provide underprivileged kids the opportunity to experience baseball through providing bats, baseball gloves, equipment, and tickets to ball games." *Id.* ¶ 5. Ms. Ravel's expert disclosure and counsel's letter do not address or even acknowledge these factual allegations.

## IV.  ARGUMENT

### a.  Defendant Porter's Expert Report Does Not Meet Rule 16's Disclosure Requirements

As an initial matter, defendant Porter's expert report fails to meet the disclosure requirements of Rule 16. Ms. Ravel's expert report contains two conclusory statements related to the payments to the Lefty O'Doul's Foundation, but no explanation for the bases for them. The expert report says that "[t]his type of payment *resembles* what is known as a behested payment." *Ward Decl.* Exhibit A. (italics added). The report does not specify whether Ms. Ravel is referring to the payments themselves, or "this type of payment," and if the latter, what type of payment that is. Ms. Ravel provides no explanation for her use of the term "resemble" and what it means for the payments to the Lefty O'Doul's Foundation to resemble a behested payment. To the extent she is saying that the payments were concealed and misrepresented in an attempt to make them falsely resemble a legitimate donation to a non-profit, the government agrees. But assuming that is not her intended assertion, and that she believes the payments were legitimate, her expert report is vague and unclear and does not meet the requirements

5

of Rule 16 that an expert disclose all the bases for her opinions.

Next, after 40 paragraphs of general description of her background and the use of behested payments in unrelated instances, Ms. Ravel's report then returns to the Lefty O'Doul's payments, concluding that "[t]he actions of Mr. Porter in approving funding to the non-profit Lefty O'Doul's Foundation for Kids to host a public employee celebration were consistent with the State and Local Law regarding behested payments." *Id.*  Again, Ms. Ravel provides no support for this sweeping assertion, beginning with whether she even believes that the payments were legitimate behested payments (her carefully worded statement that they only "resemble" legitimate behested payments would indicate she does not).  Her expert disclosure contains no statement as to what facts or evidence in this case has led to the conclusion that the payments, concealed and misrepresented, and used for a personal holiday party, are indeed legitimate behested payments.

Defendant further confuses the issue by stating in a supplemental letter that the payments are in fact behested payments.  *See Ward Decl.*, Exhibit C (Adkins Letter, March 13, 2023).  But again, defendant provides no explanation for that assertion, or an explanation for her change in position.  If Ms. Ravel is going to assert that the payments were consistent with state and local law regarding behested payments, she must describe her bases for that opinion.  Absent a sufficient disclosure, the government is unable to adequately challenge the admissibility of the expert's opinions, and is unable to adequately prepare for cross examination.  This is exactly what Fed. R. Crim. P. 16's disclosure requirements are designed to prevent.  The Advisory Committee Notes to the 1993 Amendments to the rule make this abundantly clear.  *See Fed. R. Crim. P. 16, Ad. Comm. Notes, 1993 Amdt.*  ("[t]he amendment requires a summary of the bases relied upon by the expert.  That should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts.").

The December 2022 revisions to Rule 16 broaden and increase each party's expert disclosure requirements, requiring "a *complete* statement of *all* opinions that the defendant will elicit from the witness in the defendant's case in chief, *and* the bases and reasons for them." *Fed. R. Crim. P. 16* (Dec. 2022 Amendments) (italics added).

6

Ms. Ravel's disclosures to not meet this requirement. She provides no basis for her opinion that the Lefty O'Doul's payments resemble, or are in fact, legitimate behested payments – a much disputed legal conclusion. She cites to nothing in the evidentiary record that she relies on, other than the Superseding Indictment, which clearly describes payments that are far from legitimate behested payments. Further, Ms. Ravel provides no basis for her conclusory statement that defendant Porter's actions in approving those payments was "proper" and consistent with state and local law. Ms. Ravel fails to even identify which state and local laws she is referring to.

A bare-bones disclosure containing *ipse dixit* assertions does not meet the requirements of Rule 16. Given that the government requested a supplemental disclosure explaining the bases for her opinions, and a sufficient one was not provided, Ms. Ravel's testimony should be excluded on this basis.

### b. Ms. Ravel's Testimony Will Serve to Improperly Bolster Defendant's Credibility

While not stated explicitly, it is clear that the defendant's expert testimony is designed to put a legal imprimatur on expected testimony from defendant Porter or others that defendant Porter *believed* that the payments were legal behested payments. This is the improper use of expert testimony to bolster a witnesses' credibility. *See United States v. Rahm,* 993 F.2d 1405, 1413 (9th Cir. 1993) ("expert testimony to bolster or impugn the credibility of a witness is properly excluded."). *See also United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) ("[t]he credibility of witnesses is generally not an appropriate subject for expert testimony."). *See also United States v. Christensen*, 186 F.Supp.3d 997, 1000 (D. Ariz. 2016), *quoting United States v. Charley,* 189 F.3d 1251, 1267 (10th Cir. 1999) ("[i]n general, expert testimony which does nothing but vouch for the credibility of another witness encroaches on the jury's vial and exclusive function to make credibility determinations, and thus does not 'assist the trier of fact' as required by Rule 702.").

This ban on credibility-bolstering expert testimony is grounded in other evidentiary rules as well. Federal Rules of Evidence 403 directs to the Court to exclude evidence that would be unfairly prejudicial. *See United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008) (affirming district court's exclusion of vouching testimony under Rule 403's balancing test). Expert testimony that vouches for the credibility of another witness also lacks relevance under Fed. R. Evid. 401, and would thus not assist the trier of fact under Fed. R. 702. *See United States v. Adams*, 271 F.3d 1236, 1246 (10th Cir. 2001).

7

In this case, there is no evidence that the government is aware of that defendant Porter received legal advice or was otherwise advised that the payments to the Lefty O'Doul's Foundation were legitimate behested payments, and defendant has proffered none. If defendant Porter wishes to testify that he believed that the payments were behested payments, he may do so. But allowing an expert to testify as to her legal conclusion – much disputed – that defendant Porter's actions in regards to approving Lefty O'Doul's payments were consistent with legal practice is nothing more than an expert vouching for the defendant's credibility as to the defendant's state of mind and intent. As such, it is impermissible expert testimony and should be excluded.

### c. Ms. Ravel's Testimony is Improper Legal Testimony

While Fed. R. Evid. 702 allows for an expert to testify as to factual matters if they will help the trier of fact resolve a *factual* dispute, "resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *See United States v. Brodie*, 858 F.2d. 492, 496-97 (9th Cir. 1988). This is why federal courts generally prohibit lawyers, professors and other legal experts from interpreting the law as expert witnesses. This principle "is so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle. *In re Initial Public Offering Sec. Litigation*, 174 F. Supp.2s 61, 64 (S.D.N.Y. 1991), quoting Thomas E. Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. Kan. Law Rev. 325, 352 (1992). *See also United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) (reversing trial court's decision to allow bankruptcy judge to testify regarding his interpretation of the Bankruptcy Act, stating that "[i]t is the function of the trial judge to determine the law of the case.").

In addition, courts have also properly excluded legal expert opinion which applies the law to the facts. Many courts have held that the judge is the sole arbiter of the law and its application to the facts. *See Marx & Co. v. Diner's Club, Inc.* 550 F.2d 505, 508-11 (2d Cir. 1977); *Montgomery v. Aetna Cas. and Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1990) (finding that court abused its discretion by allowing witness to testify that defendant had a duty to hire tax counsel, stating "[a] witness also may not testify to the legal implications of conduct ....")

Here, Ms. Ravel proposes to testify to her legal conclusion: that the Lefty O'Doul's payments alleged in the Superseding Indictment were legal behested payments and Mr. Porter's actions in

approving the payments were legal. But whether the Lefty O'Doul's payments met the legal definition of a behested payment is irrelevant. Defendant Porter is charged with participating in a bribery and honest services fraud conspiracy; not with violating a state or local law related to behested payments. Whether or not the payments ran afoul of local law has no bearing on whether they were bribes as alleged in the Superseding Indictment. But there is a significant risk that the jury will be left with the improper legal view that if a payment is a legitimate behested payment, then it cannot be a bribe in violation of 18 U.S.C. § 666, or a benefit improperly provided as part of an honest services fraud scheme. There is no legal support for this. It is not an element of either the federal Bribery statute, 18 U.S.C. § 666, or the honest services fraud statutes, 18 U.S.C. § 1346. Nor has Defendant Porter notified the government that he intends to rely on an advice of counsel defense, or provided evidence that he relied on a legal opinion that the payments were legal.

Additionally, Ms. Ravel's proposed legal conclusions are much in dispute. In fact, her conclusion is even contradicted by the supporting materials she submitted as part of her expert report. Included in the supplemental materials provided with Ms. Ravel's Expert Report is a Public Integrity Review Preliminary Assessment conducted by the Controller's Office of the City and County of San Francisco, released on September 24, 2020. *See Ward Decl*, Exhibit A (Expert Report) App. B. The report is a detailed legal analysis of the gifts to San Francisco city departments made through non-City organizations, and their compliance or non-compliance with local laws. *See Id.* App. B_192. Included in the report is the Controller's review and analysis of Nuru's holiday parties, and their funding through the Lefty O'Doul's Foundation. *Id.* These are the very payments alleged in the Superseding Indictment as bribes.

Nowhere does the report conclude, as Ms. Ravel does, that those payments were consistent with the State and Local Law regarding behested payments. In fact, the report reached the exact opposite conclusion, that the payments violated city ethics laws. In a page titled "Tone at the Top," the City Controller uses the holiday parties as an example of the failure of the leadership at DPW to create an ethical atmosphere, and how this failure can and did lead to ethical and legal violations. *Id.* at App. B_221. Specifically, the report concludes that:

> *The 2019 Office of the City Administrator and Public Works Holiday party illustrates this problem. Based on information from the City Attorney's Public Integrity Unit, Mr. Nuru solicited funds from companies with business or regulatory decisions before Public Works. These funds were then used to host the party and other employee appreciation events that benefitted those in the department.* **Together these acts create an acceptance of a gift from a "restricted source," which is prohibited under city ethics laws.**

*Id.* (Bold in original).

Ms. Ravel's expert report does not address this statement, or the clear discrepancy in its conclusions with her assertion that defendant's Porter's approval of the payments for these holiday parties "were consistent with the State and Local Law."

Were Ms. Ravel be allowed to testify to this legal conclusion, the government would be required to cross-examine her on the legal basis for her conclusions, and may also need to call a rebuttal legal expert who would testify that the payments were not legal behested payments, and would require the Court to provide instruction to the jury to insure that they did not rely on her legal conclusions to reach an improper decision as to whether defendant Porter violated federal bribery and honest services law. All of this will confuse the jury, and create a real risk that the jury, based on her testimony, will apply the wrong legal standard to this case. This is exactly the purpose of the restrictions and cautions against allowing legal expert testimony. *See In re Novatel Wireless Sec. Litig.,* 2012 WL 5463214 (S.D. Cal. 2012) ("[w]hile an expert witness may testify as to an ultimate issue of fact the jury will decide, the general rule is that an expert may not testify as to what the law is, because such testimony would impinge on the trial court's function.").

### d. Ms. Ravel's Testimony as to Behested Payments Generally is Irrelevant and Prejudicial

To the extent Ms. Ravel proposes to testify as to unrelated behested payments made by third parties in California and elsewhere, such testimony is wholly irrelevant to this case, but creates a significant risk of confusing the issues, and misleading the jury, and should therefore be excluded. *See* Fed. R. Evid. 401, 403.

For example, Ms. Ravel states that in her report, she will "focus primarily on tax-exempt nonprofit organizations that qualify as public-serving or charitable organizations based on statutory requirements outlined in Section 501(c)(3) of the federal tax code (i.e, "501(c)(3) organizations")

10

because this is the type of nonprofit organization identified in the Superseding Indictment." *Id.* ¶ 20. The proposed testimony continues that Congress granted these tax benefits to nonprofits "based on the theory that the government is compensated for the loss of revenue by its relief from financial burdens which would otherwise have to be met by appropriations from other public funds, and by the benefits resulting from the promotion of the general welfare." *Id.* Ms. Ravel's laudatory praise of non-profits in general continues: "In modern times, government decreases in funding starting in the 1980s have led to more nonprofit charitable organizations arising to fill the gap in providing social services." She then states that "state and local governments frequently rely on nonprofit organizations to provide necessary services to communities such as services addressing healthcare, homelessness . . . among many others."

All of Ms. Ravel's proposed testimony as to the legitimate work of nonprofits is general, nonspecific, and contains no reference to the facts and evidence in this case. Specifically, the evidence in this case is that the "donations" made to the Lefty O'Doul's Foundation were not used <u>at all</u> for the stated purpose of the Foundation – to provide access to baseball and baseball equipment for underprivileged testimony – but were rather simply funds secretly funneled through the Foundation, at Nuru's request, to pay for expensive food, open bars, decorations, and other accoutrements of Nuru's lavish holiday parties. *See Dkt. 67* (Superseding Indictment).

None of her general testimony is relevant to this case, any more than testimony about the legality of charitable contributions generally would be relevant, or testimony as to campaign contributions or other payments to public officials. This is not a case about behested payments, and the defendant is not charged with violating behested payment rules and regulations generally. But allowing this expert testimony at trial creates significant risk that the jury would improperly conclude that the specific payments alleged in the Superseding Indictment were legal because other, somewhat similar payments, were legal in some circumstances.

//
//
//
//
//

## V.    CONCLUSION

This is not a trial about the legality of behested payments. Vague assertions about unrelated behested payments made in California and elsewhere are irrelevant to this case. It is improper for an expert to opine that the alleged bribe payments by the defendant were *legal* behested payments. It is improper to call an expert whose purpose is to provide the imprimatur of expert testimony on statements that do little more than work to bolster the defendant's credibility. This is particularly true when the expert has provided insufficient basis for her opinions, opinions that by her own report's supporting documentation were not legal or ethical.

Ms. Ravel's testimony should be excluded.

                        ISMAIL J. RAMSEY
                        United States Attorney

Dated: April 4, 2023                  */s/ David J. Ward*
                        DAVID J. WARD
                        ILHAM A. HOSSEINI
                        Assistant United States Attorneys