ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case no. CR-22-00270-WHO |
| Plaintiff, | **UNITED STATES' MOTIONS IN LIMINE** |
| v. | |
| JOHN FRANCIS PORTER, | Judge: Hon. William H. Orrick<br>Pretrial Conf.: April 25, 2023<br>Time: 2:00 p.m. |
| Defendant. | Trial Date: May 30, 2023 |

**TABLE OF CONTENTS**

I.       INTRODUCTION ...................................................................................................1

II.      STATEMENT OF FACTS .....................................................................................1

III.     MOTIONS IN LIMINE ..........................................................................................4

         A.     Motion in Limine No. 1:  The Court should Admit Defendant's Statements
                Offered by the Prosecution but Preclude the Defendant from Admitting His
                Own Prior Out of Court Statements. ...........................................................4

         B.     Motion in Limine No. 2: The Court Should Exclude References to Punishment
                and Attempts to Elicit Jury Sympathy. ........................................................6

         C.     Motion in Limine No. 3:  The Court Should Limit the Use of Witness
                Interview Reports at Trial ............................................................................8

         D.     Motion in Limine No. 4: The Court Should Enforce Reciprocal Discovery
                Obligations. .................................................................................................10

         E.     Motion in Limine No. 5: The Court Should Exclude Self-Diagnosis of
                Physical or Mental Conditions. ..................................................................11

IV.      CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Palermo v. United States*,
   360 U.S. 343 (1959).............................................................................................................. 9

*People of Territory of Guam v. Ojeda*,
   758 F.2d 403 (9th Cir. 1985) ............................................................................................... 4

*Pope v. United States*,
   298 F.2d 507 (5th Cir. 1962) ........................................................................................... 6, 7

*Rogers v. United States*,
   422 U.S. 35 (1975)................................................................................................................ 7

*Shannon v. United States*,
   512 U.S. 573 (1994)............................................................................................................. 7

*Taylor v. Illinois*,
   484 U.S. 400 (1988)........................................................................................................... 10

*United States v. Balthazard*,
   360 F.3d 309 (1st Cir. 2004)................................................................................................ 9

*United States v. Claiborne*,
   765 F.2d 784 (9th Cir. 1985) ............................................................................................... 9

*United States v. Collicott*,
   92 F.3d 973 (9th Cir. 1996) ................................................................................................. 6

*United States v. Dochee*, No. 08-CR-108-4
   2009 U.S. Dist. LEXIS 2814 ............................................................................................... 8

*United States v. Fernandez*,
   839 F.2d 639 (9th Cir. 1988) ........................................................................................... 5, 6

*United States v. Frank*,
   956 F.2d 872 (9th Cir. 1991) ............................................................................................... 6

*United States v. Kot*,
   2012 WL 1657118 (D. Nev. May 10, 2012)........................................................................ 9

*United States v. Matlock*,
   415 U.S. 164 (1972).............................................................................................................. 4

*United States v. Mitchell*,
   502 F.3d 931 (9th Cir. 2007) ........................................................................................... 5, 6

*United States v. Nakai*,
   413 F.3d 1019 (9th Cir. 2005) ............................................................................................. 5

*United States v. Ortega*,
   203 F.3d 675 (9th Cir. 2000) ................................................................................... 5, 6

*United States v. Pelisamen*,
   641 F.3d 399 (9th Cir. 2011) ...................................................................................... 4

*United States v. Ramirez*,
   482 F.2d 807 (2d Cir. 1973)........................................................................................ 7

*United States v. Reed*,
   726 F.2d 570 (9th Cir. 1984) ...................................................................................... 7

*United States v. Scholl*,
   166 F.3d 964 (9th Cir. 1999) .................................................................................... 10

*United States v. Sine*,
   493 F.3d 1021 (9th Cir. 2007) .................................................................................... 6

**Statutes**

18 U.S.C. § 371 ............................................................................................................... 3

18 U.S.C. § 1349 ............................................................................................................. 2

18 U.S.C. § 666(a)(2) ...................................................................................................... 3

18 U.S.C. § 1343 ............................................................................................................. 2

**Rules**

Fed. R. Crim. P.16(d)(2) ............................................................................................... 10

Fed. R. Evid. 402 ............................................................................................................ 7

Fed. R. Evid. 403 ............................................................................................................ 7

Fed. R. Evid. 701 .......................................................................................................... 11

Fed. R. Evid. 801(d)(1)(A) ............................................................................................. 9

Fed. R. Evid. 801(d)(2) ................................................................................................... 5

Fed. R. Evid. 801(d)(2)(A) ............................................................................................. 4

Fed. R. Evid. 802 ............................................................................................................ 9

Federal Rules of Criminal Procedure Rule 16 ............................................................. 10

Federal Rules of Evidence 401 ...................................................................................... 6

I.    INTRODUCTION

The United States respectfully submits the following motions *in limine*[1] in advance of the trial: (1) the Court should admit defendant's statements offered by the prosecution but preclude the defendant from admitting his own prior out of court statements; (2) the Court should exclude references to punishment and attempts to elicit jury sympathy; (3) the Court should limit the use of witness interview reports at trial; (4) the Court should enforce reciprocal discovery obligations; and (5) the Court should exclude self-diagnosis of physical or mental conditions.

The government respectfully requests the opportunity to supplement these motions *in limine* if any additional legal issues requiring the Court's intervention arise.

II.   STATEMENT OF FACTS

The charges in this case arise from a scheme to defraud the citizens of the City and County of San Francisco of the right to the honest services of the Department of Public Works (DPW), and to bribe the then head of DPW, Mohammed Nuru.

Beginning no later than December 2016, employees of Recology and others conspired to deprive the City of San Francisco of the honest services of Nuru through a stream of bribe payments.  As part of this scheme and conspiracy, Defendant Porter and others conspired to pay $60,000 to fund Nuru's holiday parties, as well as paying for meals, drinks, and other things of value to Nuru, including arranging and funding the hiring of Nuru's son; first at Recology, and then later at another organization where Recology paid $14,000 for a summer youth intern program.

The Superseding Indictment alleges that Porter and co-conspirators directed this stream of benefits to Nuru in order to influence Nuru to act in Recology's favor, and to have Nuru take official action and exercise official influence in Recology's favor.  Indeed, as the Director of the San Francisco DPW, which regulated Recology and set the rates it could charge, Nuru was well-positioned to exercise his official influence on behalf of Recology.

The Superseding Indictment further alleges that Porter and others participated in a conspiracy to commit bribery, and committed bribery of a local official, when they conspired to make, and did make, a

---

[1] The United States is combining all of its motions in limine into one filing pursuant to the Court's order.  *See* Dkt. 84 at 3 (requiring one document with each motion listed as a subheading).

1  $20,000 payment from Recology, at Nuru's request, in December 2018, to fund one of Nuru's lavish

2  holiday parties he held for friends, select DPW employees, and other political supporters.  This payment

3  was intended as an illegal gift to Nuru in order to induce his official actions on Recology's behalf.

4       The Superseding Indictment alleges that all of these payments or benefits were given to Nuru, or

5  made for his benefit, during the time that Nuru could take official action to benefit or harm Recology,

6  including but not limited to: 1) recommending whether Recology's request for an increase in the rates it

7  could charge in the City of San Francisco - Recology's primary source of revenue - should be approved;

8  2) deciding whether to approve Recology's tipping fees paid by DPW for dumping materials at a

9  Recology recycling facility, and 3) noting that Nuru could also approve, deny, or otherwise affect other

10  payments to Recology, as well as operational changes requested by Recology that would affect

11  Recology's business.

12       Defendant Porter was a high-ranking executive at Recology, first as a Controller from 2015 to

13  2017, and then Vice President and Group Manager from 2018 to 2021.  He is charged with the following

14  offenses:

15       1) Conspiracy to Commit Honest Services Wire and Mail Fraud, that is, participating in a

16  scheme, with other individuals, to defraud and deprive the people of San Francisco of their right to the

17  honest and faithful services of Mohammed Nuru, the then-Director of DPW, through bribery and

18  kickbacks, from about December 2016 to about January 28, 2020, in violation of 18 U.S.C. § 1349

19  (Count One);

20       2) Honest Services Wire Fraud, that is, causing the transmission of a $20,000 check from

21  Recology's Wells Fargo Bank account to Lefty O'Doul's Foundation for Kids' Bank of America

22  account on November 29, 2018, in violation of 18 U.S.C. §§ 1343, 1346, and 2 (Count 2);

23       3) Honest Services Wire Fraud, that is, causing the transmission of a $20,000 check from

24  Recology's Wells Fargo Bank account to Lefty O'Doul's Foundation for Kids' Bank of America

25  account on November 18, 2019, in violation of 18 U.S.C. §§ 1343, 1346, and 2 (Count 3);

26       4) Honest Services Mail Fraud, that is, causing to be placed in an authorized depository for mail

27  a $20,000 check from Recology to DPW on November 29, 2018, in violation of 18 U.S.C. §§ 1343,

28  1346, and 2 (Count 4);

1    5) Conspiracy to Commit Bribery of a Local Official, that is, participating in a scheme, with

2    other individuals, to corruptly give and offer things of value, namely, payments and benefits to

3    Mohammed Nuru with the intent to influence him to use his power and perform official acts to benefit

4    Recology's business as opportunities arose, from about October 2017 to about January 28, 2020, in

5    violation of 18 U.S.C. § 371 (Count 5); and

6    6) Bribery of a Local Official, that is, corruptly gave a thing of value to Mohammed Nuru on or

7    about November 27, 2018, when Porter approved a payment of $20,000 to the Lefty O'Doul's

8    Foundation for Kids to fund Nuru's annual holiday party, a payment intended as an illegal gift to Nuru

9    to induce his official actions on Recology's behalf, in violation of 18 U.S.C. §§ 666(a)(2) and 2 (Count

10   6).

11   *See* Dkt. 67 (Superseding Indictment).

12   As part of the honest services fraud scheme and conspiracy, the Superseding Indictment alleges

13   that Porter and others conspired to pay for meals, drinks, and other things of value to Nuru, in addition

14   to funding his holiday parties, including an $1,182 dinner at Harris Steak House in December 2018 for

15   Nuru and a group of Recology executives that Porter personally paid for with his corporate Recology

16   credit card.  Porter and his co-conspirators directed this stream of benefits to Nuru to influence Nuru to

17   act in Recology's favor, and to have Nuru take official action and exercise official influence in

18   Recology's favor.

19   Co-conspirators who were involved in the same schemes have been charged and convicted in

20   other cases before this Court, including:

21   •    Mohammed Nuru, then-Director of DPW, was convicted and sentenced to 84 months for

22   honest services wire fraud.  *See United States v. Nuru,* CR-21-490 WHO;

23   •    Paul Giusti, the Group Government and Community Relations Manager for Recology

24   was convicted and is awaiting sentencing.  *See United States v. Giusti,* CR-21-00294-WHO;

25   •    Nick Bovis, manager of the Lefty O'Doul's Foundation for Kids and owner of Lefty

26   O'Doul's bar and restaurant, was convicted and is awaiting sentencing.  *See United States v. Bovis,* CR-

27   20-00204-WHO;

28   •    Sandra Zuniga, former DPW employee, was convicted and is awaiting sentencing.  *See*

1  *United States v. Zuniga*, CR-21-00096-WHO.

2  **III.    MOTIONS IN LIMINE**

3         **A.       Motion in Limine No. 1:  The Court should Admit Defendant's Statements Offered
               by the Prosecution but Preclude the Defendant from Admitting His Own Prior Out
4              of Court Statements.**

5      The government moves in limine to admit the defendant's statements when offered by the

6  government as admissions of a party opponent.  The government also moves to preclude the defendant

7  from admitting self-serving hearsay.

8                      **1.       The Defendant's Statements Offered by the Prosecution are Admissible
                            Pursuant to Federal Rule of Evidence 801(d)(2).**
9

10     At trial, the government intends to introduce in its case-in-chief numerous statements made by

11 the defendant.  These statements include the defendant's oral statements made to other employees at

12 Recology and the defendant's written statements, such as emails, text messages and other

13 communications, made to other employees at Recology, employees of DPW, and others regarding the

14 holiday party payments, various benefits to Nuru, the importance of the relationship between Recology

15 and Nuru, and Recology's business matters pending before the DPW, including its rate increase

16 applications and tipping fee matters.

17     The Rules of Evidence allow admission of out-of-court statements where they are (1) made by

18 the defendant and (2) are offered against the defendant.  Fed. R. Evid. 801(d)(2)(A) (statement is not

19 hearsay if it "is offered against an opposing party and . . . was made by the party in an individual or

20 representative capacity"); *see also United States v. Pelisamen*, 641 F.3d 399, 410 (9th Cir. 2011)

21 (defendant's own statements made during television interview admissible over hearsay objection).

22 "Cases interpreting Rule 801(d)(2)(A) are in agreement that statements need not be incriminating to be

23 admissions.  For statements to constitute admissions they need only relate to the offense." *See People of*

24 *Territory of Guam v. Ojeda*, 758 F.2d 403, 408 (9th Cir. 1985).  The above categories of statements

25 made by defendant Porter are not hearsay and are squarely admissible pursuant to Fed. R. Evid.

26 801(d)(2)(A).  *United States v. Matlock*, 415 U.S. 164, 172 (1972).  The government has produced to

27 Porter all the texts, emails, attachments, and other documents containing his statements that the

28 government intends to introduce at trial.  Accordingly, the statements are admissible if offered by the

1  United States against Porter under Rule 801(d)(2)(A).

2          **2.      The Defendant's Statements, if offered by the Defense, are Inadmissible**
           **Pursuant to Federal Rule of Evidence 801(d)(2).**
3

4          While the Rules of Evidence allow the United States to introduce out-of-court statements of the

5  defendant, those rules preclude the defendant from doing the same.  A plain reading of Fed. R. Evid.

6  801(d)(2)(A) exempts from hearsay only those party-opponent admissions that are "offered *against* an

7  opposing party."  Fed. R. Evid. 801(d)(2) (emphasis added).  To the extent that the defendant seeks

8  admission at trial of his own out-of-court statements or those of persons acting on his behalf, those

9  statements constitute inadmissible hearsay.  This is true even if the defendant's statements may be

10 exculpatory, and even if the statements are elicited through cross-examination.  *See, e.g., United States

11 v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) (defendant's attempt to elicit exculpatory statements he

12 made during interviews with agents was improper because "[t]hese statements were inadmissible

13 hearsay; as [defendant] was attempting to introduce them himself, they were not party-opponent

14 admissions"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("[T]he district court did not

15 abuse its discretion when it limited Ortega's ability to elicit his exculpatory hearsay statements on cross-

16 examination" because otherwise "Ortega would have been able to place his exculpatory statements

17 before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule

18 forbids.") (internal quotation omitted).

19         A defendant may not use his own prior statements, even where the government introduces

20 incriminating portions of them.  *See, e.g., United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005)

21 (holding as inadmissible hearsay defendant's exculpatory statements that defense sought to introduce

22 after FBI agent testified about defendant's inculpatory statements); *United States v. Fernandez*, 839 F.2d

23 639, 640 (9th Cir. 1988) (district court properly sustained government's hearsay objection to defendant's

24 attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent); *Mitchell*,

25 502 F.3d at 964 (exculpatory statements by defendant were inadmissible hearsay even when made in a

26 broader self inculpatory confession).

27         Here, where the government intends to offer portions of the defendant's prior statements, the

28 defendant cannot offer his own out-of-court statements at trial.  Any attempt to place his out-of-court

1  statements "before the jury without subjecting [the defendant] to cross-examination [is] precisely what

2  the hearsay rule forbids." *Fernandez*, 839 F.2d at 640.  Defendant may attempt to rely on Federal Rule

3  of Evidence 106 (the "rule of completeness") to introduce portions of any statements that are not offered

4  by the United States.  But Rule 106 is not a rule of admissibility.  Rather, it addresses the order of proof.

5  "Rule 106 does not render admissible otherwise inadmissible hearsay." *Mitchell*, 502 F.3d at 965 n.9.  It

6  simply allows an adverse party to require that other admissible evidence be introduced at the same time.

7  *See United States v. Sine*, 493 F.3d 1021, 1037 n.17 (9th Cir. 2007) (rule of completeness "does not

8  allow the admission of otherwise inadmissible statements"); *United States v. Collicott*, 92 F.3d 973, 983

9  (9th Cir. 1996) (Rule 106 "does not compel admission of otherwise inadmissible hearsay evidence");

10  *Ortega*, 203 F.3d at 682 (non-self-inculpatory statements, even if made contemporaneously with other

11  self-inculpatory statements, are inadmissible hearsay; rule of completeness does not allow for admission

12  of inadmissible hearsay).

13          Thus, the defendant cannot offer his own prior statements in support of his defense, whether

14  through his own testimony or that of any other witness he may cross-examine or choose to call.

15  Accordingly, the Court should rule that the government, and only the government, is permitted to

16  introduce evidence of statements made by the defendant.

17      **B.      Motion in Limine No. 2: The Court Should Exclude References to Punishment and
           Attempts to Elicit Jury Sympathy.**

18

19      The United States moves in limine to preclude all references to punishment in front of the jury

20  and any attempts to elicit jury sympathy or encourage jury nullification.

21          **1.      The Court Should Exclude All References to Punishment in Front of the
               Jury.**

22

23      The government moves under Federal Rules of Evidence 401 and 403 to preclude, as irrelevant

24  and prejudicial, any reference to the defendant's potential sentence during all phases of the trial

25  (including jury selection, opening statements, summation, and examination of witnesses).

26      "It has long been the law that it is inappropriate for a jury to consider or be informed of the

27  consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991).  The jury's

28  focus must be on their vital fact-finding duty.  As explained in *Pope v. United States*, 298 F.2d 507 (5th

Cir. 1962):

> To inform the jury that the court may impose minimum or maximum
> sentence, will or will not grant probation, when a defendant will be
> eligible for parole, or other matters relating to disposition of the defendant,
> tend to draw the attention of the jury away from their chief function as
> sole judges of the facts, open the door to compromise verdicts and to
> confuse the issue or issues to be decided.

*Id*. at 508; *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion"); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (explaining that jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (holding that trial judge properly instructed jury that the "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court.  It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused").

Therefore, the defendant and his counsel should be precluded from making any reference in the presence of the jury to punishment in statements, questions, or argument.  Such a reference need not be over-the-top to be improper and harmful.  It could be as subtle as, "the defendant is facing a lot of time," "this case has serious consequences for the defendant," "the defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time to come."  Once the jury hears anything about punishment, the bell simply cannot be un-rung or the damage neutralized by a curative instruction.  Accordingly, the government respectfully requests that the Court provide unequivocal instruction before trial that such mentions of punishment are proscribed.

### 2. The Court Should Preclude Improper Efforts to Elicit Jury Sympathy or Encourage Jury Nullification.

Testimony or evidence relating to the defendant's personal circumstances, health, or references to the effect of the investigation or a conviction upon him or any other person have no bearing on the charges in this case and should be precluded.  This kind of information is irrelevant and amounts to nothing more than an appeal to the sympathy of the jury.  Evidence that is not relevant is not admissible, Fed. R. Evid. 402, and even relevant evidence may be inadmissible "if its probative value is

1  substantially outweighed by the danger of unfair prejudice," Fed. R. Evid. 403.  The Ninth Circuit

2  Model Jury Instructions explicitly instruct jurors to not "be influenced by any personal likes or dislikes

3  [or] sympathy."  Ninth Cir. Model Crim. Jury Instr. 1.1 (2022 rev. Dec. 2020).  *See also United States v.*

4  *Ramirez*, 482 F.2d 807, 816 (2d Cir. 1973); *United States v. Dochee*, No. 08-CR-108-4, 2009 U.S. Dist.

5  LEXIS 2814 at*1, *2-3 (N.D. Ill. Jan. 15, 2009) (excluding "any argument or evidence designed to

6  invoke the sympathy of the jury with respect to the impact of a conviction on defendant's family").

7       Personal or familial consequences of trial or conviction should play no part in the jury's

8  deliberations as to whether a defendant is guilty of the crimes charged.  The defendant and his counsel

9  should be precluded from commenting on or referring to any topics related to sympathy during any stage

10  of the trial, including opening statement and closing argument.  Such topics may include:

11      (1)  The defendant's health status;

12      (2)  The defendant's mental health status, including reference to any anxiety;

13      (3)  The defendant's family status;

14      (4)  The defendant's charitable giving, if any;

15      (5)  The defendant's religious beliefs or practices;

16      (6)  The defendant's feelings about this case, including, but not limited to, whether the defendant

17         is embarrassed or humiliated because of his arrest; and

18      (7)  The potential impact that the jury verdict may have on the defendant's family, employment,

19         financial status and/or immigration status.

20       Accordingly, the government respectfully requests that the defendant be precluded from making

21  improper attempts to elicit juror sympathy.

22      **C.**    **Motion in Limine No. 3:  The Court Should Limit the Use of Witness Interview Reports at Trial**

23       The United States requests that the Court properly limit the use of witness interview reports at

24  trial.  Over the course of the investigation of this case, the government interviewed witnesses and

25  prepared summaries of those interviews on FBI Form 302s ("Form 302s").  The government produced

26  and will continue to produce these interview summaries.  While these summaries may contain relevant

27  information, the Federal Rules of Evidence limit their use at trial.  As explained below, the Court should

28

U.S. MOTIONS IN LIMINE        8
CR-22-00270-WHO

1    preclude Porter from: 1) introducing the contents of the Form 302s to impeach witnesses during cross

2    examination; 2) publishing or quoting the contents of the Form 302s to the jury; or 3) otherwise

3    suggesting to the jury that the Form 302s are statements of the witnesses who did not write or adopt

4    them.

5          Agent reports of witness interviews are often mishandled at trial.  *See generally* Hon. Katherine

6    B. Forrest (ret.), *Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials* (June 11,

7    2018), *available at* https://blog.federaldefendersny.org/wp-content/uploads/2018/06/Forrest-on-302s.pdf

8    ("[A]t trial, counsel are often unclear as to the lines for proper 302 use.").  As agent reports, Form 302s

9    contain the statements of a third party—not the statements of a witness.[2]  *United States v. Claiborne*,

10   765 F.2d 784, 801 (9th Cir. 1985) ("The 302 summaries of interviews conducted by Government agents

11   with witness Wright cannot fall within [the Jencks Act's definition of written 'statements'] because

12   Wright did not draft the summaries or otherwise approve their contents.").  Nor are the statements

13   presumed to reflect a verbatim transcript of a witness's statements:  Different agents may summarize

14   interactions at different levels of detail or include in interview summaries editorial or investigative

15   content not stated by a witness.

16         Because witness interview reports do not qualify as prior witness statements, they do not come

17   within Fed. R. Evid. 801(d)(1)(A)'s hearsay exclusion for prior inconsistent statements.  *See United*

18   *States v. Kot*, 2012 WL 1657118, at *2 (D. Nev. May 10, 2012), *aff'd*, 583 F. App'x 716 (9th Cir. 2014)

19   ("[T]he contents of 302s may not be used to impeach witnesses on the basis of inconsistent statements,

20   because the statements are not the statements of the witnesses themselves."); *cf. Palermo v. United*

21   *States*, 360 U.S. 343, 350 (1959) (Jencks Act's drafters "felt [it] grossly unfair to allow the defense to

22   use statements to impeach a witness *which could not fairly be said to be the witness' own* rather than the

23   product of the investigator's selections, interpretations, and interpolations") (emphasis added).

24   Accordingly, the Court should bar Porter from introducing Form 302s to impeach witnesses with alleged

25   inconsistent statements.[3]

26   _____

27         [2] No witness in this investigation reviewed and adopted a Form 302 after its preparation by the
     reporting agent.

28         [3] In addition, as the out-of-court statements of a reporting agent, the Form 302s are hearsay and
     so substantively inadmissible.  *See* Fed. R. Evid. 802.

1     In some circumstances, it may be proper for a party to use a Form 302 to refresh a witness's

2   recollection, but the party must first establish the witness's inability to recall information that he or she

3   provided previously.  *See United States v. Balthazard*, 360 F.3d 309, 317 (1st Cir. 2004) ("It is hornbook

4   law that a party may not use a document to refresh a witness' recollection unless the witness exhibits a

5   failure of memory").

6     The Court should properly limit the use of Form 302s at trial by precluding Porter from quoting

7   or introducing the Form 302s, publishing the Form 302s to the jury, or otherwise suggesting to the jury

8   that the Form 302s are statements of the witnesses.

9     **D.     Motion in Limine No. 4: The Court Should Enforce Reciprocal Discovery
            Obligations.**

10

11    The United States moves in limine to enforce reciprocal discovery obligations.

12    The United States has complied with its discovery obligations pursuant to Rule 16 of the Federal

   Rules of Criminal Procedure.  In addition, the government confirms that it is in compliance with its

13  *Brady* and *Giglio* obligations and will continue to comply with those obligations.  The United States has

14

15  produced hundreds of thousands of pages of discovery and will continue to meet its obligations by

   sending out any additional relevant discovery as it becomes available.

16

17    The United States has formally requested discovery from the defendant pursuant to Federal

   Rules of Criminal Procedure Rule 16, Rule 12.1 and Rule 26.2 in multiple letters, dating back to 2021.

18
   Yet the government has not yet received any reciprocal discovery from the defense in this case other

19
   than an expert notice.  Accordingly, the government submits this motion to exclude any evidence

20
   offered by the defendant at trial that he failed to produce in a timely manner in violation of his reciprocal

21
   discovery obligations.

22
      It is well-settled that this Court may exclude evidence that a defendant failed to produce pursuant

23
   to his discovery obligations.  Fed. R. Crim. P.16(d)(2) ("the court may . . . prohibit the party from

24
   introducing the undisclosed evidence"); *see also Taylor v. Illinois*, 484 U.S. 400, 414-15 (1988)

25
   (upholding trial court's exclusion of witness testimony for defendant's failure to comply with discovery

26
   request); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (court's exclusion of checks that

27
   defendant failed to produce during discovery was not an abuse of discretion).  This Court should

28

1   exercise its discretion to order this remedy here.  Alternatively, the Court should enter an order requiring

2   the defense to comply with its discovery obligations forthwith.  Taking either of these steps would avoid

3   the alternative – delays during the trial due to eleventh hour production by the defense.

4       Finally, any defense attempt to evade its discovery obligations (or its obligation to disclose

5   witnesses and exhibits) on the grounds that the defendant would be "rebutting" the government's case is

6   inappropriate.  Only the government has the right to a rebuttal case, not the defendant.  The defense's

7   case-in-chief is its "rebuttal" opportunity.  Lying-in-wait to spring discovery (or witnesses, and/or

8   exhibits) until after the government rests, based on the assertion of a "rebuttal" argument, is improper,

9   prejudicial, and risks delaying the trial.  In the interest of judicial economy and efficiency, the Court

10  should require the defendant to provide the appropriate discovery along with notice of witnesses and

11  exhibits well in advance of trial.  If the defense attempts to introduce as evidence items that should have

12  been produced pursuant to the defendant's discovery obligation, the government will object to the

13  admission of such evidence.

14      **E.     Motion in Limine No. 5: The Court Should Exclude Self-Diagnosis of Physical or
                 Mental Conditions.**

15      The government requests an order precluding defendant from personally testifying as to, or

16  otherwise introducing any evidence regarding, any alleged physical or mental condition he purports to

17  have or any prescribed drugs he purports to take.  First, the defense has not disclosed any such evidence.

18  Because defendant has not provided any medical records regarding defendant, no foundation exists for

19  such testimony.  Second, upon information and belief, defendant is not qualified to render medical or

20  psychological self-evaluations, and any testimony as to any diagnosis he may have received from a

21  qualified medical or psychological professional would be hearsay if offered through defendant's

22  testimony or through a third party's testimony.  Thus, the introduction of any evidence regarding

23  defendant's physical or mental health condition or diagnosis, without a proper offer of proof as to its

24  relevance and without a proper foundation, should be precluded.  *See* Fed. R. Evid. 701, 702 & 703.

25  ///

26  ///

27  ///

28

## IV.   CONCLUSION

For all the foregoing reasons, the Court should rule as set forth above if and when the identified issues arise. The government respectfully reserves the right to supplement these motions *in limine* if later presented with additional issues requiring the Court's intervention.

DATED:       April 11, 2023                            Respectfully submitted,

                                                       ISMAIL J. RAMSEY
                                                       United States Attorney


                                                       _____/s/_____
                                                       DAVID J. WARD
                                                       ILHAM A. HOSSEINI
                                                       Assistant United States Attorneys