Robb C. Adkins (SBN194576)
Sam A. Camardo (*Admitted Pro Hac Vice*)
Chardaie C. Charlemagne (*Admitted Pro Hac Vice*)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: radkins@bakerlaw.com
scamardo@bakerlaw.com
ccharlemagne@bakerlaw.com

*Attorneys for Defendant John Francis Porter*

**(Redacted-Public Version)**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN FRANCIS PORTER,

Defendant.

Case No: 22-cr-270-WHO

**DEFENDANT JOHN FRANCIS PORTER'S MOTIONS *IN LIMINE***

Hon. William H. Orrick

Trial Date: May 30, 2023

Pretrial Conference: April 25, 2023 | 2:00 pm

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTIONS ........ 1

MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE* ........ 2

I. Motion in Limine No. 1: The Court Should Exclude Any Argument Or Evidence Regarding Recology's DPA. ........ 2

A. Background ........ 2

B. Argument ........ 3

1. The DPA Violates Mr. Porter's Sixth Amendment Confrontation Rights. ........ 3

2. The DPA Is Irrelevant Under FRE 401 And 402, And Barred Under Policy Reasons Similarly Applicable To Plea Agreements. ........ 4

3. Any Probative Value Of The DPA Is Substantially Outweighed By The Danger Of Confusion, Unfair Prejudice, And Would Mislead The Jury. ........ 6

4. The DPA Is Hearsay Not Subject To An Exception. ........ 7

II. Motion in Limine No. 2: The Court Should Exclude Any Evidence Related To An Error In Recology's 2017 Rate Application, Including San Francisco's Civil Suit Against Recology For That Error, Recology's Settlement Of That Lawsuit, And Mr. Porter's Termination From Recology For Allegedly Failing To Follow Recology's Internal Risk Escalation Policy Related To The Error. ........ 8

A. Background ........ 9

B. Argument ........ 10

III. Motion in Limine No. 3: The Court Should Exclude Any Evidence Related To Mr. Porter's January 2020 Email (Proposed Government Exhibit 95) To Recology Staff Regarding A Scheduled Clean City Coalition Payment. ........ 13

A. Background ........ 13

B. Argument ........ 14

IV. Motion in Limine No. 4: The Court Should Exclude Any Evidence Related To Recology's Alleged Funding Of An Internship Program At A Nonprofit For Mohammed Nuru's Son, Muhktar Nuru. ........ 16

A. Background ........ 16

B. Argument ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. United States*, 393 F.2d 604 (9th Cir. 1968)....... 5

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988)....... 15

*Bemis v. Edwards*, 45 F.3d 1369 (9th Cir. 1995)....... 7

*Bisaccia v. Attorney Gen. of New Jersey*, 623 F.2d 307 (3d Cir. 1980)....... 5

*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003)....... 16

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992)....... 16

*City and County of San Francisco v. Recology San Francisco*, Notice of Entry of Consent Judgment, CGC-21-590091 (July 7, 2021)....... 10

*Crawford v. Washington*, 541 U.S. 36 (2004)....... 3, 4

*Gibbs v. Covello*, 996 F.3d 596 (9th Cir. 2021)....... 11

*Lee v. Illinois*, 476 U.S. 530 (1986)....... 8

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 425164 (E.D. La. Feb. 9, 2012)....... 6

*In re Shearman & Sterling*, Nos. 2–124, M8–85, C84–3894 and C84–743, 1986 WL 6157 (S.D.N.Y. May 30, 1986)....... 16

*Tennison v. Circus Enters. Inc.*, 244 F.3d 684 (9th Cir. 2001)....... 12

*Thompson v. United States*, 202 F. 401 (9th Cir. 1913)....... 18

*U.S. v. Collicott*,
92 F.3d 973 (9th Cir. 1996)........................................................................................ 15

*U.S. v. LeFevour*,
798 F.2d 977 (7th Cir. 1986)........................................................................................ 15

*United States v. Abair*,
746 F.3d 260 (7th Cir. 2014)........................................................................................ 11

*United States v. Bounds*,
No. 21-30114, 2022 WL 1284302 (9th Cir. Apr. 29, 2022) .................................................. 15

*United States v. Brooke*,
4 F.3d 1480 (9th Cir. 1993)........................................................................................ 13

*United States v. Brooks*,
772 F.3d 1161 (9th Cir. 2014)........................................................................................ 3

*United States v. Davis*,
183 F.3d 231 (3d Cir. 1999)........................................................................................ 13

*United States v. Drasen*,
845 F.2d 731 (7th Cir. 1988)........................................................................................ 18

*United States v. Flores-Perez*,
646 F.3d 667 (9th Cir. 2011)........................................................................................ 18

*United States v. Gaev*,
24 F.3d 473 (3d Cir. 1994)........................................................................................ 4, 5

*United States v. Garcia*,
519 F.2d 1343 (9th Cir. 1975)........................................................................................ 4

*United States v. Hickey*,
580 F.3d 922 (9th Cir. 2009)........................................................................................ 18

*United States v. Li*,
55 F.3d 325 (7th Cir. 1995)........................................................................................ 15

*United States v. Loftis*,
843 F.3d 1173 (9th Cir. 2016)........................................................................................ 19

*United States v. Lopez*,
4 F.4th 706 (9th Cir. 2021)........................................................................................ 15

*United States v. Novaton*,
271 F.3d 968 (11th Cir. 2001)........................................................................................ 12

*United States v. Sullivan*,
No. 20-cr-00337-WHO-1, 2022 WL 3716594 (N.D. Cal. Aug. 28, 2022)............................... 6

Baker & Hostetler LLP
Attorneys at Law
San Francisco

*United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657 (3d Cir. 2000) .......... 7

*United States v. Vallejos*, 742 F.3d 902 (9th Cir. 2014) .......... 15

*United States v. Vera*, 893 F.3d 689 (9th Cir. 2018) .......... 8

*United States v. Vizcarra-Martinez*, 66 F.3d 1006 (9th Cir. 1995) .......... 19

*United States v. Walker*, Criminal Case No. 18-00010, 2022 WL 225416 (D. Guam Jan. 26, 2022) .......... 18

**Statutes**

18 U.S.C. § 1343 .......... 2

18 U.S.C. § 1346 .......... 2

18 U.S.C. § 1349 .......... 2

**Rules**

Fed. R. Evid. 106 .......... 15

Fed. R. Evid. 401 .......... 2, 5, 6

Fed. R. Evid. 402 .......... 2, 5, 6

Fed. R. Evid. 403 .......... *passim*

Fed. R. Evid. 404(b) .......... 9

Fed. R. Evid. 602 .......... 7

Fed. R. Evid. 608 .......... 9, 11, 13

FED. R. EVID. 608(b) .......... 11, 12, 13

Fed. R. Evid. 611(a) .......... 15

Fed. R. Evid. 801 .......... 7

Fed. R. Evid. 802 .......... 2, 7

Fed. R. Evid. 803 .......... 7

Fed. R. Evid. 804 .......... 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fed. R. Evid. 804(b)(3)(B) ........ 7

Fed. R. Evid. 807(a)(1) ........ 7

Fed. R. Evid. 1972 ........ 11

Baker & Hostetler LLP
Attorneys at Law
San Francisco

## NOTICE OF MOTION AND MOTIONS

TO: DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys
Attorneys for the United States of America

**PLEASE TAKE NOTICE** that on April 25, 2023, at 2:00 p.m., or as soon thereafter as he may be heard, Defendant John Francis Porter, by and through his counsel, will and hereby does ask this Court for an *in limine* Order excluding argument or evidence: (1) regarding Recology's Deferred Prosecution Agreement; (2) related to an error in Recology's 2017 rate application, including San Francisco's civil suit against Recology for that error, Recology's settlement of that lawsuit, and Mr. Porter's termination from Recology for allegedly failing to follow Recology's internal escalation policy related to that error; (3) related to Mr. Porter's January 2020 email (proposed government Exhibit 95) to Recology staff regarding a scheduled Clean City Coalition payment; and (4) related to Recology's alleged funding of an internship program for Muhktar Nuru (Mohammed Nuru's son).

These motions are based on the Notice of Motion, the Memorandum that follows, the Declaration of Robb C. Adkins, the files and records of this case, the evidence presented, and the arguments made at the hearing on these motions, and such further argument and memoranda as may be later presented.

Dated: April 11, 2023

BAKER & HOSTETLER LLP

By: */s/ Robb C. Adkins*
Robb C. Adkins

*Counsel for Defendant John Francis Porter*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE*

John Porter respectfully requests that the Court preclude the government from introducing argument or evidence concerning: (1) the Deferred Prosecution Agreement ("DPA") that Recology San Francisco, Sunset Scavenger Company, and Golden Gate Disposal & Recycling Company (together, "Recology" or the "Company") executed with the U.S. Department of Justice and the U.S. Attorney's Office; (2) an error in Recology's 2017 rate application, including San Francisco's civil suit against Recology for that error, Recology's settlement of that lawsuit, and Mr. Porter's termination from Recology for allegedly failing to follow Recology's internal risk escalation policy regarding that error; (3) Mr. Porter's January 2020 email (proposed government Exhibit 95) to Recology staff regarding a scheduled Clean City Coalition payment; and (4) Recology's alleged funding of an internship program for Mohammed Nuru's son, Muhktar Nuru ("Nuru's son").

### I. Motion in Limine No. 1: The Court Should Exclude Any Argument Or Evidence Regarding Recology's DPA.

The parties have met and conferred regarding this issue. Prior to filing this motion, counsel for Mr. Porter inquired of the government as to whether they would agree that evidence of the DPA and the criminal penalty that Recology paid as part of that agreement would be inadmissible at trial. The government has indicated that it will seek to admit evidence of Recology's DPA and criminal penalty at trial. Accordingly, Mr. Porter moves in limine under Federal Rules of Evidence 401, 402, 403, and 802 for an order precluding the government from introducing such evidence.

#### A. Background

Recology entered the DPA on September 7, 2021. Exhibit A to the Declaration of Robb C. Adkins ("Adkins Decl."), Deferred Prosecution Agreement, *United States v. Recology San Francisco, et al.*, No. 21-cr-356 (WHO), ECF No. 2. In the agreement, filed with the Court on September 9, 2021, Recology acknowledged and agreed to the filing of an Information charging Recology with conspiracy to commit honest services wire fraud in violation of 18 U.S.C. §§ 1343, 1346, and 1349. Recology accepted responsibility, agreeing it was criminally liable, for the acts charged in the Information (attached to the DPA and also filed with the Court) and agreed to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

cooperate with the government's investigation. Recology also agreed to pay a criminal penalty of $36,000,000.

The agreement also contained an attached "Statement of Facts." Recology agreed that the information contained in the "Statement of Facts" was true and accurate. The Statement of Facts, spanning about ten pages, includes admissions on the part of Recology, as a corporate entity, to many of the events underlying the government's prosecution of Mr. Porter. The Statement of Facts provides that "[f]rom in or around 2014 until in or around January 2020, Giusti, Porter, and [unindicted] SF Recology Group Executive 2 agreed with Mohammed Nuru to commit bribery and defraud the public of its right to the honest services of a public official" and that Mr. Porter "agreed to pay bribes and kickbacks or rewards to Nuru with the intent to obtain favorable official action and influence from Nuru." Deferred Prosecution Agreement ("DPA"), Attachment A Statement of Facts, ¶ 8. The statement goes on to discuss alleged "things of value" provided to Nuru and the government's allegations as to Mr. Porter's involvement in providing the alleged bribes. The agreement was signed by the government and both Recology's counsel and the Executive Vice President, Chief Legal and Risk Officer of Recology.

**B. Argument**

**1. The DPA Violates Mr. Porter's Sixth Amendment Confrontation Rights.**

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. Admitting the DPA and, in particular, the admission of guilt by Recology, would violate Mr. Porter's Sixth Amendment Confrontation Clause rights. Under *Crawford v. Washington*, 541 U.S. 36 (2004), "absent unavailability and a prior chance for cross-examination, the Confrontation Clause forbids a statement of a nontestifying witness that is testimonial and offered for its truth." *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014). Accordingly, the Confrontation Clause bars the admission of testimonial evidence like the DPA, where, as here, Mr. Porter had no opportunity to cross-examine Recology, and there is no witness with personal knowledge of the alleged criminal conduct who signed the DPA and could testify on Recology's behalf.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The DPA is testimonial because it contains a statement of past facts and an admission of guilt, is signed by both Recology's counsel and the Executive Vice President, Chief Legal and Risk Officer of Recology, and was filed in the Northern District of California. *See Crawford*, 541 U.S. at 51–52 (alternatively defining "[t]estimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," and "extrajudicial statements . . . such as affidavits, depositions, prior testimony, or confessions"). Mr. Porter has not had the opportunity to cross-examine Recology with respect to the statements made in the DPA and will never have such an opportunity for cross-examination, as Recology is not a person who will be subject to cross examination at trial. Unlike an individual co-conspirator, a representative of a corporation who signs a deferred prosecution agreement did not personally participate in the alleged criminal conduct—the only conduct such a representative engaged in was to sign a corporate deferred prosecution agreement as part of his or her employment as counsel of a corporate entity. Accordingly, there is no representative of Recology who served as a signatory of the agreement with personal knowledge of the facts alleged in the DPA and as such, no way to cure the *Crawford* deficiencies discussed above.

**2. The DPA Is Irrelevant Under FRE 401 And 402, And Barred Under Policy Reasons Similarly Applicable To Plea Agreements.**

The DPA is a contract of adhesion, entered into between Recology, an alleged unindicted co-conspirator, and the government. In the DPA, Recology, as a corporate entity, was required to admit to engaging in much of the same conduct alleged against Mr. Porter in this case. The DPA has many characteristics of a plea agreement, and for purposes of evidentiary analysis, is treated as a plea agreement. *See United States v. Garcia*, 519 F.2d 1343, 1345 n.2 (9th Cir. 1975) ("deferred prosecution agreements [are] analogous to . . . plea agreement[s]"). Accordingly, the same policy concerns apply when considering the admission of plea agreements and deferred prosecution agreements as evidence at trial.

Here, the government alleges that Mr. Porter conspired with Recology and others to commit honest services wire fraud and seeks to admit the DPA as substantive evidence against Mr. Porter. D.E. 67, Superseding Indictment, ¶ 22. As the Third Circuit explained in *United States v. Gaev*, 24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

F.3d 473, 476 (3d Cir. 1994), "[i]t is well established that the plea agreements of co-conspirators cannot be used as evidence of a defendant's guilt." As the court explained:

> The "foundation of [this] policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. . . . The defendant ha[s] a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else."

*Id.* (quoting *Bisaccia v. Attorney Gen. of New Jersey*, 623 F.2d 307, 312 (3d Cir. 1980)); *see also Baker v. United States*, 393 F.2d 604, 614 (9th Cir. 1968) ("a defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a government witness or co-defendant has pleaded guilty to the same charge").

Accordingly, here, evidence of Recology's (an alleged co-conspirator's) acceptance of responsibility and acknowledgement of violations of the law as stipulated in the DPA would deprive Mr. Porter of the right to have his guilt or innocence determined by the evidence presented against him. Precluding the DPA is especially necessary here, given that a corporation, not an individual with specific knowledge, entered into the agreement. There are many, legitimate reasons why a company such as Recology might decide to enter into a DPA even where it believed it could contest any criminal wrongdoing. *See* Exhibit B to Adkins Decl., Edward Iwata, *Debate Heats Up Over Deferred-Prosecution Deals,* USA Today, May 31, 2006 ("Even if a company doesn't go under or face an indictment, the threat of prosecution can hobble a business . . . . A potential trial drains money and resources. Morale among employees suffers, and many look for new jobs. The business must deal with the stigma of criminal charges and face the full legal firepower of the government. That's why nearly all businesses facing potential charges yield to prosecutors."). These motivations and the decision to enter the DPA by the Company have no relevance to Mr. Porter's innocence or guilt in this case.[1]

The government alleges that Mr. Porter participated in a conspiracy to commit bribery and to defraud the public of the honest services of Mohammed Nuru by bribing him with a stream of benefits including payments for a Department of Public Works ("DPW") holiday party. None of

---

[1] Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." FED. R. EVID. 401.

the information in the DPA can determine the critical questions in this case of whether *Mr. Porter* had the requisite intent and state of mind to commit the bribery and honest services charges alleged. Recology's admission—negotiated and agreed to by people without knowledge of Mr. Porter's knowledge and intent—is irrelevant.

The Court should not allow an agreement reached by a company without personal knowledge to be presented to the jury that is to make the determination themselves as to the central issue in this trial: Mr. Porter's knowledge and intent. Accordingly, the Court should exclude the DPA. *See In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 425164, at *3 (E.D. La. Feb. 9, 2012) (excluding as irrelevant deferred prosecution agreement "not relevant to the primary issue in the upcoming trial"); *Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.,* No. 3:08-cv-01595 (S.D. Cal.), Hr'g Tr. 41:16-19 (Sept. 4, 2009), ECF No. 43 (excluding evidence or testimony related to the DPA evidence as irrelevant where court held the DPA "was an agreement that the company entered into with the United States Attorney's Office. So how they negotiated that, why they negotiated it, how they worked out that final detail, [is] irrelevant.").

In sum, the DPA lacks any valid probative value, and must be excluded under Federal Rules of Evidence 401 and 402.

**3. Any Probative Value Of The DPA Is Substantially Outweighed By The Danger Of Confusion, Unfair Prejudice, And Would Mislead The Jury.**

There is no valid probative purpose for which the DPA could be admitted. But even if the government could identify some minimally probative value to the DPA, its admission would result in unfair prejudice to Mr. Porter far outweighing any probative value. As noted in *United States v. Sullivan*, No. 20-cr-00337-WHO-1, 2022 WL 3716594, at *3 (N.D. Cal. Aug. 28, 2022), in cases that involve co-defendants or co-conspirators, "the risk of prejudice . . . is obvious: the concern is that if evidence of one co-defendant or co-conspirator's guilty plea is introduced, the jury will import that guilt on the other—in other words, 'that the defendant should be found guilty merely because of the witness's guilty plea.'" (quoting *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 669 (3d Cir. 2000)).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Introduction of the DPA would invite the jury to impermissibly conclude and base their verdict on Recology's decision to accept responsibility and resolve this matter as a corporation. The risk that this would result in Mr. Porter being found guilty "merely because of the witness's guilty plea" outweighs any probative value the government may identify. *See Universal Rehab. Servs.*, 205 F.3d at 668. Introduction of the DPA also would confuse the jury—they may conflate the Company's "admissions" as to Mr. Porter's intent as proof that Mr. Porter actually harbored the requisite intent in his own mind. Any probative value of the DPA is substantially outweighed by the confusion of the jury and unfair prejudice, and its admission would mislead the jury as to the issues in this case.

**4. The DPA Is Hearsay Not Subject To An Exception.**

Based on the parties' meet-and-confer, the government intends to offer the DPA for its truth, and so the document is hearsay inadmissible unless subject to an exception. FED. R. EVID. 801, 802.

No exception applies here because (a) the Recology employee who signed the DPA lacks personal knowledge of the facts the DPA describes and (b) the circumstances surrounding the DPA indicate a lack of trustworthiness. *See* FED. R. EVID. 602, 804(b)(3)(B), 807(a)(1).

Cary Chen, Recology's Chief Legal and Risk Officer, signed the DPA on behalf of Recology. It is unclear where the statements in the DPA came from or on what they are based—in particular, the statement in the DPA that Mr. Porter "acted knowingly and with the intent to deprive the pubic of honest services of a public official[.]" Exhibit A to Adkins Decl., DPA, Statement of Facts, ¶ 38. Mr. Chen is not Mr. Porter, was not personally involved in the events being described, and so lacks personal knowledge as to the information set forth in the DPA's statement of facts. And in "a hearsay situation, the declarant is, of course, a witness, and neither [Rule 803] nor Rule 804 dispenses with the requirement of firsthand knowledge." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) (quoting FED. R. EVID. 803 Advis. Comm. Note).

Nor do the circumstances surrounding the DPA indicate trustworthiness. *See United States v. Vera*, 893 F.3d 689, 694 (9th Cir. 2018) (holding that district court abused its discretion in relying on co-defendant plea agreement at sentencing). The Recology DPA is similar to the inadmissible

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

plea agreement in *Vera*. Like in *Vera*, Recology had every incentive when agreeing to the DPA "to implicate [Mr. Porter] and to exonerate [Recology]." *Vera*, 893 F.3d at 693 (quoting *Lee v. Illinois*, 476 U.S. 530, 541 (1986)). For this reason, the Ninth Circuit in *Vera* held that it was an abuse of discretion for the district court to rely on a plea agreement even at the sentencing stage because it was so unreliable.

The DPA here is even less reliable than the plea agreement in *Vera* because the signatory lacks personal knowledge of the facts being described. Were that not enough, Recology has taken, in writing, the *opposite* position from the position set forth in the DPA. In its presentation about the case to the government, after conducting a review of the circumstances and evidence, ████ ██████████ ████" Exhibit C to Adkins Decl., Recology March 19, 2021 Presentation to government, at 11. ██████████ ██████████ *Id.* at 18.

That Recology desired to put this matter behind it and ultimately entered into a DPA to resolve this matter is understandable. So is agreeing as a corporate entity to admissions for which Recology has no personal knowledge, such as statements about the individual knowledge and intent of Mr. Porter and others, in order to get out from under government scrutiny. *See Vera*, 893 F.3d at 692. This understandable tendency is what makes the DPA untrustworthy as evidence of Mr. Porter's alleged crimes, and why the Ninth Circuit has found it to be an abuse of discretion to allow such an agreement into evidence. *Id.*

**II. Motion in Limine No. 2: The Court Should Exclude Any Evidence Related To An Error In Recology's 2017 Rate Application, Including San Francisco's Civil Suit Against Recology For That Error, Recology's Settlement Of That Lawsuit, And Mr. Porter's Termination From Recology For Allegedly Failing To Follow Recology's Internal Risk Escalation Policy Related To The Error.**

The parties have met and conferred regarding this issue. The government does not intend to introduce this evidence, which it acknowledges would be subject to Rule 404(b), in its case in chief. Exhibit D to Adkins Decl., Email from David Ward. But the government has not taken this

evidence off the table if Mr. Porter testifies, in which case the government claims it may cross examine Mr. Porter regarding the rate error under Rule 608.

**A. Background**

Recology operates in the City and County of San Francisco under a 1932 Ordinance, effectively giving Recology a monopoly on refuse collection within San Francisco. During the relevant period, the rates Recology charged San Francisco residents were determined through a complex application and hearing process overseen by the San Francisco DPW, with the ultimate authority lying in the Refuse Collection and Disposal Rate Board. The rates were set based on a projected operating ratio that Recology should be permitted to achieve.

Between September 2016, when Recology notified the City of its intent to seek a rate increase, and July 2017, when the rate increase took effect, dozens of individuals—including outside consultants for the City, the City Attorney, and the Rate Payer Advocate—worked on Recology's rate application. Unbeknownst to anyone, including anyone at the City, Recology, or the third-party consultant, the City's "Rate Adjustment Standardized Format" (a standardized format that Recology was required to follow) included an error that resulted in Recology's existing revenue being understated, which in turn led to a higher rate increase being approved than was necessary for Recology to achieve its permitted operating ratio.

After a year of operating under the new rates, Mr. Porter and his counterpart at DPW Julia Dawson both realized that Recology's operating ratio was higher than expected. After a close review of all the materials, Mr. Porter identified the error and explained it to Ms. Dawson and others at DPW, including DPW's consultant R3 Consulting Group, Inc., during the winter of 2018/2019. Exhibit E to Adkins Decl., REC-DOJ-0257455. DPW and Recology continued to meet on this issue throughout 2019 and ultimately, on March 9, 2020, Ms. Dawson provided Mr. Porter a memo reflecting R3's analysis regarding the rate error's effect on the 2017 rate application. Exhibit F to Adkins Decl., CCSF (DPW)-0000163450. At this time, Recology and Public Works were focused on trying to "avoid such errors going forward" because "there's no retroactive rate-making." Exhibit G to Adkins Decl., US-FBI-RECGJ-00050266 at 00050267. That said, "Public Works [was] thinking of ways to have Recology apply the 'excess' to some needed investment." *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

With Mohammed Nuru's arrest and the unfolding scandal, everything changed. In March 2021, the City filed a complaint for injunctive relief, restitution, and civil penalties against Recology in connection with this rate error in California Superior Court. Exhibit H to Adkins Decl., *City and County of San Francisco v. Recology San Francisco,* Complaint, CGC-21-590091 (March 4, 2021). Without admitting liability—including specifically not agreeing that "the filed-rate doctrine and general prohibition on retroactive rate making are not lawful defenses to the City's alleged claims"—Recology quickly settled the lawsuit for $94.52 million in restitution payments to ratepayers and a $7 million settlement payment to the City. Exhibit I to Adkins Decl., *City and County of San Francisco v. Recology San Francisco,* Notice of Entry of Consent Judgment, CGC-21-590091 (July 7, 2021).

Recology terminated Mr. Porter on January 27, 2021. Mr. Porter's termination was not because of any conduct he is charged with in this case. Instead, Recology claimed that Mr. Porter had not sufficiently escalated the rate error within Recology. This is not factually correct—Mr. Porter told his then-supervisor at Recology, Mark Arsenault, the company's Chief Operating Officer, as well as other Recology employees, including San Francisco Group Controller Nick Roberts, San Francisco Finance Manager Robert Yu, and Senior Director of Government Affairs Eric Potashner, at the same time he disclosed the error to DPW and kept him apprised during the DPW/Recology discussions during 2019 and 2020 until Mr. Arsenault was fired. He also disclosed the error to others at Recology (including Recology's outside counsel when Nuru was first arrested).

**B. Argument**

The Court should bar the government from introducing or referring to the 2017 rate error and Mr. Porter's termination, including during cross examination under Rule 608.

Under Rule 608, "the Court may, on cross examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]" FED. R. EVID. 608(b). But "the possibilities of abuse are substantial" and "the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury[.]" FED. R.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EVID. 608, 1972 advisory committee's note. Moreover, "trial judges retain wide latitude to impose reasonable limits on cross-examination[.]" *Gibbs v. Covello*, 996 F.3d 596, 603 (9th Cir. 2021) (alterations, citations, and omissions removed).

The rate error is found nowhere in the allegations in the indictment and is irrelevant to the alleged conduct at issue in this case. There is no evidence that the error was anything but an inadvertent error that existed prior to Mr. Porter's tenure at Recology, and the government does not take any position to the contrary. Moreover, the government has not argued that the bribery alleged in the Superseding Indictment was in any way connected to the error. But the government nevertheless believes that it may cross examine Mr. Porter on these issues—and so inject them into the trial—because Recology later determined that Mr. Porter's raising of the rate error issue was insufficient.

On the one hand, the probative value of this evidence on Mr. Porter's truthfulness is questionable. Mr. Porter, after all, told *the City* about the error, and thus certainly was not attempting to hide anything. He also told his boss, Chief Operating Officer Mark Arsenault, as well as Eric Potashner, Vice President & Sr. Director of Strategic Affairs. And Mr. Porter shared it with Recology's outside counsel, although they have claimed to have no recollection of it. Who else Mr. Porter should have told is not entirely clear. The lack of probative value should on its own be sufficient to prohibit cross examination on this issue. *See United States v. Abair*, 746 F.3d 260, 264 (7th Cir. 2014) (finding district court abused discretion in permitting cross examination under Rule 608(b) on defendant's "financial filings because the government did not provide a sufficient basis to believe the filings were probative of [defendant's] character for truthfulness"); *United States v. Novaton*, 271 F.3d 968, 1007 (11th Cir. 2001) (affirming district court's exclusion under Rule 608(b) of "unproven allegations").

On the other hand, the danger of unfair prejudice, confusion of issues, and undue delay is high. Essentially, the government seeks to suggest to the jury that Recology fired Mr. Porter because he concealed a nearly $100 million overcharge to San Francisco residents (some of whom may be jurors). The magnitude of the error, and Recology's repayment of it to San Francisco, could lead jurors to the improper inference that *something* illegal must have been going on. And while

the government has conceded this overcharge was simply an error and not caused by Mr. Porter, it will be hard for the jury to separate the issues given that the government is arguing that Mr. Porter was bribing the director of DPW—the same entity that reviewed the rate application—even though Mr. Porter had no dealings with Mr. Nuru on this and in fact Mr. Porter is the one who explained this error to the City. Jurors who are residents of San Francisco may also feel that Mr. Porter was somehow responsible for overcharging them, unfairly prejudicing them against Mr. Porter for issues having nothing to do with the underlying alleged crimes.

Were this not enough, Mr. Porter will be forced to defend himself on the issue and to introduce additional witnesses and evidence to support his side of the story, resulting in a trial-within-a-trial over the rate error and what happened after Mr. Porter discovered it. *Tennison v. Circus Enters. Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion of testimony under Rule 403 that "might have resulted in a 'mini trial'"). To address the government's claim of concealment, Mr. Porter will need to call, among others, the DPW personnel to whom he disclosed the rate error. He will need to call Recology employees at the time, including Mark Arsenault, to confirm that Mr. Porter discussed the rate error issue with them. That will involve a complicated but necessary argument on whether the Fifth Amendment, a right that Mark Arsenault has asserted, excuses Mr. Arsenault's testimony on this limited issue. Mr. Porter may be required to subpoena and cross examine Recology's counsel—involving yet more complicated legal argument on attorney/client privilege.

Based on the minimal probative value, the high danger of unfair prejudice, and the resulting "mini trial" that would need to take place were the government permitted to cross examine Mr. Porter on the rate error and Mr. Porter's termination, the Court should order all evidence related to the rate error and Mr. Porter's termination excluded from trial for all purposes, including under Rule 608.

Even if the Court permits some cross examination on the issue, it should order that the cross examination be limited and not involve questions related to (a) the amount of the overcharge, (b) the City's lawsuit against Recology and the related settlement payment, and (c) Mr. Porter's termination from Recology.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The amount of the overcharge, lawsuit, and settlement payment are highly prejudicial facts of minimal probative value on the issue of character for truthfulness. And while Recology says it terminated Mr. Porter for failing to sufficiently escalate the rate error, the 2003 Advisory Committee notes explain that "the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness." FED. R. EVID. 608 advisory committee's note to 2003 amendment) (citing *United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999)).

So in *Davis*, while the government could question a witness on purported lies, it could not "make reference to [the witness's] forty-four day suspension or that Internal Affairs found that he lied about the subway-pass incident." *Davis*, 183 F.3d at 257 n.12. Instead, "[t]he government needs to limit its cross-examination to the *facts underlying* those events" and "cannot put before the jury evidence that he was suspended or deemed a liar by Internal Affairs." *Id.* Permitting questions on consequences "injects the views of a third person into the case" and also effectively uses extrinsic evidence, in violation of Rule 608(b). *Id.*; *see also United States v. Brooke*, 4 F.3d 1480, 1484 (9th Cir. 1993) (noting that "the government was stuck with whatever response [the witness] gave" because Rule 608(b) bars the use of extrinsic evidence).

## III. Motion in Limine No. 3: The Court Should Exclude Any Evidence Related To Mr. Porter's January 2020 Email (Proposed Government Exhibit 95) To Recology Staff Regarding A Scheduled Clean City Coalition Payment.

The parties have previously met and conferred on this issue. The government maintains that this email is admissible to show Mr. Porter's alleged corrupt intent.

### A. Background

The government's Criminal Complaint against Mr. Porter alleged that Recology made 35 payments to Clean City Coalition (referred to in the Company as Non-Profit Organization A) from 2013 to 2019 for a DPW anti-litter program called Giant Sweep. D.E. 1, Complaint ¶¶ 69, 73. Many of these payments were recurring payments of $30,000. The government also alleged that Mr. Giusti secured these payments at Mr. Nuru's direction. *Id.* ¶ 69.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

After Mr. Nuru was arrested on January 17, 2020, the news of his arrest was reported on January 28. *Id.* ¶ 94. The government's criminal complaint alleged that on January 28 Mr. Porter directed Recology staff to "hold off on approving this [next round of recurring $30,000 Giant Sweep payments] for now." Complaint ¶ 94. The government seeks to introduce this email as Exhibit 95. Exhibits 97 and 98 relate to the same instruction. The implication is that Mr. Porter's email, which is related to a payment for which he is not even charged, somehow shows that Mr. Porter knew that the payment was not appropriate after receiving news of Nuru's arrest.[2]

But the email from Mr. Porter that the government seeks to introduce omits the critical basis for that email, thus only telling a misleading half of the story. The rest of the story is contained in emails and witness testimony over which Recology has asserted claims of attorney-client privilege and/or work product privilege. The day of Nuru's arrest, Mr. Porter and others at Recology, including the CEO, met with Recology's general counsel to discuss potential issues in connection with Mr. Nuru's arrest. It was during this meeting—over which Recology has claimed privileged that the government has chosen not to contest—that Mr. Porter sent the email to Recology staff saying to "hold off" on the Clean City Coalition payment.

**B. Argument**

Under the Rule of Completeness, "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The common law Rule of Completeness also applies to oral statements. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988) (applying common law Rule of Completeness even after it was "partially codified" in Rule 106); *U.S. v. Collicott*, 92 F.3d 973, 983 n.12 (9th Cir. 1996) (recognizing that Rule 611(a) "grants district courts the same authority regarding oral statements which [Rule] 106 grants regarding written and recorded statements") (quoting *United States v. Li*, 55 F.3d 325, 329 (7th Cir. 1995)).

[2] As explained in Section IV, below, in response to Mr. Porter's Motion to Dismiss, the government filed a superseding indictment that dropped allegations against Mr. Porter regarding Clean City Coalition/Non-Profit "A"/Giant Sweep payments, describing those allegations as now "moot."

The Rule of Completeness is in place to "correct a misleading impression in [an] edited statement' introduced by an opposing party." *United States v. Lopez*, 4 F.4th 706, 715 (9th Cir. 2021) (quoting *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014)). Thus, Rule 106 "is designed to avoid the partial introduction of a written or recorded statement that results in 'misunderstanding or distortion.'" *United States v. Bounds*, No. 21-30114, 2022 WL 1284302, at *2 (9th Cir. Apr. 29, 2022) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)). The Ninth Circuit has held that evidence that is otherwise inadmissible is not admissible under Rule 106. *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). Thus, where evidence that creates a distortion can be corrected only by inadmissible evidence, courts exclude such evidence under Rule 106. *See U.S. v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986) ("Rule 106 was not intended to override every privilege and other exclusionary rule of evidence in the legal armamentarium, so there must be cases where if an excerpt is misleading the only cure is to exclude rather than to put in other excerpts.").

The Court should not allow the government to introduce Mr. Porter's email without the context of the privileged discussion that would tell the whole story and reveal that the government's suggested inference is, in fact, false. When he sent the email, Mr. Porter was not acting on any secret knowledge about Clean City Coalition. Instead, Mr. Porter was taking action based on new information he was learning in real time from others in a meeting with Recology's general counsel. But, if the government introduces only Mr. Porter's email, it will clearly lead to the inference that Mr. Porter was acting with some sort of guilty conscience when this simply is not true. Thus, given that the other emails are privileged, the "only cure" is to exclude Mr. Porter's email.

Additionally, the government's introduction of Mr. Porter's email, by itself, is highly prejudicial and will mislead the jury. Mr. Porter was not involved in the usage of Clean City Coalition as a slush fund for Mr. Nuru, and there is no evidence that he had any knowledge of this illegal aspect of Clean City Coalition. But if the jury saw only Mr. Porter's "hold off for now" email, they would draw the opposite—and incorrect—conclusion. The Court should not allow the government to use the attorney-client privilege as a sword to introduce Mr. Porter's email by itself in violation of the Rule of Completeness, and a shield to exclude other documents and statements

that would put Mr. Porter's email in context and avoid misleading the jury. *See, e.g.*, *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (a litigant may not use privilege as both a shield and a sword "by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield."); *In re Shearman & Sterling*, Nos. 2–124, M8–85, C84–3894 and C84–743, 1986 WL 6157 (S.D.N.Y. May 30, 1986) (holding that "a party may not use the attorney-client privilege as both a sword and a shield" and analogizing the Rule of Completeness). Thus, Mr. Porter's email should be excluded.

## IV. Motion in Limine No. 4: The Court Should Exclude Any Evidence Related To Recology's Alleged Funding Of An Internship Program At A Nonprofit For Mohammed Nuru's Son, Muhktar Nuru.

### A. Background

On July 21, 2022, the government filed a vague and wide-ranging indictment against Mr. Porter including numerous allegations about matters unrelated to Mr. Porter. D.E. 40. This indictment appeared largely based on charges filed against another Recology employee, Paul Giusti. Mr. Porter moved to dismiss this indictment on November 8, 2022. D.E. 60. In response, on November 29, 2022, the government filed a much narrower superseding indictment that identified only two alleged bribes: (1) $55,000 in sponsorship payments for a holiday party, and (2) "meals and drinks for Nuru and other high-ranking DPW employees." D.E. 67 ¶¶ 11-19.

In opposing Mr. Porter's motion to dismiss the following week, the government explained that to "the extent that defendant's motion to dismiss refers to payments made to Non-Profit A [one of the unrelated items in the original indictment], those arguments are moot, as the Superseding Indictment does not charge that any payments to Non-Profit A were part of the honest services scheme to defraud or the bribery conspiracy." D.E. 69 at 6; *see also id.* at 13 (payments related to Non-Profit A "are moot"). And in response to the Mr. Porter's request for a bill of particulars identifying the specific bribes at issue, the government responded with the information in the superseding indictment—that is, the meals and sponsorship of the holiday party. *Id.* at 15.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

But on February 13, 2023, the government emailed counsel for Mr. Porter to "let you know that we do see [ ] payments [for an internship for Mookie Nuru at Recology and a Recology-funded internship for Mookie Nuru at APACC] as part of the charged honest services fraud scheme and conspiracy." Exhibit J to Adkins Decl., Email from David Ward. These payments, according to the government, are "part of the stream of benefits directed at Mohammed Nuru as referenced in paragraph 7 of the Superseding Indictment." *Id.* The government noted that "[i]t was also referenced specifically in paragraph 8 of the original indictment," *id.*—a document that contained allegations that the government had previously described as "moot."

The government previously abandoned this charge for good reason—there is no evidence that Mr. Porter had any involvement in approving a payment for Nuru's son, much less hiring him at Recology when he was an intern there, nor is there any evidence that Mr. Porter was aware that the payment approved for the APPACC internship would be used to compensate Nuru's son. To the contrary, the email communication in which Paul Giusti asked for Mr. Porter's approval of the payment to the nonprofit, that allegedly was for the APACC internship, said the payment was for something else. Mr. Giusti emailed Mr. Porter's assistant, copying Mr. Porter, and said: [REDACTED] Exhibit K to Adkins Decl., REC-DOJ-1130957. And there is no evidence that Mr. Giusti told Mr. Porter the payment would in fact fund an internship for Nuru's son.

More to the point, based on the government's statements in briefing, the superseding indictment is the indictment on which Mr. Porter is being tried, and it does not include charges related to the internship. Thus, the Court should exclude argument and evidence related to the internship as irrelevant and substantially more unfairly prejudicial than probative.

**B. Argument**

Based on the government's briefing, and the fact that it opposed Mr. Porter's motion to dismiss based on its superseding indictment, the government has elected to proceed to trial on the superseding indictment—not the original indictment. *See United States v. Hickey*, 580 F.3d 922, 930 (9th Cir. 2009) ("the government may elect to proceed on any pending indictment, whether it is the most recently returned superseding indictment or a prior indictment"); *see also United States*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*v. Drasen*, 845 F.2d 731, 732 n.2 (7th Cir. 1988) ("The government may then select the indictment under which to proceed at trial.").

But "the Government cannot cherry-pick across . . . indictments the counts on which it will proceed to trial." *United States v. Walker*, Criminal Case No. 18-00010, 2022 WL 225416, at *2 (D. Guam Jan. 26, 2022) (holding that "Government is prohibited from including the counts related to honest services fraud [which were included in prior indictments] if it chooses to proceed on the Second Superseding Indictment"); *see also United States v. Flores-Perez*, 646 F.3d 667, 671 (9th Cir. 2011) ("there are two pending indictments against the defendants, and the government may select *one* of them with which to proceed to trial") (emphasis added); *Thompson v. United States*, 202 F. 401, 404 (9th Cir. 1913) ("Two indictments for the same offense are often pending at the same time. *The state can only proceed upon one of them*, but may elect upon which it will proceed.") (emphasis added).

The government argues that the alleged conduct related to Nuru's son is within the alleged "stream of benefits" referred to in the superseding indictment in paragraph 7. Paragraph 7, however, is an introductory paragraph to paragraphs 8 through 20 that describe the alleged benefits that Mr. Porter is supposed to have provided to Mr. Nuru. Nowhere in those paragraphs is there a mention of an internship, and there is no evidence that the grand jury that indicted the superseding indictment was presented with evidence related to Mr. Porter's alleged involvement in the internship for Nuru's son.

Thus, at best, the internship is 404(b) evidence or the government must show that it is "inextricably intertwined" with the charged conduct. *See generally United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995). The government has stated that it does not intend to introduce any 404(b) evidence, so it would need to proceed on an "inextricably intertwined" theory.

Other act evidence is inextricably intertwined where it "constitutes a part of the transaction that serves as the basis for the criminal charge" or is necessary "to permit the prosecutor to offer a coherent and comprehensible story." *Id.* Paying for an internship for Nuru's son is neither part of the transactions on which the superseding indictment is based nor necessary for the government to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

describe those transactions. The superseding indictment is based on two things—meals and the sponsorship of a holiday party. An internship for Nuru's son is not another meal or party that Mr. Porter is alleged to have approved for Recology to pay for. It is an entirely different transaction from those that serve as the basis for the superseding indictment.

The government's argument that it may come in merely because it is a benefit to Nuru proves too much. That is not the rule. Rather, the evidence must be part of the same "overall scheme" described in the indictment. *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016) (permitting investor victims not specifically named in the indictment that were victimized in the same manner as the victims named in the indictment). The overall scheme described in the superseding indictment relates to meals and holiday parties.

Even if the internships for Nuru's son could be considered part of the overall scheme, the Court should nevertheless exclude them under Rule 403. *See Loftis*, 843 F.3d at 1178 (Rule 403 is a separate basis on which to exclude other act evidence). This trial is about John Porter. Not Paul Giusti. And not Mark Arsenault. There is no evidence that *John Porter* had anything to do with the internships for Nuru's son at APACC or Recology. Mr. Giusti's unsealed plea agreement specifically states that he arranged the internship with Mark Arsenault's approval in 2017. Exhibit L to Adkins Decl., Plea Agreement of Paul Giusti, ¶ 11. Mr. Porter's approval was necessary for the second payment to APACC. But as described above, the evidence shows that Mr. Giusti told Mr. Porter that this sponsorship was for something else. *See* Exhibit K to Adkins Decl., REC-DOJ-1130957. The government has produced no evidence showing Mr. Porter had any idea that Recology paid APACC so that Nuru's son could be employed there.

The alleged crimes of others have no probative value on Mr. Porter's guilt or innocence in this matter. Instead, the introduction of argument and evidence related to these alleged other crimes would confuse the jury and unfairly prejudice them against Mr. Porter. The government should not be permitted in this trial to try Recology and others who may or may not have done bad things through Mr. Porter. The Court should thus exclude argument and evidence related to the internships for Nuru's son under Rule 403.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated: April 11, 2023

BAKER & HOSTETLER LLP

By: */s/ Robb C. Adkins*
      Robb C. Adkins

*Counsel for Defendant John Francis Porter*