# **EXHIBIT A**

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SCOTT D. JOINER (CABN 223313)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Scott.Joiner@usdoj.gov

Attorneys for United States of America

**FILED**

Sep 09 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO.   CR21-356 WHO |
| Plaintiff, | **DEFERRED PROSECUTION AGREEMENT** |
| v. | |
| RECOLOGY SAN FRANCISCO; SUNSET SCAVENGER COMPANY; GOLDEN GATE DISPOSAL & RECYCLING COMPANY, | |
| Defendants. | |

**DEFERRED PROSECUTION AGREEMENT**

This Deferred Prosecution Agreement between the United States Attorney's Office for the Northern District of California (the "government" or "USAO"), and defendants Recology San Francisco; Sunset Scavenger Company; Golden Gate Disposal & Recycling Company (such defendants, collectively, the "SF Recology Group"), all privately-held subsidiaries of Recology Inc., by their undersigned representative and attorneys, pursuant to authority granted by the Board of Directors of Recology Inc., is made pursuant to the terms and conditions set forth below. Recology Inc., which is not a defendant in this matter, also agrees, pursuant to the authority granted by Recology Inc.'s Board of Directors, to certain terms and obligations of the Agreement as described below.

**Criminal Information and Acceptance of Responsibility**

1.      The SF Recology Group acknowledges and agrees that the government will file the accompanying Information in the United States District Court for the Northern District of California charging the SF Recology Group with conspiracy to commit honest services wire fraud in violation of Title 18, United States Code, Sections 1343, 1346, and 1349. The SF Recology Group knowingly waives any right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b).

2.      The SF Recology Group admits, accepts, and acknowledges that it is responsible under United States law for the acts of its current and former officers, employees, and agents as charged in the Information and as set forth in the Statement of Facts, attached as Attachment A and incorporated by reference into this Agreement, and that the facts alleged in the Information and described in the Statement of Facts are true and accurate. Should the government pursue the prosecution that is deferred by this Agreement, the SF Recology Group and Recology Inc. agree that they will neither contest the admissibility of nor contradict the Statement of Facts in any such proceeding, including any trial, guilty plea, or sentencing proceeding. Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in said documents.

3.      It is further understood that the government shall file this Agreement in a public Court file and may disclose this Agreement to the public.

**Term of the Agreement**

4.     This Agreement shall have a term of three (3) years from the date on which the fully-executed Agreement is filed with the Court (the "Term"), except for specific provisions below that specify a longer period. The SF Recology Group and Recology Inc. agree, however, that in the event the government determines, in its sole discretion, that the SF Recology Group or Recology Inc. has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of their obligations under this Agreement during the Term, an extension or extensions of the Term may be imposed by the government, in its sole discretion, for up to a total additional time period of one year, without prejudice to the government's right to proceed as provided in the breach provisions of this Agreement below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment C, for an equivalent period. Conversely, in the event the government finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment C, the Agreement may be terminated early. In such event, the cooperation obligations described in Section 7 below shall survive until the date upon which all investigations and prosecutions referenced in such Section 7 are concluded.

**Relevant Considerations**

5.     The government enters into this Agreement based on the individual facts and circumstances presented by this case and by Recology Inc. and the SF Recology Group, including (a) the nature and seriousness of the offense conduct; (b) Recology Inc.'s timely notification to the government of an internal investigation, and offer of cooperation, before receiving a subpoena and being notified by the government of the nature of the government's investigation; (c) the SF Recology Group's ongoing cooperation described more fully below; (d) the remedial measures and operational improvements made by Recology Inc., described more fully below; (e) the payment of a monetary penalty; and (f) the collateral consequences of prosecution.

**Cooperation**

6.     To date, the SF Recology Group and Recology Inc. (collectively, "RECOLOGY") represent that RECOLOGY has provided cooperation, which includes: conducting a thorough internal investigation; proactively identifying certain issues and facts that would likely be of interest to the

DEFERRED PROSECUTION AGREEMENT        3

government; making factual representations to the government; sharing information that would not have been otherwise available to the government; and offering to make available witnesses for interviews by the government.

7.     RECOLOGY shall cooperate fully with the government in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts, as well as other conduct under investigation by the USAO at any time during the Term, until the later of the date the Term ends or the date upon which all investigations and prosecutions arising out of such conduct are concluded. At the request of the government, RECOLOGY shall also cooperate fully with other law enforcement and regulatory authorities and agencies in any investigation of Recology Inc., its subsidiaries or affiliates, or any of its present or former officers, directors, employees, agents, lobbyists and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the USAO at any time during the Term. RECOLOGY's cooperation pursuant to this paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, RECOLOGY must provide to the government a log of any information or cooperation that is not provided based on an assertion of law, regulation, privilege, or attorney work product, and RECOLOGY bears the burden of establishing the validity of any such assertion. Additionally, RECOLOGY agrees to provide the factual substance of all relevant events which can be disclosed without violating legitimate assertions of privilege. RECOLOGY agrees that its cooperation shall include, but not be limited to, the following:

a.     RECOLOGY shall fully and truthfully cooperate in any matter in which it is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of California.

b.     RECOLOGY shall truthfully and in a timely manner disclose all factual information with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, lobbyists and consultants, including any evidence or allegations and internal or external investigations, about which the government may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of RECOLOGY to promptly provide to the government, upon request, any non-privileged document, record, or other tangible evidence about which the government may inquire.

c.     Upon request of the government, RECOLOGY shall designate knowledgeable employees, agents, or attorneys to provide to the government the information and

DEFERRED PROSECUTION AGREEMENT     4

materials described above on behalf of RECOLOGY. It is further understood that RECOLOGY must at all times provide complete, truthful, and accurate information.

d. RECOLOGY shall use its reasonable best efforts to make available for interviews or testimony, as requested by the government, present or former officers, directors, employees, agents, lobbyists, and consultants of RECOLOGY. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with law enforcement and regulatory authorities. Cooperation shall include identification of witnesses who, to RECOLOGY's knowledge, may have material information regarding the matters under investigation.

e. With respect to any information, testimony, documents, records, or other tangible evidence provided to the government pursuant to this Agreement, RECOLOGY consents to any and all disclosures to other governmental authorities of such materials as the government, in its sole discretion, shall deem appropriate.

f. Should RECOLOGY learn of any evidence or allegation of a violation of U.S. criminal law by RECOLOGY, RECOLOGY shall promptly report such evidence or allegation to the government. On the date that the Term expires, Recology Inc., by its Chief Executive Officer and Chief Financial Officer, will certify to the government that the Recology San Francisco Group and Recology Inc. have met their disclosure obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation by Recology to the executive branch of the United States for purposes of 18 U.S.C. § 1001.

8. With respect to any investigation, criminal prosecution, or civil proceeding brought by the USAO related to the conduct set forth in the Information or the Statement of Facts, RECOLOGY agrees that its obligations to cooperate under the terms set forth in this Agreement will continue after the three-year term of this Agreement and the dismissal of the Information, and RECOLOGY will continue to fulfill the cooperation obligations set forth in this Agreement.

**Payment of Monetary Penalty**

9. The government and the SF Recology Group agree that the application of the 2018 U.S. Sentencing Guidelines ("Guidelines") to determine the applicable fine range yields the following:

a. <u>Offense level</u>. Based upon U.S.S.G. § 2C1.1, the total offense level is 32, calculated as follows:

| | |
|---|---|
| (a)(2) Base Offense Level | 12 |
| (b)(1 ) More than one bribe | +2 |
| (b)(2) Value of the payment more than $550,000 and less than $1.5 million | +14 |
| (b)(3) Involvement of a public official in a high-level decision-making position | +4 |
| TOTAL | 32 |

DEFERRED PROSECUTION AGREEMENT     5

b. <u>Base fine</u>. Based upon U.S.S.G. § 8C2.4(d), the base fine is $30,000,000.

c. <u>Culpability score</u>. Based upon U.S.S.G. § 8C2.5, the Culpability Score is 6 calculated as follows:

| | |
|---|---|
| (a) Base Culpability Score | 5 |
| (b) the SF Recology Group had between 200 and 999 employees, and high-level personnel participated in, condoned, and/or were willfully ignorant of the offense | +3 |
| (g)(2) the SF Recology Group fully cooperated and clearly demonstrated recognition and acceptance of responsibility | -2 |
| TOTAL | 6 |

d. Calculation of Fine Range. Based upon U.S.S.G. § 8C2.6, the fine range is calculated as follows:

| | |
|---|---|
| Base fine | $30,000,000 |
| Minimum multiplier | 1.2 |
| Maximum multiplier | 2.4 |
| Fine range | $36,000,000 - $72,000,000 |

10. The government and the SF Recology Group agree, based on the application of the Guidelines, that the appropriate total criminal penalty is $36,000,000. The SF Recology Group shall be responsible for paying: (1) $9,000,000 to the United States Treasury within 60 days of the filing of this Agreement; (2) an additional $9,000,000 to the United States Treasury within 14 months of the filing of this Agreement; (3) an additional $ 11,000,000 to the United States Treasury within 26 months of the filing of this Agreement; and (4) $7,000,000 to the City and County of San Francisco by no later than September 28, 2021, in connection with the SF Recology Group's settlement of a civil complaint, based in part on the same conduct as set forth in the Statement of Facts, filed by City Attorney for the City and County of San Francisco. *See People of the State of California et al. v. Recology San Francisco et al.,* San Francisco Superior Court Case No. CGC-21-590091, filed March 4, 2021. Nothing in the Agreement shall be deemed an agreement regarding a maximum penalty that may be imposed in any future prosecution, and the government is not precluded from arguing in any future prosecution that the Court should impose a higher fine, disgorgement or civil or criminal forfeiture, although the government agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine imposed as part of a future judgment. The SF Recology

1  Group agrees that no tax deduction may be sought in connection with the payment of any part of the

2  fine, and the SF Recology Group may not seek to recover any portion of the fine through additional

3  surcharges, fees, or any other charges to customers.

4     11.  The government agrees, except as provided in this Agreement, that it will not bring any

5  criminal or civil case (except for criminal tax violations, as to which the government does not make any

6  agreement) against the SF Recology Group or any of its present or former parents, subsidiaries or

7  affiliates relating to any of the conduct described in the attached Statement of Facts, or to conduct

8  otherwise disclosed to the government by RECOLOGY during the investigation.[1] The government,

9  however, may use any information related to the conduct described in the attached Statement of Facts

10  against the SF Recology Group: (a) in a prosecution for perjury or obstruction of justice; (b) in a

11  prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a

12  violation of any provision of Title 26 of the United States Code. This Agreement does not provide any

13  protection against prosecution for any future conduct by the SF Recology Group or any of its present or

14  former parents or subsidiaries. In addition, this Agreement does not provide any protection against

15  prosecution of any individuals, regardless of their affiliation with the SF Recology Group or with any of

16  the SF Recology Group's present or former parents or subsidiaries.

17          **Remediation, Corporate Compliance Program, and Reporting**

18     12.  Recology Inc. affirms that it has engaged in remedial measures to enhance its compliance

19  program, which applies to the SF Recology Group.  Remedial measures include (a) taking steps to

20  ensure that employees identified as responsible for the conduct at issue are no longer employed by or

21  have a relationship with the SF Recology Group or Recology Inc.; and (b) revamping the companywide

22  compliance program, including developing new travel and expense policies, guidance, and reporting

23  mechanisms; new charitable contribution policies and procedures; adoption of a no-gift policy for public

24  officials; training for all employees that might interact with public officials; and the hiring of a Head of

25

26      [1] This exclusion does not apply to conduct relating to the 2013 and 2017 San Francisco rate

27  increases obtained by RECOLOGY, the latter of which (the 2017 rate increase) was subject, in part, to a settlement negotiated with the San Francisco City Attorney's Office.  *See People of the State of*

28  *California et al. v. Recology San Francisco et al.,* San Francisco Superior Court Case No. CGC-21-590091, filed March 4, 2021.

DEFERRED PROSECUTION AGREEMENT  7

Internal Audit reporting to the Audit Committee of the Board of Directors of Recology Inc., and an Associate General Counsel, Director of Compliance reporting to the Chief Legal & Risk Officer.

13. Recology Inc. represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of honest services fraud, bribery, and other similar U.S. anti-corruption laws throughout its operations, including those of the SF Recology Group, as well as Recology Inc.'s other subsidiaries, agents, and joint ventures, and those of its contractors and subcontractors (to the extent subcontractors are permitted) whose responsibilities include accounting, financial reporting, lobbying, government relations, consulting, and interactions with the SF Recology Group's auditors.

14. Recology Inc. agrees that it will report to the government annually during the Term regarding remediation and implementation of the compliance measures described in Attachment B. These reports will be prepared in accordance with Attachment C (Corporate Compliance Reporting).

15. To address any compliance deficiencies, RECOLOGY represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal controls, policies, and procedures relating to honest services fraud and other similar applicable U.S. laws. Where necessary and appropriate, RECOLOGY agrees to modify its existing compliance program, including internal controls, compliance policies, and procedures to ensure that it maintains a rigorous compliance program that incorporates relevant internal controls, as well as policies and procedures designed to effectively deter and detect violations of honest services fraud and other similar applicable U.S. laws. The compliance program will include, but not be limited to, the minimum elements set forth in Attachment B.

**Deferred Prosecution**

16. In consideration of: (a) RECOLOGY's past and future cooperation as described above; (b) the SF Recology Group's payment of a monetary penalty of $36,000,000; (c) RECOLOGY's adoption and maintenance of remedial measures, and review and audit of such measures, including the compliance undertakings described in Attachment B, the government agrees to request that the United States District Court for the Northern District of California defer proceedings on the charge in the Information pursuant to Title 18, United States Code, Section 3161(h)(2), for the Term of this

Agreement.

17. The government further agrees that if RECOLOGY fully complies with all of its obligations under this Agreement, the government will not continue the criminal prosecution against the SF Recology Group described in Paragraph 1. Within thirty (30) days of the successful completion of the Term, the government shall seek dismissal of the Information filed against the SF Recology Group.

**Breach of the Agreement**

18. If, during the Term, (a) RECOLOGY commits any felony under U.S. law; (b) RECOLOGY provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with a disclosure of information about individual culpability; (c) RECOLOGY fails to implement a compliance program as set forth in this Agreement and Attachment B; (d) RECOLOGY otherwise fails to completely perform or fulfill each of its obligations under the Agreement; or (e) if at any time RECOLOGY fails to cooperate as set forth in this Agreement regardless of whether the government becomes aware of such a breach after the Term is complete, RECOLOGY shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including, but not limited to, the conduct described in the attached Statement of Facts, which may be pursued by the government in the U.S. District Court for the Northern District of California or any other appropriate venue.

19. Determination of whether RECOLOGY has breached the Agreement and whether to pursue prosecution shall be in the government's sole discretion. Any such prosecution may be premised on information provided by RECOLOGY or its employees, officers, or directors. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against RECOLOGY, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, RECOLOGY agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, RECOLOGY agrees that the statute of limitations as to any felony violation of U.S. law that occurs

1  during the Term will be tolled from the date upon which the violation occurs until the earlier of the date

2  upon which the government is made aware of the violation or the duration of the Term plus five years,

3  and that this period shall be excluded from any calculation of time for purposes of the application of the

4  statute of limitations.

5       20.    In the event the government determines that RECOLOGY has breached this Agreement,

6  the government agrees to provide RECOLOGY with written notice of such breach prior to instituting

7  any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice,

8  RECOLOGY shall have the opportunity to respond to the government in writing to explain the nature

9  and circumstances of such breach, as well as the actions RECOLOGY has taken to address and

10  remediate the situation, which explanation the government shall consider in determining whether to

11  pursue prosecution.

12       21.    In the event that the government determines that RECOLOGY has breached this

13  Agreement: (a) all statements made by or on behalf of RECOLOGY to the government or to the Court,

14  including the attached Statement of Facts, and any testimony given by RECOLOGY or its present or

15  former parents or subsidiaries before a grand jury, a court, or any tribunal, or at any legislative hearings,

16  whether prior or subsequent to this Agreement, and any leads or evidence derived from such statements

17  or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the

18  government against RECOLOGY; (b) RECOLOGY shall not assert any claim under the United States

19  Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of

20  Evidence, or any other federal rule that any such statements or testimony made by or on behalf of

21  RECOLOGY prior or subsequent to this Agreement, or any leads or evidence derived therefrom, should

22  be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current

23  director, officer or employee, or any person acting on behalf of, or at the direction of RECOLOGY or its

24  present or former parents or subsidiaries, will be imputed to RECOLOGY for the purpose of

25  determining whether it has violated any provision of this Agreement, shall be within the sole discretion

26  of the government.

27  **Statements by Recology**

28       22.    RECOLOGY expressly agrees that it shall not, through present or future attorneys,

DEFERRED PROSECUTION AGREEMENT    10

officers, directors, employees, agents or any other person authorized to speak for RECOLOGY, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the SF Recology Group set forth above or the facts described in the attached Statement of Facts. RECOLOGY agrees that if it or any of its present or former parents or subsidiaries issues a press release or holds any press conference in connection with this Agreement, RECOLOGY shall first consult the government to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters relating to this Agreement; and (b) whether the government has any objection to the release. RECOLOGY shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. The parties to this Agreement intend that the Agreement does not confer or provide any benefits, privileges, immunities, or rights to any other individual or entity other than the parties hereto.

### Limitations on Binding Effect of Agreement

23.     This Agreement is binding on RECOLOGY and the government but specifically does not bind (i) any component of the Department of Justice other than the United States Attorney's Office for the Northern District of California, (ii) other federal agencies, (iii) any state, local or foreign law enforcement or regulatory agencies, or (iv) any other authorities, although the government will bring the cooperation of RECOLOGY and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by RECOLOGY.

### Changes in Corporate Form

24.     Except as may otherwise be agreed by the government and RECOLOGY in connection with a particular transaction, RECOLOGY agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to RECOLOGY's consolidated operations, as they exist as of the date of this Agreement, whether such change is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the government's

DEFERRED PROSECUTION AGREEMENT     11

ability to determine there has been a breach under this Agreement is applicable in full force to that
entity. RECOLOGY agrees that the failure to include this Agreement's breach provisions in the
transaction will make any such transaction null and void. RECOLOGY shall provide notice to the
government at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change
in corporate form. The government shall notify RECOLOGY prior to such transaction (or series of
transactions) if it determines that the transaction(s) will have the effect of circumventing or frustrating
the enforcement purposes of this Agreement. If at any time during the Term RECOLOGY engages in a
transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this
Agreement, the government may deem it a breach of this Agreement pursuant to the breach provisions
of this Agreement. Nothing herein shall restrict RECOLOGY from indemnifying (or otherwise holding
harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that
may have occurred prior to the date of the transaction, so long as such indemnification does not have the
effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the
government.

**Notice**

25.     Any notice to the government under this Agreement shall be given by personal delivery,
overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the
United States Attorney for the Northern District of California, 450 Golden Gate Avenue, 11th Floor, San
Francisco, California 94102. Any notice to RECOLOGY shall be given by personal delivery, overnight
delivery by a recognized delivery service, or registered or certified mail, addressed to Recology Inc., 50
California Street, 24th Floor, San Francisco, California 94111, Attention: Chief Legal & Risk Officer;
Christine Y. Wong, Morrison & Foerster, 425 Market St., San Francisco, California 94105; and Joshua
Hill, Jr., Paul, Weiss, Rifkind, Wharton & Garrison LLP, 535 Mission St., San Francisco, CA 94105, or
by electronic mail to those individuals or to other counsel or individuals identified to the government by
RECOLOGY.

**Complete Agreement**

26.     This Agreement sets forth all the terms of the agreement between RECOLOGY and the
government. No amendments, modifications or additions to this Agreement shall be valid unless they are

1  in writing and signed by the government, the attorneys for RECOLOGY, and a duly authorized

2  representative of RECOLOGY.

3

4  DATED:   September 9, 2021                    STEPHANIE M. HINDS
                                                  Acting United States Attorney
5

6                                                SCOTT D. JOINER
7                                                Assistant United States Attorney

8

9  **AGREED AND CONSENTED TO:**

10

11  DATED:   September 7, 2021                   CARY CHEN
                                                  Executive Vice President,
12                                               Chief Legal and Risk Officer
                                                 Recology Inc.
13

14  DATED:   September 7, 2021

15                                               CHRISTINE Y. WONG
                                                 MORRISON & FOERSTER LLP
16

17  DATED:   September 7, 2021                   JOSHUA HILL, JR.
18                                               PAUL, WEISS, RIFKIND, WHARTON &
                                                 GARRISON LLP
19                                               Counsel for Recology Inc., Recology San
                                                 Francisco; Sunset Scavenger Company; Golden
20                                               Gate Disposal & Recycling Company

21

22              **CORPORATE OFFICER'S CERTIFICATE**

23        I have read this Agreement and carefully reviewed every part of it with outside counsel for

24  Recology San Francisco; Sunset Scavenger Company; and Golden Gate Disposal & Recycling Company

25  (collectively, the "SF Recology Group") and Recology Inc. I understand the terms of this Agreement

26  and voluntarily agree, on behalf of the SF Recology Group and Recology Inc., to each of its terms.

27  Before signing this Agreement, I consulted outside counsel for the SF Recology Group and Recology

28  Inc. Counsel fully advised me of the rights of the SF Recology Group and Recology Inc., of possible

DEFERRED PROSECUTION AGREEMENT       13

1  defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this

2  Agreement.

3       I have carefully reviewed the terms of this Agreement with the Recology Inc. Board of Directors.

4  I have advised and caused outside counsel to advise the Recology Inc. Board of Directors fully of the

5  rights of the SF Recology Group and Recology Inc., of possible defenses, of the Sentencing Guidelines'

6  provisions, and of the consequences of entering into the Agreement. No promises or inducements have

7  been made other than those contained in this Agreement. Furthermore, no one has threatened or forced

8  me, or to my knowledge any person authorizing this Agreement on behalf of the SF Recology Group or

9  Recology Inc., in any way to enter into this Agreement. I am also satisfied with outside counsel's

10 representation in this matter. I certify that I am an officer of Recology Inc. and that I have been duly

11 authorized to execute this Agreement on behalf of the SF Recology Group and Recology Inc.

12 DATED: September 7, 2021

13

14                                     *Cary Chen*

                                CARY CHEN

15                                 Executive Vice President,

                                Chief Legal and Risk Officer

16                                 Recology Inc.

17                     **CERTIFICATE OF COUNSEL**

18      We are counsel for Recology San Francisco; Sunset Scavenger Company; and Golden Gate

19 Disposal & Recycling Company (collectively, the "SF Recology Group") and Recology Inc. in the

20 matter covered by this Agreement. In connection with such representation, we have examined relevant

21 SF Recology Group and Recology Inc. documents and have discussed the terms of this Agreement with

22 the Recology Inc. Board of Directors. Based on our review of the foregoing materials and discussions,

23 we are of the opinion that the representative of the SF Recology Group and Recology Inc. has been duly

24 authorized to enter into this Agreement on behalf of the SF Recology Group and Recology Inc. and that

25 this Agreement has been duly and validly authorized, executed, and delivered on behalf of the SF

26 Recology Group and Recology Inc. and is a valid and binding obligation of the SF Recology Group and

27 Recology Inc. Further, we have carefully reviewed the terms of this Agreement with the Recology Inc.

28 Board of Directors and the Chief Executive Officer of Recology Inc. We have fully advised them of the

DEFERRED PROSECUTION AGREEMENT    14

1   rights of the SF Recology Group and Recology Inc., of possible defenses, of the Sentencing Guidelines'

2   provisions and of the consequences of entering into this Agreement. To our knowledge, the decision of

3   the SF Recology Group and Recology Inc. to enter into this Agreement, based on the authorization of

4   Recology Inc.'s Board of Directors, is an informed and voluntary one.

5

6   DATED:   September 7, 2021

7                                 CHRISTINE Y. WONG
                                  MORRISON & FOERSTER LLP

8

9   DATED:   September 7, 2021

10                                 JOSHUA HILL, JR.
                                PAUL, WEISS, RIFKIND, WHARTON &
                                GARRISON LLP

11

12                                 Counsel for Recology Inc., Recology San
                                Francisco; Sunset Scavenger Company; Golden
13                                 Gate Disposal & Recycling Company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

  DEFERRED PROSECUTION AGREEMENT     15

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

```
┌─────────────────────────────────────────────┐
│                  FILED                        │
│                                               │
│              Sep 09 2021                      │
│                                               │
│            SUSAN Y. SOONG                      │
│        CLERK, U.S. DISTRICT COURT             │
│      NORTHERN DISTRICT OF CALIFORNIA          │
│              SAN FRANCISCO                     │
└─────────────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR21-356 WHO |
| Plaintiff, | |
| v. | VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Honest Services Wire Fraud; 18 U.S.C. §§ 981(a)(1)(C) & 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| RECOLOGY SAN FRANCISCO; SUNSET SCAVENGER COMPANY; GOLDEN GATE DISPOSAL & RECYCLING COMPANY, | |
| Defendants. | SAN FRANCISCO VENUE |

I N F O R M A T I O N

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

1. At all times material to this information, Recology Inc. was a resource recovery company headquartered in San Francisco and the direct or indirect parent company of Sunset Scavenger Company, Golden Gate Disposal & Recycling Company, and Recology San Francisco (all three collectively referred to as the "SF Recology Group"). Recology Inc. provided refuse collection and disposal services for residential and commercial customers in the City and County of San Francisco (the "City"), as well as for the City itself, through the SF Recology Group.

INFORMATION                                        1

2.     Mohammed Nuru was the Director of Public Works (DPW) for the City and County of San Francisco.  As Director of Public Works, Nuru had substantial official influence over SF Recology Group's business in the City of San Francisco including, but not limited to, a contract for the City's dumping of materials at SF Recology Group's Sustainable Crushing facility. Among other things, Nuru was in a position to influence the contract rates, known as tipping fees, that DPW agreed to pay SF Recology Group when DPW dumped materials at SF Recology Group's facility.  Nuru could also approve, deny, or otherwise affect operational changes that SF Recology Group wanted to make to its businesses in the City.

3.     John Porter was Vice President and Group Manager of the SF Recology Group, from no later than January 2018 until January 2021.  Porter was San Francisco Group Controller from approximately December 2014 through approximately December 2017.  As Controller, Porter had authority to approve payments by the SF Recology Group of $25,000 or less.  As Vice President and Group Manager, Porter had authority to approve payments of $100,000 or less.

4.     SF Recology Group Executive 2 was the Vice President and Group Manager of the SF Recology Group prior to Porter.  Following a promotion, he was Chief Operating Officer of Recology Inc. until July 2020.  As Vice President and Group Manager, SF Recology Group Executive 2 had authority to approve payments by the SF Recology Group of $100,000 or less.

5.     Paul Giusti was the Group Government and Community Relations Manager for the SF Recology Group from 2012 until June 2020.  As the Group Government and Community Relations Manager, Giusti served as SF Recology Group's liaison to elected officials and City departments such as DPW, as well as to community organizations.  From approximately 2014 to December 2017, Giusti reported to SF Recology Group Executive 2.  From January 2018 until Giusti's departure from the SF Recology Group, Giusti reported to Porter.  Giusti was one of Nuru's primary contacts at the SF Recology Group.  Giusti had authority to approve payments by the SF Recology Group of $25,000 or less.

6.     During the relevant period, Porter, Giusti and SF Recology Group Executive 2 were employees of the SF Recology Group.

//

INFORMATION                                              2

THE CONSPIRACY AND OVERT ACTS

7.     In his capacity as Group Government and Community Relations Manager, Giusti first reported to SF Recology Group Executive 2, and then to John Porter, who replaced SF Recology Group Executive 2 as the Vice President and General Manager of the SF Recology Group.

8.     In furtherance of the conspiracy, Giusti and others helped direct a stream of payments and benefits from SF Recology Group to Nuru or his designees, including financial contributions to organizations at Nuru's direction; services; gifts; and other things of value.  The purpose of this stream of payments and benefits was to influence Nuru to act in the SF Recology Group's favor as opportunities arose, and to have Nuru take official action and exercise official influence in the SF Recology Group's favor in exchange for such payments and benefits.

9.     The payments and benefits provided to Nuru on behalf of the SF Recology Group included, but were not limited to, the following:  (1) approximately $150,000 per year, in $30,000 installments, from in or around 2014 through approximately the end of 2019, to San Francisco Non-Profit A, with the knowledge that Nuru could ultimately control how this money was used; (2) $60,000 in funding for the annual DPW holiday party in the period from 2016 to 2019, in the form of "holiday donations" to the Lefty O'Doul's Foundation for Kids; (3) a job for Nuru's son at one of the SF Recology Group companies; (4) SF Recology Group funded internships for Nuru's son, in the summer of 2017 and summer of 2018, at another San Francisco non-profit on whose board Giusti served; and (5) other gifts and personal and professional benefits in the form of funeral expenses in the amount of $3,500 for a DPW employee and a two-night stay at a New York hotel for Nuru and another high-ranking city official totaling $865.34 per room.

10.    Giusti helped arrange for these payments and benefits with the knowledge and approval of his supervisor at the relevant time, either SF Recology Group Executive 2 or Porter. In helping to arrange for these and other payments and benefits for the purpose of influencing Nuru to act in the SF Recology Group's favor, Giusti, Porter, and SF Recology Group Executive 2, each acted within the scope of their employment and for the purpose of benefitting the SF Recology Group.

COUNT ONE:          (18 U.S.C. § 1349 – Conspiracy to Commit Honest Services Wire Fraud)

11.    Paragraphs 1 through 10 of this Information are re-alleged and incorporated as if fully set

INFORMATION                                          3

forth here.

12. Beginning in or about 2014, and continuing through in or about January 2020, in the Northern District of California and elsewhere, the defendants,

RECOLOGY SAN FRANCISCO,

SUNSET SCAVENGER COMPANY, and

GOLDEN GATE DISPOSAL & RECYCLING COMPANY,

did knowingly conspire and agree with each other, Mohammed Nuru, and others, known and unknown to the United States Attorney, to commit honest services wire fraud, that is, devising and intending to devise a scheme and artifice to defraud and deprive the people of San Francisco of their right to the honest and faithful services of Mohammed Nuru through bribery and the concealment of material information, and to use or cause someone to use an interstate or foreign wire communication to carry out or attempt to carry out the scheme, in violation of 18 U.S.C. §§ 1343, 1346.

All in violation of Title 18, United States Code, 18 U.S.C. § 1349.

FORFEITURE ALLEGATION:      (18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c))

13. The allegations contained in this Information are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

14. Upon conviction for any of the offenses set forth in this Information, the defendants,

RECOLOGY SAN FRANCISCO,

SUNSET SCAVENGER COMPANY, and

GOLDEN GATE DISPOSAL & RECYCLING COMPANY,

shall forfeit to the United States all property, real or personal, constituting, or derived from proceeds the defendant obtained directly and indirectly, as the result of those violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

15. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

INFORMATION                                    4

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code,

Section 2461(c), and Federal Rule of Criminal Procedure 32.2.


DATED: September___, 2021                     STEPHANIE M. HINDS
                                              Acting United States Attorney


                                              _____
                                              SCOTT D. JOINER
                                              Assistant United States Attorney

INFORMATION                                   5

**ATTACHMENT A**

**STATEMENT OF FACTS**

1.     The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office for the Northern District of California (the "government" or "USAO")) and Sunset Scavenger Company, Golden Gate Disposal & Recycling Company, and Recology San Francisco (all three collectively referred to as the "SF Recology Group") and Recology Inc.  The SF Recology Group and Recology Inc. hereby agree and stipulate that the following information is true and accurate.

**I.     BACKGROUND**

2.     Recology Inc. is a resource recovery company headquartered in San Francisco and the direct or indirect parent company of the SF Recology Group.  At all times material to the Agreement, Recology Inc. provided refuse collection and disposal services for residential and commercial customers in the City and County of San Francisco (the "City"), as well as for the City itself, through the SF Recology Group.

3.     At all times material to this Agreement, Mohammed Nuru was the Director of Public Works (DPW) for the City and County of San Francisco.  DPW is one of the largest municipal operations in the City of San Francisco, with an estimated $350 million annual operating budget in fiscal year 2020-2021.  As Director of Public Works, Nuru had substantial official influence over SF Recology Group's business in the City of San Francisco including, but not limited to, a contract for the City's dumping of materials at SF Recology Group's Sustainable Crushing facility. Among other things, Nuru was in a position to influence the contract rates, known as tipping fees, that DPW agreed to pay SF Recology Group when DPW dumped materials at SF Recology Group's facility.  Nuru could also approve, deny, or otherwise affect operational changes that SF Recology Group wanted to make to its businesses in the City.

4.     John Porter was Vice President and Group Manager of the SF Recology Group, from no later than January 2018 until January 2021.  Porter was San Francisco Group Controller from approximately December 2014 through approximately December 2017.  As Controller, Porter had authority to approve payments by the SF Recology Group of $25,000 and under.  As Vice President and

A-1

Group Manager, Porter had authority to approve payments of $100,000 and under.

5.      Paul Giusti was the Group Government and Community Relations Manager for the SF Recology Group from 2012 until June 2020.  As the Group Government and Community Relations Manager, Giusti served as SF Recology Group's liaison to elected officials and City departments such as DPW, as well as to community organizations.  From approximately 2014 to December 2017, Giusti reported to SF Recology Group Executive 2.  From January 2018 until Giusti's departure from the SF Recology Group, Giusti reported to Porter.  Giusti was one of Nuru's primary contacts at the SF Recology Group.  Giusti had authority to approve payments by the SF Recology Group of $25,000 and under.

6.      SF Recology Group Executive 2 was the Vice President and Group Manager of the SF Recology Group prior to Porter.  Following a promotion, he was Chief Operating Officer of Recology Inc. until July 2020.  As Vice President and Group Manager, SF Recology Group Executive 2 had authority to approve payments by the SF Recology Group of $100,000 and under.

7.      During the relevant period, Porter, Giusti and SF Recology Group Executive 2 were employees of the SF Recology Group.  The SF Recology Group admits, accepts, and acknowledges that it is criminally liable under the law for the acts of its employees, and accordingly, takes responsibility for the conduct described below.

II.    **CONDUCT**

    A.    **Overview**

8.      From in or around 2014 until in or around January 2020, Giusti, Porter, and SF Recology Group Executive 2 agreed with Mohammed Nuru to commit bribery and defraud the public of its right to the honest services of a public official.  More specifically, Giusti, Porter and SF Recology Group Executive 2, on behalf of the SF Recology Group, agreed to pay bribes and kickbacks or rewards to Nuru, who was then a public official with the City and County of San Francisco, with the intent to obtain favorable official action and influence from Nuru.  The purpose of the conspiracy was to use Nuru's power and influence as a public official to benefit the SF Recology Group's business.

9.      To influence Nuru to act in the SF Recology Group's favor, Giusti, Porter, and SF Recology Group Executive 2 provided Nuru with things of value, including 1) annual contributions from

2016 to 2019 to fund the DPW holiday party, disguised as charitable donations to the non-profit Lefty O'Doul's Foundation for Kids, 2) approximately $900,000 in contributions made to another San Francisco non-profit at Nuru's direction; 3) a job and an SF Recology Group-funded internship for Nuru's son; and 4) other gifts and personal and professional benefits in the form of funeral expenses in the amount of $3,500 for a DPW employee and a two-night stay at a New York hotel for Nuru and another senior city official totaling $865.34 per room.  As described below, SF Recology Group executives arranged for and/or approved these payments, gifts, and benefits, with the intent to cause Nuru to take official actions benefitting the SF Recology Group.

**B.  Payments for DPW Holiday Parties**

10.    From 2016 to 2019, the SF Recology Group paid a total of $60,000 to the Lefty O'Doul's Foundation for Kids, at Nuru's direction.  The Lefty O'Doul's Foundation was a non-profit organization for underprivileged children in San Francisco.  However, the purpose of the payments was not to assist underprivileged children, but was instead to help pay for DPW holiday parties.  The DPW holiday party was a showcase event hosted by Nuru, attended by selected DPW managers and staff, San Francisco dignitaries including the Mayor and City Administrator, and Giusti, Porter, and other SF Recology Group employees, among others.

11.    The payments were arranged by Giusti and approved by either SF Recology Group Executive 2 or Porter.  Each year's contribution was described as a "holiday donation" to the Lefty O'Doul's Foundation for Kids in internal documents, including check requests approved by SF Recology Group Executive 2 or Porter.  However, Giusti, SF Recology Group Executive 2 and Porter knew that the money was not a holiday donation to be used for underprivileged children, but would in fact be used to pay for the DPW holiday party.

12.    The SF Recology Group first gave Nuru money for the DPW holiday party in December 2016.  SF Recology Group Executive 2 and Giusti met with Nuru at Nuru's office to discuss SF Recology Group business in or around December 5, 2016.  On or about that same date, at Nuru's direction, Giusti arranged for, and SF Recology Group Executive 2 approved, a check request for a "holiday donation" of $5,000 to Lefty O'Doul's Foundation for Kids.  The check was not intended to be a holiday donation to the Foundation, but was instead intended to help pay for the DPW holiday party as

a way to obtain favorable official action and influence from Nuru. The same was true of subsequent payments routed through the Lefty O'Doul's Foundation for Kids.

13. In October 2017, at Nuru's direction, the SF Recology Group made a $15,000 "holiday donation" to the Lefty O'Doul's Foundation for Kids to help pay for the DPW holiday party. Giusti arranged for the payment and Porter approved it.

14. In November 2018, also at Nuru's direction, the SF Recology Group gave Nuru $20,000 for the DPW holiday party.

15. Prior to that payment, beginning in the summer of 2018, Porter, Giusti, and other SF Recology Group employees began seeking Nuru's assistance with a price increase on the dumping fees, known as "tipping fees," that SF Recology Group charged the City of San Francisco for dumping certain materials at its Sustainable Crushing facility in San Francisco. The City of San Francisco was one of SF Recology Group's largest customers for the Sustainable Crushing facility.

16. Porter, Giusti, and other SF Recology Group employees hoped to raise prices beginning August 2018. They met with Nuru in July 2018 to discuss the price increase; Porter also emailed and called Nuru to obtain his assistance. A few days after the July meeting, Recology San Francisco General Manager A forwarded one of Porter's emails to Nuru to the DPW employee responsible for the tipping fee contract. He wrote that he and Porter "had a meeting with Director Nuru to discuss SF Public Works tipping fees at Sustainable Crushing. Attached, please find a price sheet that was presented to the Director last week. Recology SF would like to have the tipping fees associated with our PO adjusted to reflect the price structure attached." The City purchaser in charge of the Sustainable Crushing contract would not agree to the price increase, but the company nevertheless began to invoice the City at the new prices beginning in or around August 2018. When the City refused to pay the invoices with the increased prices, Porter, Giusti, and other SF Recology Group employees again sought to use Nuru's official power and influence to help the business. On or around November 15, 2018, Recology San Francisco General Manager A wrote to Porter and Giusti, "Obviously we need to push the increase through and we are not going to get anything done with the purchaser." Recology San Francisco General Manager A then texted Giusti, "Sent you an email this morning about the DPW disposal contract for innards they don't want to honor the price increase that we negotiated with

1    Muhammad [sic]."  On November 20, 2018, after the City's analyst again requested the SF Recology

2    Group work on revising their prior invoices, an SF Recology Group employee told the analyst, "My boss

3    is meeting with your Director tomorrow on this very issue. I will get back to you as soon as I here [sic]

4    of the resolution."  Porter, Giusti, and other SF Recology Group employees were scheduled for a regular

5    monthly breakfast coordination meeting with Nuru the next day. The meeting happened as scheduled on

6    November 21, 2018 and Porter used his SF Recology Group purchase card to pay $155.95 for breakfast

7    for the attendees.

8         17.    That same day, November 20, 2018, while the issue of a price increase was still pending

9    between Recology San Francisco and the City, Giusti emailed SF Recology Group Assistant A and

10   asked, "Can you please tell me what we spent last year around this time for Lefty O'Doul [sic]

11   Foundation?"

12        18.    On the morning of November 26, 2018, Porter emailed Nuru, "As discussed, any help

13   you could provide getting the new purchaser aware of our price change would be appreciated."  Nuru

14   wrote back, "Working on situation," and shortly afterwards forwarded Porter's email to DPW Deputy

15   Director A and SF Purchaser A and wrote, "Can you let me know what's happening. Thanks."

16        19.    That evening, in a phone call between Nuru and Giusti, Nuru requested that the SF

17   Recology Group increase its contribution to the DPW holiday party from $15,000 to $20,000.  Nuru said

18   that he needed more money for his holiday party, telling Giusti, "Yeah, so if you could, if you could

19   give me twenty, that would be nice."  Giusti replied, "All right, okay."  Nuru then pivoted to issues

20   affecting the SF Recology Group, telling Giusti , "And then I'm working on the other thing for John

21   [Porter], so…".  Giusti responded, "Okay, perfect."  Nuru told Giusti, "I sent him the freeway people, I

22   sent him that and then I'm trying to get him the price increase for the…." Giusti added, "tipping."  Nuru

23   told him, "for the specialty, yeah."  Nuru then advised Giusti, "Just send me the bills with the new price

24   and we'll deal with it, yeah." Giusti replied "Okay, all right, thank you."  The next morning, Giusti

25   prepared, and Porter signed, a check request for a "holiday donation" of $20,000 to the Lefty O'Doul's

26   Foundation for Kids.  SF Recology Group then issued a $20,000 check to the Lefty O'Doul's

27   Foundation.  As with previous payments, the purpose of the check was to obtain favorable official action

28   from Nuru, including in connection with the tipping fee increase, by helping pay for the DPW holiday

A-5

party, not to make a holiday donation for underprivileged children.  Giusti mailed the check to Nuru at Nuru's request.  The holiday party, attended by Porter, Giusti and other SF Recology Group employees, took place on December 18, 2018.

20.    On December 20, 2018, Porter used his SF Recology Group purchase card to pay $1,182.23 for a holiday dinner with Nuru, SF Recology Group Executive 2, Giusti, and DPW Deputy Director A, at Harris' Restaurant in San Francisco.  Previously, in 2017, SF Recology Group Executive 2 had also treated Nuru and others to a similar holiday dinner at Harris' Restaurant.

21.    In November 2019, the SF Recology Group contributed another $20,000 to the DPW holiday party, again sending the money through the same non-profit organization at Nuru's direction. Porter approved this payment as well.

**C.    Giusti Arranges for SF Recology Group to Contribute over $150,000 a Year to Non-Profit A at Nuru's Direction**

22.    From August 2014 to November 2019, Giusti, SF Recology Group Executive 2, and Porter arranged for the SF Recology Group to pay approximately $900,000 to San Francisco Non-Profit A in the form of "donations" for a DPW program called Giant Sweep.  These payments were another way to obtain Nuru's official assistance with the SF Recology Group's business. The Giant Sweep payments to Non-Profit A were made at Nuru's direction, for the purpose of influencing him to act in the SF Recology Group's favor.  Giant Sweep was part of an ongoing DPW program called Community Clean Team.  Donations for Clean Team were administered by the program's fiscal sponsor, a different San Francisco non-profit.

23.    Beginning in August 2014, approximately once a year, Non-Profit A's Executive Director would email a letter to Giusti, addressed to Giusti's supervisor at the time—first SF Recology Group Executive 2, and then Porter.  The letters thanked "Recology" in advance for their tax-deductible donation of $150,000, to be paid in bi-monthly installments of $30,000.  Giusti arranged for the $30,000 payments to be issued.  The SF Recology Group Manager at the time, SF Recology Group Executive 2 or Porter, would then approve the payments.

24.    On May 20, 2015, Non-Profit A's Executive Director advised that they had not received the most recent $30,000 payment.  Giusti wrote to Porter and others, "This is embarrassing and is the

second check just today alone that has come to the DPW Directors attention where we have failed to meet our payment commitment."  Giusti wrote separately to Porter, "I got my ass chewed out this morning from Mohammed and actually had to promise to write a personal check to a non-profit that has been waiting months to get paid!"  Porter wrote back to Giusti about ten minutes later, "We should sit down and discuss all the politically sensitive payments that we make on a recurring basis so that we can check to ensure that those are paid regularly."  Giusti replied, "Not paying our commitments timely negates all the good will we build by making the donation/sponsorship in the first place."  Porter then sent Giusti a calendar invitation for a meeting entitled "Important payment discussion."

25.     Porter himself then prepared, signed, and emailed a check request form for the $30,000 payment to Non-Profit A, with a note indicating, "Please pay as soon as possible."  He sent it to the accounts payable supervisor, asking her, "Can you pay off of this?  If so, when can you pay?  If not, let me know what we need to do.  Our office is closed, [SF Recology Group Executive 2] is on vacation and this needs to be paid as soon as possible."  The accounts payable supervisor sent the email to the Corporate Controller of Recology Inc., cc'ing Porter, and wrote, "Can you please approve the attached for payment.  [SF Recology Group Executive 2] is gone and John only has 25K.  John needs this paid right away."  Porter emailed the Assistant Corporate Controller of Recology Inc., advising, "FYI – Mohammed is the Director of the DPW who ultimately signs off on our rates.  Needless to say, keeping him happy is important."  After approval, Recology Inc. issued a check for $30,000 to Non-Profit A on or around May 20, 2015.

26.     On September 2, 2016, SF Recology Group wired another $30,000 payment to Non-Profit A, one of the bimonthly Giant Sweep payments made at Nuru's direction.

27.     The SF Recology Group continued to send the $30,000 payments to Non-Profit A at Nuru's direction through the end of 2019.

28.     Giusti, in his role as the SF Recology Group's Government and Community Relations Manager, arranged for the SF Recology Group to make the $150,000 annual payments at the direction of Nuru and the Executive Director of Non-Profit A from at least as early as August 2014 through the end of 2019.  SF Recology Group Executive 2, and later Porter in his capacity as the SF Recology Group Controller and then Vice President and Group Manager of the SF Recology Group, knew about and

1 signed off on these payments. As noted above, the purpose of these payments was to obtain official

2 action and influence from Nuru that was favorable to the SF Recology Group's business in the City.

3        **D.**    **Job and Internship for Nuru's Son**

4       29.    The items of value provided to Nuru with the intent to obtain favorable official acts and

5 influence included employment for Nuru's son. In June 2015, Nuru asked Giusti to find a summer job

6 for his high school-aged son. Giusti agreed and arranged for one of the SF Recology Group companies

7 to hire Nuru's son as a debris box painter through a temporary staffing agency during the summer of

8 2015. SF Recology Group then hired Nuru's son again part-time during the 2015-2016 school year, and

9 again during the summer of 2016 after he graduated from high school.

10       30.    In or around the week of May 21, 2017, Nuru's son returned to work for SF Recology

11 Group painting debris boxes as a temporary laborer. About three weeks later, on or about June 7, 2017,

12 a San Francisco city official advised Recology Inc. Vice President A that Nuru's son was working for

13 SF Recology Group. Recology Inc. Vice President A then called SF Recology Group Executive 2, who

14 confirmed that Nuru's son worked for SF Recology Group. Recology Inc. Vice President A informed

15 Recology Inc.'s then-Chief Executive Officer, who instructed SF Recology Group Executive 2 that

16 Nuru's son's employment should be terminated. On or around June 8, 2017, SF Recology Group

17 Executive 2 and the General Manager of one of the SF Recology Group companies personally

18 terminated Nuru's son. Payroll records show that by the time Nuru's son was terminated, the SF

19 Recology Group had paid in excess of $17,000.00 for his work at the company from 2015 to 2017.

20       31.    Giusti then arranged for Nuru's son to get an SF Recology Group-funded internship at a

21 local non-profit on whose board Giusti served. Specifically, Giusti arranged to fund a summer

22 internship program at Non-Profit C, and for Non-Profit C to hire Nuru's son as their summer intern.

23 Giusti sought and received approval from SF Recology Group Executive 2 for the arrangement. Nuru's

24 son began working at Non-Profit C on June 14, 2017, approximately one week after being terminated

25 from the SF Recology Group.

26       32.    Non-Profit C sent Giusti an invoice for a total of $9,600, with the generic description

27 "Summer Youth Program." The invoice did not make any mention of Nuru's son. Giusti arranged for

28 the SF Recology Group to pay the invoice, with the written approval of SF Recology Group Executive

1    2.

2         33.    In summer 2018, Nuru's son returned to Non-Profit C for another SF Recology Group-

3    funded internship, and Giusti again arranged for the SF Recology Group to sponsor a "Summer Youth

4    Intern Program" to pay his salary.  Non-Profit C sent Giusti a $14,000 invoice to the SF Recology Group

5    for a generic "Summer Youth Intern Program." Giusti again arranged for SF Recology Group to pay the

6    invoice, with the written approval of Porter.

7         **E.    Other Gifts and Benefits**

8         34.    The SF Recology Group also provided Nuru other gifts and benefits intending to

9    influence Nuru to take official action that would benefit its business.

10        35.    For example, in June 2016, the SF Recology Group paid for the funeral of a DPW

11   employee and disguised the payment as a donation to Non-Profit A.  Sandra Zuniga—a DPW employee

12   and Nuru's long-time girlfriend—requested that SF Recology Group pay the mortuary bill of $3,500.  At

13   Nuru's direction, and with SF Recology Group Executive 2's knowledge and approval, Giusti arranged

14   for SF Recology Group to pay the mortuary bill through Non-Profit A.  Giusti specifically requested that

15   Non-Profit A invoice the SF Recology Group $3,500 for a "community service project."  After Non-

16   Profit A's Executive Director emailed an invoice for $3,500 for "Donation for DPW Partnership," Giusti

17   arranged for SF Recology Group to issue a payment to Non-Profit A.  SF Recology Group Executive 2

18   signed off on the payment.

19        36.    In another example, Giusti used his company card to pay for a hotel room for Nuru and

20   another very senior San Francisco city official in New York City.  Specifically, in December 2017, SF

21   Recology Group Executive 2 and Paul Giusti traveled to New York with Nuru and San Francisco Public

22   Official A to tour a trash collection system used on Roosevelt Island.  However, when SF Recology

23   Group Executive 2 and Giusti arrived at the hotel where the group was scheduled to stay, they felt that it

24   was too rundown and that it would be embarrassing for Nuru and San Francisco Public Official A to stay

25   there.  With SF Recology Group Executive 2's knowledge and approval, Giusti arranged for Nuru and

26   San Francisco Public Official A to stay at another hotel nearby.  Giusti paid for those hotel rooms using

27   his SF Recology Group purchase card, and submitted the expenses for reimbursement by SF Recology

28   Group. The total cost of each room for two nights, paid for by SF Recology Group, was $865.34.

A-9

Neither Nuru nor San Francisco Public Official A reimbursed or offered to reimburse SF Recology Group for the cost of their hotel rooms.

37.    The SF Recology Group agrees that when SF Recology Group Executive 2, Porter, and Giusti, directed this stream of benefits to Nuru, they were acting within the scope of their employment with the SF Recology Group and for the purpose of benefitting the SF Recology Group.

38.    The SF Recology Group agrees that at all relevant times described above, SF Recology Group Executive 2, Giusti and Porter acted knowingly and with the intent to deprive the public of the honest services of a public official, namely Nuru, through bribery or kickbacks in breach of Nuru's fiduciary duty.  The SF Recology Group further agrees that the scheme to defraud involved deceptions, misrepresentations, false statements, false pretenses, or concealment that was material.  The SF Recology Group further stipulates and agrees that as part of the scheme, co-conspirators exchanged and caused to be exchanged telephone calls, text messages, and emails, including interstate wire communications.

**ATTACHMENT B**

**CORPORATE COMPLIANCE PROGRAM**

Recognizing the remedial measures undertaken by Recology Inc. ("Recology") on behalf of itself and its wholly-owned entities, including Recology San Francisco, Sunset Scavenger Company, and Golden Gate Disposal & Recycling Company (collectively, the "SF Recology Group") set forth in the Deferred Prosecution Agreement, Recology agrees to continue to conduct, in a manner consistent with all of the obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures and to address any deficiencies in its internal controls, policies, and procedures regarding compliance with U.S. statutes prohibiting honest services fraud, bribery, and other federal anti-corruption laws.

Where necessary and appropriate, Recology agrees to adopt new, or to modify its compliance program, including internal controls, compliance policies, and procedures to ensure that it maintains an effective compliance program that is designed to effectively detect and deter violations of U.S. statutes prohibiting honest services fraud, bribery, and other federal anti-corruption laws. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of Recology's existing internal controls, compliance code, policies, and procedures:

**Commitment to Compliance**

1.      Recology will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of U.S. bribery and anti-corruption laws and its compliance code, and demonstrate rigorous adherence by example. Recology will also ensure that middle management, in turn, reinforce those standards and encourage employees to abide by them. Recology will create and foster a culture of ethics and compliance with the law in its day-to-day operations at all levels of the company.

**Policies and Procedures**

2.      Recology will develop and promulgate a clearly articulated and visible corporate policy against violations of U.S. bribery and anti-corruption laws, which policy shall be memorialized in a written compliance code.

3.      Recology will develop and promulgate compliance policies and procedures designed to

reduce the prospect of violations of U.S. bribery and anti-corruption laws and Recology's compliance code, and Recology will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of U.S. bribery and anti-corruption laws by personnel at all levels of Recology. These policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of Recology, including, but not limited to, agents, consultants, and lobbyists. Recology shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company.

**Periodic Risk-Based Review**

4.      Recology will develop these compliance policies and procedures on the basis of a periodic risk assessment addressing the individual circumstances of the SF Recology Group.

5.      Recology shall review these policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

**Proper Oversight and Independence**

6.      Recology will assign responsibility to one or more senior corporate executives of Recology for the implementation and oversight of the company's compliance code, policies, and procedures regarding violations of U.S. bribery and anti-corruption laws. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal audit, the Recology Inc. Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

**Training and Guidance**

7.      Recology will implement mechanisms designed to ensure that its compliance code, policies, and procedures are effectively communicated to all directors, officers, employees, and, where appropriate, agents and business partners including consultants and lobbyists. These mechanisms shall include: (a) periodic training for all directors and officers, all employees in positions of leadership or trust, all employees in a position to interact with government officials, other positions that require such training (e.g., internal audit, sales, legal, compliance, finance, and government relations), and, where

appropriate, agents and business partners including consultants and lobbyists; and (b) corresponding certifications by all such directors, officers, employees, agents, and business partners certifying compliance with the training requirements.  Recology will conduct training in a manner tailored to the audience's size, sophistication, or subject matter expertise and, where appropriate, will discuss prior compliance incidents.

8.      Recology will maintain, or where necessary establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners including consultants and lobbyists, on complying with the company's compliance code, policies, and procedures, including when they need advice on an urgent basis.

### Internal Reporting and Investigation

9.      Recology will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners including consultants and lobbyists concerning violations of U.S. bribery and anti-corruption laws or Recology's compliance code, policies, and procedures.

10.     Recology will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of U.S. bribery and anti-corruption laws or Recology's compliance code, policies, and procedures. Recology will handle the investigations of such complaints in an effective manner, including routing the complaints to proper personnel, conducting timely and thorough investigations, and following up with appropriate discipline where necessary.

### Enforcement and Discipline

11.     Recology will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

12.     Recology will institute appropriate disciplinary procedures to address, among other things, violations of U.S. bribery and anti-corruption laws and Recology's compliance code, policies, and procedures by its directors, officers, and employees. Such procedures should be applied consistently

and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee. Recology shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall compliance program is effective.

### **Mergers and Acquisitions**

13.     Recology will develop and implement policies and procedures for mergers and acquisitions requiring that the SF Recology Group conduct appropriate risk-based due diligence on potential new business entities.

14.     Recology will ensure that its compliance code, policies, and procedures regarding U.S. bribery and anti-corruption laws apply as quickly as is practicable to newly acquired businesses or entities merged with Recology or any of its subsidiaries, and will promptly train the directors, officers, employees, agents, and business partners consistent with Paragraphs 7 and 8.

### **Monitoring and Testing**

15.     In order to ensure that its compliance program does not become stale, Recology will conduct periodic reviews and testing of their compliance code, policies, and procedures designed to evaluate and improve their effectiveness in preventing and detecting violations of U.S. bribery and anti-corruption laws and the company's compliance code, policies, and procedures, taking into account relevant developments in the field and evolving industry standards. Recology will ensure that compliance and control personnel have sufficient direct or indirect access to relevant sources of data to allow for timely and effective monitoring and/or testing. Based on such review and testing and its analysis of any prior misconduct, Recology will conduct a thoughtful root cause analysis and timely and appropriately remediate to address the root causes.

**ATTACHMENT C**

**REPORTING REQUIREMENTS**

Recology San Francisco; Sunset Scavenger Company; and Golden Gate Disposal & Recycling Company (collectively, "the SF Recology Group") and Recology Inc. (together with the SF Recology Group, "RECOLOGY") agree that they will report to the U.S. Attorney's Office for the Northern District of California (the "government") periodically, at no less than twelve-month intervals during a three-year term, regarding remediation and implementation of the compliance program and internal controls, policies, and procedures described in Attachment B. During this three-year period, RECOLOGY shall: (1) conduct an initial review and submit an initial report, and (2) conduct and prepare at least two follow-up reviews and reports, as described below:

a.      By no later than one year from the date this Agreement is executed, RECOLOGY shall submit to the government a written report setting forth a complete description of its remediation efforts to date, its proposals reasonably designed to improve internal controls, policies, and procedures for ensuring compliance with U.S. bribery and anti-corruption laws, and the proposed scope of subsequent reviews. The report shall be transmitted to:

> The United States Attorney
> U.S. Attorney's Office for the Northern District of California
> 450 Golden Gate Avenue, 11th Floor
> San Francisco, CA 94102

RECOLOGY may extend the time period for issuance of the report with prior written approval of the government.

b.      RECOLOGY shall undertake at least two follow-up reviews and reports, incorporating the views of the government on its prior reviews and reports, to further monitor and assess whether its policies and procedures are reasonably designed to detect and prevent violations of U.S. bribery and anti-corruption laws.

c.      The first follow-up review and report shall be completed by no later than one year after the initial report is submitted to the government. The second follow-up review and report shall be completed and delivered to the government no later than thirty days before the end of the Term.

d.      The reports will likely include proprietary, financial, confidential, and competitive

business information. Moreover, public disclosure of the reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the objectives of the reporting requirement. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the government determines in its sole discretion that disclosure would be in furtherance of the government's discharge of its duties and responsibilities or is otherwise required by law.

      e.      RECOLOGY may extend the time period for submission of any of the follow-up reports with prior written approval of the government.