1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>EXHIBIT B</u>**

## *Debate heats up on Justice's deferred-prosecution deals*

USA TODAY

May 31, 2006 Wednesday

FINAL EDITION

Copyright 2006 Gannett Company, Inc. All Rights Reserved

**Section:** MONEY; Pg. 4B

**Length:** 1358 words

**Byline:** Edward Iwata

## Body

The legal debate over the Justice Department's aggressive prosecution of businesses has been reignited after the recent indictment of securities class-action law firm Milberg Weiss, plus an ongoing court battle between prosecutors and former KPMG executives indicted on fraud charges.

Milberg Weiss is the first business to be prosecuted by the federal government since Arthur Andersen, the former accounting firm and Enron auditor that died even though its obstruction-of-justice conviction was overturned last year by the Supreme Court.

In the KPMG case, 16 former executives believe their constitutional rights to legal counsel and fair trial were violated when prosecutors forced KPMG to stop paying their legal fees as part of the firm's agreement with the government to escape prosecution, according to court filings.

As the Justice Department intensified its crackdown on corporate crime in the post-Enron era, a growing number of defense lawyers and business groups have accused it of prosecutorial overkill.

Prosecutors, encouraged by the so-called Holder and Thompson memorandums in 1999 and 2003, respectively, that set Justice Department criteria for going after "business organizations," are compelling more businesses to cooperate with investigations and sign "deferred-prosecution agreements" and "no prosecution" deals -- or risk being indicted.

"It's an ultimatum from prosecutors: either cooperate or die," says Larry Ribstein, a law professor at the University of Illinois.

Since the Justice Department's corporate fraud task force was formed four years ago, prosecutors have signed "a couple dozen" deferred-prosecution agreements with business entities, says department spokesman Bryan Sierra.

That's twice as many  as  in the 10 years before the corporate fraud task force was created, says Andrew Weissmann, who prosecuted Arthur Andersen as a member of the Enron Task Force. He is now a defense attorney at Jenner & Block.

Weissmann, who also prosecuted drug gangs and Mafia defendants in New York, says the Justice Department is addicted to using deferred-prosecution deals "like crack cocaine."

"As the department gets more experienced at deferred-prosecution agreements and realize they have more leverage," Weissmann predicts, "you're going to see more and more draconian agreements."

Julie Brown

Debate heats up on Justice's deferred-prosecution deals

Prosecutors believe that businesses and executives engaging in financial crimes must be taught a harsh lesson. Since the Enron scandal arose in late 2001, the Justice Department has won 1,000 convictions of white-collar criminals, including 167 CEOs and presidents.

But defense and corporate attorneys accuse the Justice Department of going too far -- and even engaging in prosecutorial misconduct -- when prosecutors pressure businesses to waive attorney-client privilege, which protects the confidentiality of communications with their lawyers, and to hand over investigative documents to the government. Granting such waivers also can weaken the companies' legal position in related civil lawsuits.

The Justice Department's use of deferred-prosecution deals has led an array of business and legal groups -- among them the U.S. Chamber of Commerce, American Bar Association, the American Civil Liberties Union, the Securities Industry Association, and the National Association of Criminal Defense Lawyers -- to lobby Congress and speak out on the issue.

Several of those groups also have filed legal briefs in the KPMG case, calling it unconstitutional for the Justice Department to force companies to cooperate with the government's investigations by not paying executives' legal fees.

"While prosecuting wrongdoing is a critically important objective, we think everybody deserves the right to have the benefit of counsel," said David Chavern, chief of staff at the Chamber of Commerce.

The KPMG case became a legal flashpoint on the issue after prosecutors charged 16 former KPMG executives with setting up fraudulent tax shelters and creating $11 billion in bogus tax losses.

In a deferred-prosecution agreement with the Justice Department, KPMG agreed last year to pay $460million in penalties and admit to wrongdoing.

But the defendants' attorneys, in court filings and hearings in federal court in New York, accuse prosecutors of forcing KPMG to stop paying the legal fees of its former executives as a condition of the deferred-prosecution agreement. Prosecutors deny that.

In a May 10 hearing, U.S. District Judge Lewis Kaplan questioned the Justice Department's action in the deferred-prosecution deal.

According to a transcript, the judge scolded prosecutors and said: "Isn't it just perfectly obvious ... that it is the position of the United States Department of Justice that a company facing possible prosecution hurts its case for a favorable outcome" by paying the legal fees of its former employees?

Meanwhile, last month's indictment of Milberg Weiss and two senior partners on fraud charges could cripple the law firm, which ruled the securities class-action field for three decades until last year. Milberg Weiss likely will lose some clients and the ability to serve as lead counsel in big securities-fraud cases, legal watchers say.

On the firm's website (*www.milbergweissjustice.com*), Milberg Weiss co-founder Melvyn Weiss calls the indictment "completely unnecessary and unjust." Milberg Weiss' 365 attorneys and other employees "will inevitably suffer serious personal and professional harm," he writes.

Weiss and other attorneys say that Milberg Weiss rejected prosecutors' demands that the law firm waive its attorney-client privilege and testify against its own partners.

The prosecution of one law firm, though, won't have the same widespread economic impact as Arthur Andersen's collapse, when tens of thousands of people lost jobs and the number of Big Five accounting firms fell to four.

The vacuum created by the possible death of Milberg Weiss would be filled by dozens of other law firms, says Stanford University law professor Joseph Grundfest.

Julie Brown

Debate heats up on Justice's deferred-prosecution deals

Even if a company doesn't go under or face an indictment, the threat of prosecution can hobble a business, according to defense lawyers such as Roma Theus, an attorney who is not involved in the Milberg Weiss case.

A potential trial drains money and resources. Morale among employees suffers, and many look for new jobs. The business must deal with the stigma of criminal charges and face the full legal firepower of the government.

That's why nearly all businesses facing potential charges yield to prosecutors.

"If they don't," Theus says, "the consequences can be devastating."

Waiving privileges

In settlements with federal prosecutors, companies accused of wrongdoing increasingly are waiving legal protections for attorney-client communications and attorney work product. That gives prosecutors access to information to build cases against individuals or other companies. Examples of cases that included a waiver:

Entity Date Type of case

Sears 2001 Fraud BDO Seidman 2002 Accounting fraud

PNC ICLC 2003 Securities fraud

New York Racing Association 2003 Tax fraud

Computer Associates 2004 Securities fraud AOL 2004 Securities fraud

InVision Technologies 2004 Securities fraud

Monsanto 2005 Foreign Corrupt Practices Act

Mircus Corp 2005 Foreign Corrupt Practices Act

Bristol-Myers Squibb 2005 Securities fraud

KPMG 2005 Tax fraud conspiracy

Univ. of Medicine & Dentistry of N.J. 2006 Health care fraud

Operations Management International 2006 Clean Water Act reporting violations

FirstEnergy Nuclear Operating 2006 Environmental Crimes/ False Statements

Roger Williams Medical Center 2006 Public corruption

Aurora Foods 2001 Accounting fraud

Bank of New York 2001 Bank fraud/ Banking Secrecy Act

Merrill Lynch 2003 False statements to grand  jury/SEC; securities fraud

Symbol Technologies 2004 Securities and financial fraud

AEP Services 2005 Filed knowingly inaccurate reports concerning commodities market

Williams Power 2006 Filed knowingly inaccurate reports

Source: Corporatecrimereporter.com; Lawrence D. Finder and Ryan D. McConnell, Devolution of Authority: The DOJ's Corporate Charging Policies, St. Louis U. L. J., Vol. 51, No. 1, 2006, available at SSRN: *http://ssrn.com/abstract=902161*

# Graphic

PHOTO, B/W, J Carrier, Bloomberg News

**Load-Date:** May 31, 2006

Julie Brown

Debate heats up on Justice's deferred-prosecution deals

---

**End of Document**

Julie Brown