Robb C. Adkins (SBN 194576)
Sam A. Camardo (*Admitted Pro Hac Vice*)
Chardaie C. Charlemagne (*Admitted Pro Hac Vice*)
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email: radkins@bakerlaw.com
       scamardo@bakerlaw.com
       ccharlemagne@bakerlaw.com

*Attorneys for Defendant John Francis Porter*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br>  Plaintiff,  <br>  v.  <br> JOHN PORTER,  <br>  Defendant. | Case No.: 3:22-cr-270-WHO  <br><br>**Hon. William H. Orrick**  <br><br>**OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY** |

**INTRODUCTION**

The government's motion is premised on an overstatement of expert witness Ann Ravel's proposed testimony. She is not testifying that the payments to Lefty O'Doul's for the DPW holiday party were legal in general terms, or even that they were legitimate or ethical. Counsel for Mr. Porter has tried to make this clear to the government. *See* D.E. 85-3, p. 2.

Ms. Ravel's testimony is, only, that there was nothing *per se* illegal about an entity like Recology paying money to a nonprofit organization at the request of a public official like Mohammed Nuru, and that payments structured in this manner happened and continue to happen all the time. That is it.

While limited, Ms. Ravel's testimony is crucial to Mr. Porter's defense of the charges against him. The government has argued and will argue to the jury that Recology's payment of funds to Lefty O'Doul's *by itself*—in other words, that payment structure—supports an inference of concealment and corrupt intent. *See, e.g.*, D.E. 85 at 2 ("defendant Porter's approvals of the payments to Nuru, misrepresented and concealed as a payment to a nonprofit"). That payments structured in this fashion were permitted and common is evidence tending to negate the government's proposed inference.

The average juror would not be in a position to know this background. Without Ms. Ravel's explanation, the jury will be left with only the government's side of the story and may draw the factually incorrect inference that a corporate entity paying a nonprofit at the request of a city official was *per se* improper and a reason to find concealment and corrupt intent. The Court should not permit the government to make its arguments about the Lefty O'Doul's payments to the jury in a vacuum devoid of context and should deny the government's motion to exclude Ms. Ravel's testimony.

**ARGUMENT**

**I.  Ms. Ravel's disclosure complied with Rule 16.**

The only Rule 16 requirement that the government contests with respect to Ms. Ravel's disclosure is whether it contains the bases and reasons for her opinions. Ms. Ravel's disclosure informed the government that she read the Superseding Indictment, noted the structure of the Lefty

O'Doul's payments, and explained her opinion about that structure based on her decades of experience, including providing numerous specific examples. *See generally* D.E. 85-2.

The government makes much of Ms. Ravel's use of the word "resemble" when describing the payments set forth in the Superseding Indictment. *See* D.E. 85 at 5-6. Ms. Ravel was simply describing the allegations in the Superseding Indictment. Counsel for Mr. Porter attempted to clarify this for the government and to also emphasize the limited nature of Ms. Ravel's testimony, hoping to dispel the government's concerns about Ms. Ravel's testimony being that Mr. Porter's actions were legal, ethical, or legitimate in general terms. *See* D.E. 85-3.

Instead, the government misstates counsel's attempt to answer its questions, arguing that Mr. Porter "further confuses the issue by stating in a supplemental letter that the payments are in fact behested payments." D.E. 85 at 6. A reasonable reading of Ms. Ravel's disclosure explains that she is speaking to the structure of payments at issue, which are known as behested payments, and that the payments the government describes meet that definition. She is not speaking to whether these particular payments were, in the end, legitimate, ethical, or consistent with other laws, such as those laws Mr. Porter is charged with violating. And contrary to the government's statement that "Ms. Ravel fails to even identify which state and local laws she is referring to," Ms. Ravel's disclosure discusses the laws to which she is speaking in detail and cites them in the document. *See* D.E. 85-2 ¶¶ 30-32, 40.

The government's real problem with Ms. Ravel's disclosure is not whether it says what she reviewed and what basis she has for her testimony. The government argues, for example, that Ms. Ravel "cites to nothing in the evidentiary record that she relies on, other than the Superseding Indictment, which clearly describes payments that are far from legitimate behested payments." D.E. 85 at 7. This is not a disclosure challenge; it is a substantive one. The Court should reject it.

It is well-established that an expert like Ms. Ravel may use her "knowledge and experience" to offer an opinion based on a set of facts. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000); *see also United States v. Shafi*, No. 15-CR-00582-WHO-1, 2018 WL 3159769, at *4 (N.D. Cal. June 28, 2018) (admitting expert whose "field of expertise depends more on the knowledge and experience of the expert than the methodology"). She may read the Superseding Indictment

and, based on that knowledge and experience, identify the payment structure as common and permitted in San Francisco and California—a determination that is separate and apart from whether the payments were legitimate or legal under other laws.

Importantly, as noted above and as counsel for Mr. Porter has tried to make clear, Ms. Ravel *is not* saying the payments to Lefty O'Doul's were *legitimate* behested payments. A payment made to a nonprofit at the request of a government official—i.e., a behested payment—could be for a legitimate or illegitimate purpose. That is not the point. The point is that there was no rule in San Francisco or California at the time saying that this structure of payment, which was common, was necessarily *il*legitimate, which is an inference that would incorrectly be drawn by a juror without Ms. Ravel's testimony. Rather, disclosure was required if a certain type of public official was involved. The basis for this opinion is set forth in Ms. Ravel's disclosure.

## II. Ms. Ravel's testimony is not improperly addressing witness credibility.

The government argues that "the defendant's expert testimony is designed to put a legal imprimatur on expected testimony from defendant Porter or others that defendant Porter *believed* that the payments were legal behested payments." D.E. 85 at 7 (emphasis in original). The Court should reject this argument.

First, the government overstates the law. *See United States v. Rahm*, 993 F.2d 1405, 1413-1415 (9th Cir. 1993). *Rahm*, the Ninth Circuit case on which the government relies, explains that "expert testimony to bolster or impugn the credibility of a witness is properly excluded." *Id.* at 1413. Importantly, however, and left out of the government's analysis, is the opinion's explanation of this rule's limited nature. After all, as the court in *Rahm* states, "[a]ll defense evidence necessarily supports the defendant's 'story'; that is its very purpose." *Id.* But "all evidence that supports a defendant's actual-or possible-testimony is not credibility evidence." *Id.*

Nor is the government right about the "real reason" Mr. Porter disclosed Ms. Ravel to testify. Ms. Ravel rebuts an inference that the government wants the jury to draw: That paying money to a nonprofit at a public official's request by itself shows concealment and corrupt intent. That this type of payment structure was legal and common is evidence tending to rebut that inference. This is proper circumstantial evidence, not "vouching."

For example, in *Rahm*, the Ninth Circuit held that the district court abused its discretion in excluding testimony about the defendant's perceptual difficulties to support the defendant's argument that she did not know that money in her possession was counterfeit. *Id.* at 1414. There, like here, the government's case on the defendant's mental state "was entirely circumstantial." *Id.* The Ninth Circuit explained that the government was not entitled to the "unprecedented and unfair advantage" of barring the defendant from "the right to present circumstantial evidence of lack of knowledge and to present her own inferential argument[.]" *Id.*

The same is true here. If it was common for a government official to request a corporate entity pay a nonprofit entity money, and this payment was not barred solely because of that payment structure, these facts are circumstantial evidence of a lack of corrupt intent. They are also circumstantial evidence of a lack of concealment—and so relevant regardless of the mental state element of the offense and an independent reason to admit Ms. Ravel's testimony.

### III. Ms. Ravel's testimony is not improper legal opinion.

Again, the government overstates matters in arguing that Ms. Ravel's testimony is improper legal opinion.

The government is right that "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quotation omitted). But that does not mean an expert witness may never cite and apply the law in offering an opinion. This type of expert testimony is common and appropriate.

For example, the Ninth Circuit in *Hangarter* affirmed the admission of expert testimony that referred to California statutory provisions to opine that the defendant failed to follow industry standard claims adjustment practices because this opinion was not "a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)." *Id.* In other words, "an expert may offer a legal opinion about an issue that is ancillary to the ultimate issue in the case." *AIG Ret. Servs., Inc. v. Altus Fin. S.A.*, 2011 WL 13213589, at *4 (C.D. Cal. Sept. 26, 2011) (quoting *Cotton v. City of Eureka*, 2010 WL 5154945, at *18 (N.D. Cal. Dec. 14, 2010)). *See also Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1179, 1185 (D. Alaska 2022) ("Because the legal doctrine of

unseaworthiness is not at issue in this case, Captain Cushman's opinions regarding unseaworthiness do not usurp the role of the jury in deciding the ultimate issues."); *Leeds LP v. United States*, 2010 WL 3911429, at *2 (S.D. Cal. Oct. 5, 2010) (admitting testimony "concerning legal sufficiency of documents" because it was "ancillary to the ultimate issue" and did "not improperly tell the fact-finder what result to reach").

The government itself concludes its motion that "[t]his is not a trial about the legality of behested payments." D.E. 85 at 8. That is true. It is a trial about whether Mr. Porter's approval of a payment to a nonprofit that a government official had requested his subordinate make was a concealed bribe made with corrupt intent.

Ms. Ravel's opinion that this payment structure was permitted in San Francisco and California is circumstantial evidence tending to negate the government's proposed inference about that payment structure. The other part of Ms. Ravel's opinion—the highly relevant fact that this type of payment structure was common—is admissible even if the government were right on Ms. Ravel's ability to discuss legal issues.

The government also misapprehends the law about which Ms. Ravel is testifying. In arguing that Ms. Ravel's legal conclusion is "much in dispute," the government appears to believe that Ms. Ravel is saying because a payment is a "behested payment," it is necessarily legal and permitted. As counsel has repeated several times to the government, that is not what Ms. Ravel is saying.

A behested payment describes a payment structure—one in which a government official requests an entity or a person to give money to a nonprofit. If a payment was made following that structure, under certain circumstances, it had to be disclosed. But this type of payment structure was not then prohibited by San Francisco or California. And in the case of requests by appointed department heads like Mr. Nuru, the payment did not need to be disclosed under the then-applicable behested payment rules.

The government argues that the San Francisco Controller's report—one of the documents Ms. Ravel considered—rebuts Ms. Ravel's conclusion on legality of behested payments. Ms. Ravel is permitted to offer a view different from the San Francisco Controller. But in any event, the issue the government identifies relates to gift rules—not the behested payment rules about which Ms.

Ravel is opining. *See* D.E. 85 at 10. On the behested payment issue, the Controller's report agreed with Ms. Ravel that the behested payment regulations in San Francisco did not apply to requests made by Mohammed Nuru and so reporting was not required. D.E. 85-2 at 245 ("Because the City does not require appointed department heads to file a behested payment form (Form SFEC-3610(b)), they could, as Mohammed Nuru did, encourage, ask, or direct a city contractor to donate to a non-city organization that supports the department head's department and not be required to report it.").

In the end, the government takes the statement "consistent with the State and Local law" from Ms. Ravel's report and ignores the critical modifier "*regarding behested payments*" to make it seem like Ms. Ravel is saying far more than she is. *Compare* D.E. 85 at 10 (arguing against Ms. Ravel's ability to supposedly say "that defendant's Porter's [sic] approval of the payments for the payments for these holiday parties 'were consistent with the State and Local Law.'") *with* D.E. 85-2 ¶ 41 ("The actions of Mr. Porter in approving funding to the non-profit Lefty O'Doul's Foundation for Kids to host a public employee celebration were consistent with the State and Local law *regarding behested payments*, which were common at the time, and continue to be common now throughout the state.") (emphasis added). Whether a particular behested payment was illegal, for example, because it was a bribe, is outside the scope of what Ms. Ravel is testifying about and is the province of the jury to decide.

Thus, the government's argument that it will need to call a "rebuttal legal expert who would testify that the payments were not *legal* behested payments" misses the mark. D.E. 85 at 10. The issue about which Ms. Ravel is testifying is solely whether the structure of the payments at issue—government official requesting a corporation to donate to a nonprofit—was illegal under California and San Francisco law and whether it was commonplace while Mr. Porter was working at Recology.

The government disclosed such a rebuttal witness a few days ago, on April 12, 2023. *See* Exhibit A, Expert Disclosure of Patrick A. Ford. This purported expert does not disagree with Ms. Ravel's conclusions on the behested payment rules as they existed at the time. While Mr. Ford says Ms. Ravel "misstates and misinterprets the laws governing behested payments," what he really

means is that "even though a payment may otherwise meet the definition of 'behested payment,' it could trigger *other laws* that might require further disclosure or render the payment unlawful." Exhibit A ¶¶ 11, 13 (emphasis added). This opinion does not rebut Ms. Ravel's proposed testimony—which only relates to the behested payment rules.[1]

### IV. Ms. Ravel's testimony is relevant and not *unfairly* prejudicial.

Finally, the government moves to exclude Ms. Ravel's testimony as "irrelevant and prejudicial." Under Rule 403, the Court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The relevance of Ms. Ravel's testimony is described above: it counters the inference that the government would like the jury to draw about the Lefty O'Doul's payments—that the mere structure of those payments demonstrates concealment and corrupt intent. As such, Ms. Ravel's testimony is highly relevant. These will be key issues in the trial. Without Ms. Ravel's testimony, the jury may make a factually incorrect inference regarding concealment and Mr. Porter's intent solely from the structure of the payments, which were common and not *per se* illegal, and thus reach an unjust verdict.

Conversely, Ms. Ravel's testimony is not unfairly prejudicial under Rule 403. As the Ninth Circuit has noted, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quotation omitted). Ms. Ravel explaining to the jury that the payment structure at issue in this case was a common structure during

---

[1] Based on the testimony elicited from Ms. Ravel at trial, Mr. Porter reserves the right to object to Mr. Ford's proposed testimony, which was only disclosed in rebuttal, and much of which goes well beyond what Mr. Porter will elicit from Ms. Ravel. Mr. Porter will also object to any testimony from Mr. Ford discussing Mr. Porter's intent. *See, e.g.*, Exhibit A ¶ 16 ("I believe that Mr. Porter and others took steps to make the payments from Recology resemble a behested payment to prevent others from knowing that the payments were in fact gifts to Mr. Nuru and others at DPW."). Rule 704(b) bars this type of testimony. *See* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.").

the relevant time period and why that was the case is prejudicial to the government's sought-after inference. But there is nothing *unfairly* prejudicial about this important context being relayed to the jury, who will be tasked with weighing a variety of circumstantial evidence to determine whether the payments were made through Lefty O'Doul's as a means of concealment and with corrupt intent.

Nor is the jury likely to be confused about Ms. Ravel's simple and straightforward testimony. To the extent the government believes that Ms. Ravel's direct testimony does not clarify her opinions, it will not be difficult for the government to cross examine Ms. Ravel to dispel any confusion about the breadth of those opinions (i.e., that she is not taking a position on whether the payments were otherwise legal, legitimate, or ethical in general terms or under other laws).

## CONCLUSION

The Court should deny the government's motion to exclude Ms. Ravel's testimony.

Dated:   April 14, 2023          Respectfully submitted,

BAKER & HOSTETLER LLP

By:   */s/ Robb C. Adkins*
      Robb C. Adkins

*Attorney for Defendant John Francis Porter*