STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN FRANCIS PORTER <br><br> Defendant. | Case No. CR 22-00270 WHO <br><br> **UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY** <br><br> Pretrial Conference: May 2, 2023, 2:00 p.m. <br> Dept: Courtroom 2 – 17th Floor <br> Judge: Hon. William H. Orrick |

i

## I. INTRODUCTION

Defendant Porter seeks to call an expert witness to testify as to $55,000 in payments approved by the defendant to a non-profit, the Lefty O'Doul's Foundation for Kids. The government alleges that these were bribes to Mohammed Nuru, then head of the San Francisco Department of Public Works, to pay for lavish holiday parties in return for Nuru using his influence to help Recology.

Defendant's expert disclosure report stated that his expert would testify that these Lefty O'Doul's payments "resembled" behested payments, a type of payment made, generally to a non-profit, at the request of a public official, and that the actions of the defendant "in approving funding to the non-profit Lefty O'Doul's Foundation for Kids to host a public employee celebration were consistent with the State and Local law regarding behested payments."

The government filed a motion to exclude this testimony, arguing that it allows an expert to state improper legal conclusions, it would improperly boost the defendant's credibility, and is irrelevant and misleading. Defendant filed an Opposition, but has shifted his position. Now, he states that his expert "is not testifying that the payments to Lefty O'Doul's for the DPW holiday party were legal in general terms, or even that they were legitimate or ethical." *Dkt. 91*. Rather, defendant's expert will only testify to a new, vague, legal conclusion, "that there was nothing *per se* illegal about an entity like Recology paying money to a nonprofit organization at the request of a public official like Mohammed Nuru." *Id.*

Defendant Porter's expert should be excluded from testifying. She is improperly testifying as to her (shifting) legal conclusions about the bribe payments. She fails to provide any legal support for her conclusions, and she misrepresents how the Lefty O'Doul's payments were structured and made. Her legal conclusions are also very much disputed. Her testimony, which would be presented with the imprimatur of an "expert" risks improperly influencing the jury as to the law in this case. It would be confusing and misleading, and unfairly prejudicial to the government.

The government has noticed a rebuttal expert, the current Director of Enforcement at the San Francisco Ethics Commission. If defendant's expert testifies, he will testify in rebuttal that the defendant's expert testimony is misleading and incomplete, and that in fact, the Lefty O'Doul's payment were not legal, and likely violated city and state ethics rules on gifts to public officials, restricted sources, and San Francisco's Sunshine ordinance.

1

## II. FACTS

A key (but not exclusive) part of the government's case against defendant Porter is that he approved three payments from Recology, totaling $55,000, purportedly to a non-profit, the Lefty O'Doul's Foundation for Kids, labeled as "holiday donations." *Dkt.* 67 (Superseding Indictment). The government alleges that these payments were in fact bribes intended to influence Mohammed Nuru. *Id*. The evidence at trial will prove that the funds paid to Lefty O'Doul's were used by Nuru to pay for elaborate holiday parties he hosted for friends, political supporters, and select DPW employees, not as a "holiday donation" to a non-profit for underprivileged children. *Id*. The evidence will further show that defendant Porter knew the true purpose of the payments, and purposefully concealed and misrepresented them in order to disguise what they were - improper bribe payments intending to influence Nuru, Recology's regulator, a public official who held enormous sway over the company's monopoly waste management business in San Francisco. *Id.*

Defendant Porter's proposed expert testimony regarding these Lefty O'Doul's payments has shifted significantly over time. Defendant's initial expert report made two, vague, assertions as to what their expert would testify to relating to the Lefty O'Doul's payments; 1) that the Lefty O'Doul's' alleged bribe "resembles what is known as a behested payment;" and, 2) that "the actions of Mr. Porter in approving funding to the non-profit Lefty O'Doul's Foundation for Kids to hose a public employee celebration were consistent with the State and Local law regarding behested payments." *See Declaration of David J .Ward in Support of Government's Reply,* Ex. A (Def. Expert Report).

But in his Opposition to the government's motion to exclude, defendant Porter pivots, now claiming that his expert will not testify that the Lefty O'Doul's payments were legal "in general terms," or "even that they were legitimate or ethical." *Dkt. 91* (Def. Opp. to Motion to Exclude). Rather, defendant's expert will now say that "there is nothing illegal *per se* about an entity like Recology paying money to a non-profit organization at the request of a public official like Mohammed Nuru." *Id.*

The government has noticed its own rebuttal expert that the government would expect to call if Ms. Ravel is allowed to testify as an expert. The government's expert, Patrick Ford, is the Director of Enforcement for the San Francisco Ethics Commission. *See Ward Decl.* Ex. B (Rebuttal Expert Report). Mr. Ford, an attorney, is an expert in the use and misuse of behested payments in San

2

Francisco, as well as the myriad other laws and regulations that govern gift rules and other payments to elected and appointed officials by those with business before them. *Id.*

Mr. Ford is expected to testify in rebuttal that defense expert Ravel "misstates and misinterprets the rules governing behested payments, and ignores other state and local rules, such as gift rules, that also govern under what circumstances it is proper and legal for a corporation and its executives to provide funding to be used by a public official that oversees and regulates that company." *Id.* ¶ 10. Mr. Ford will further testify that, in his expert opinion, the payments to the Lefty O'Doul's Foundation for Kids paid by Recology as alleged in the Indictment are not genuine behested payments. Rather, Mr. Ford concludes that "they appear to be sham behested payments: the general appearance of a behested payment was given to the payments to disguise their true nature, which was purely as gifts to government officials." *Id.*

### III.    ARGUMENT

#### a.    Defendant's Expert Proposes to Testify to Legal Conclusions

Defendant Porter's expert, Ann Ravel is an accomplished lawyer, and expert in campaign finance, election, conflicts, and government ethics laws. She is a former Deputy Assistant Attorney General in the Civil Division at the U.S. Department of Justice. Her proposed testimony goes straight to her legal conclusions, as defendant's Opposition makes clear. "Ms. Ravel's testimony is, only, that there was nothing *per se* illegal about an entity like Recology paying money to a nonprofit organization at the request of a public official like Mohammed Nuru, and that payments structured in this manner happened and continue to happen all the time." *Dkt. 91,* pg. 2 (italics in original).

The danger from this legal testimony is clear. If believed, the jury could be left with the impression, delivered by an illustrious legal expert, that there was nothing illegal about Recology – and defendant Porter – making and approving payments to the Lefty O'Doul's Foundation at the request of Nuru. But that is not the law, nor the facts of this case. It is not a defense to honest services fraud or bribery that a payment was made to a non-profit. In fact, there are many criminal cases of bribe payments made through non-profits. *See Ward Decl.,* Ex. B (Rebuttal Expert Report) ¶ 14 ("in 2016, State Sen. Ron Calderon pleaded guilty to honest services fraud after among other things, he solicited a $25,000 payment from an undercover agent to a nonprofit called Californians for Diversity.").

This is exactly why Courts as a general rule to not allow legal experts to testify as to their legal conclusions. The reasoning behind this prohibition is that "when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017), *quoting United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

Defendant cites to several cases where experts were allowed to testify as to ancillary legal issues. *See Dkt. 91* (Def.'s Opp.), pp. 5-6. But in each of those cases, the testimony that was admitted was limited, and truly went to an ancillary issue. For example, defendant cites to *Garcia v. Vitus*. 605 F. Supp. 3d 1179, 1185 (D. Alaska 2022). But in *Vitus*, the Court did in fact exclude expert testimony as to legal issues related to negligence and vicarious liability. *Id.* What the Court in *Vitus* allowed was limited, ancillary, testimony as to whether the captain of the ship could be considered on duty, and whether the ship was seaworthy – issues that were ancillary to the central claims in that case. *Id.* It is the same in *Leeds LP v. United States,* another case cited by defendant. 2010 WL 3911429 at *2 (S.D. Cal. 2010). In *Leeds,* the Court allowed testimony as to whether certain documents were legally sufficient, but only because that issue was ancillary to the charges and facts in the case. *Id.*

That is not the case here. Whether or not the payments defendant Porter approved were legal or not is the central legal issue in this case. To the extent Ms. Ravel proposes to testify that the Lefty O'Doul's payments were legal *per se* or not, that is a legal conclusion that is central to this case. Whether Porter's actions in approving payments to Nuru, funneled through a non-profit, violate the charged offenses is solely for the jury to decide, based on instruction from the Court. It should not be influenced in any way by testimony from a former high-ranking DOJ attorney granted the imprimatur of a legal expert.

Defendant attempts to elide the fact that his expert proposes to testify as to her legal conclusions about the charge payments in this case by now stating in his opposition that there "was nothing per se illegal about an entity like Recology paying money to a nonprofit organization." *Ward Decl.* Ex. A (Def. Expert Report). But at its heart, this is testimony about the Lefty O'Doul's payments that the government alleges were bribes.

  **b.**  **Testimony as to Behested Payments Generally is Irrelevant**

Ms. Ravel also seeks to testify as to behested payments generally, and the fact that certain payments were common at the time. All of this testimony is irrelevant to the charges in this case, and unduly prejudicial. Defendant presents no evidence that any of the general behested payments Ms. Ravel proposes to discuss have any relation to defendant Porter. For example, defendant's expert report cites to $22 million in payments to a charter school founded by then Oakland Mayor Jerry Brown, and $535,000 in behested payments raised by then Secretary of State (now U.S. Senator) Alex Padilla for FundaMental Change, a non-profit that seeks to increase awareness of mental health conditions. *Id.* Ex A, ¶¶ 35, 36. While these may or may not be legitimate payments, they have no relevance to this case. There is no evidence defendant Porter contributed to these or any other behested payments listed by defendant's expert, and defendant cites to none. Moreover, defendant has presented no evidence that he received legal or other guidance that the Lefty O'Doul's payments were legitimate behested payments.

Expert testimony about unrelated behested payments, unconnected to his case, are irrelevant and unnecessary. They cannot aid the jury "to understand the evidence or determine a fact in issue." *Fed. R. Evid. 702(a)*. This testimony should be excluded.

  **c.**  **Defendant's Expert Testimony Will Require Expert Rebuttal Testimony**

Were to Court to accept defendant's argument that Ms. Ravel's testimony is not improper legal expert testimony, the government must then be allowed to present a rebuttal expert. Rebuttal testimony is proper as long as it addresses the same subject matter that the initial expert addresses. *See Perez v. State Farm Mut. Auto Ins. Co.* 2011 WL 86001203 (N.D. Cal. 2011). Courts "have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter." *Kirola v. City & County. of S.F.*, 2010 WL 373817, at *2 (N.D. Cal. 2010). *See also United States v. Heine*, 2017 WL 3448840 (D. Or. 2017) ("[t]o the extent that the government's rebuttal expert testimony simply and strictly rebuts testimony presented by a defendant's expert witness, such rebuttal testimony is not improper.").

Here, the government timely notified defendant Porter that if Ms. Ravel testifies, the government reserves the right to call its rebuttal expert, Patrick Ford.[1] Mr. Ford is the Director of Enforcement at the

---

[1] The parties Stipulated Pretrial Order states that the government shall disclose any rebuttal expert by April 10, 2023. Defendant stipulated to a two-day extension of this deadline, to April 12, 2023, and the government timely and properly disclosed Mr. Ford as a rebuttal expert on that date,

San Francisco Ethics Commission, and as such, is intimately familiar with behested payments, as well as with San Francisco gift laws, restricted source rules, and the San Francisco Sunshine Ordinance. *See Ward Decl.,* Ex. B (Rebuttal Expert Report). The government will establish a proper foundation for the Court to find that Mr. Ford, like Ms. Ravel, is also an expert in law and policy regarding campaign finance, conflicts of interest, and government ethics.

Mr. Ford's proposed expert's proposed testimony is aimed squarely at, and will be limited to, rebutting defense expert's assertions regarding the Lefty O'Doul's payments approved by defendant Porter, as well as behested payments in general. *See Id.* Mr. Ford states as much in his expert report: "Ms. Ravel misstates and misinterprets the rules governing behested payments, and ignores other state and local rules, such as gift rules, that also govern under what circumstances it is proper and legal for a corporation and its executives to provide funding to be used by a public official that that oversees and regulates that company. *Id.*

Specifically, Ms. Ravel proposes to testify that behested payments such as the payments to the Lefty O'Doul's Foundation "were common at the time, and continue to be common now throughout the State. *See Ward Decl.,* Ex. A (Ravel Expert Report). Mr. Ford's testimony is necessary and proper to rebut this unsupported and disputed assertion. As Mr. Ford proposes to testify:

> "While in the past, genuine behested payments to support public services have been made regularly, it is not the case that payments such as those made through the Lefty O'Doul's Foundation as alleged in the indictment were common or proper. Legitimate behested payments are not commonly (or properly) directed by local government officials to a charitable organization to that the money can later be secretly redirected away from the charity to fund a party for the local government official. This practice has not been widely documented in behested payment disclosures and few documented instances are known. Some of those that are known have found to be unlawful, as described below. I believe that this practice is not common because of the deception that is involved."

*See Ward Decl.* Ex. B. (Rebuttal Expert Report).

Next, Ms. Ravel proposes to testify that, *in general,* behested payments were common and proper at the time of the charged conspiracy. *See e.g., Ward Decl.,* Ex. A (Ravel Expert Report) ⁋ 18 ("behested payments were not prohibited at either the state or local level during the relevant time period."); ⁋ 29 ("a behested payment is not considered a gift to a public official under the PRA

---

providing defendant with Mr. Ford's resume, Expert Report, and collected publications.

1  (California's Political Reform Act)"); ¶ 30 ("The PRA permits behested payments and regulates them.").
2  This is misleading at best, and as the government's rebuttal expert proposes to testify in rebuttal, not all
3  payments that might otherwise qualify as behested payments, are legal. *Ward Decl.,* Ex. B (Rebuttal
4  Expert Report) ("[m]eeting the definition of "behested payment" only means that a payment becomes
5  subject to additional disclosure requirements if made at the behest of certain government officials.").

6  The government's rebuttal expert was timely noticed, and has relevant testimony that will be
7  solely directed at rebutting the defendant's expert testimony. As such, it is admissible. If Ms. Ravel
8  testifies, Mr. Ford should likewise be permitted to testify.

### d.  Defendant Cannot Sidestep Expert Exclusion Rules With Claim That Defendant Cannot Tell "His Side" of the Story

Defendant Porter next argues in his opposition that expert testimony is crucial to rebut what he claims will be the government's assertion as to the Lefty O'Doul's payments. Defendant's opposition states that "without Ms. Ravel's explanation, the jury will be left with only the government's side of the story and may draw the factually incorrect inference that a corporate entity paying a nonprofit at the request of a city official was per se improper and a reason to find concealment and corrupt intent." *Dkt. 91*. Defendant misstates and mischaracterizes the evidence, and misconstrues what the government's allegations and claims are. The government is not alleging that payments from an unidentified corporate entity to an unidentified non-profit are per se improper. The government alleges only that the specific Lefty O'Doul's payments alleged as bribes in the indictment are such, and the way those specific payments were structured would allow the jury to find concealment and corrupt intent. As the Superseding Indictment makes clear, the government alleges that the bribe payments to Nuru were concealed and misrepresented as payments to Lefty O'Doul's when in fact they were bribe payments made to Mohammed Nuru, Recology's regulator, to pay for his lavish holiday parties, and they were misrepresented to conceal their true (illegal) purpose, which was as a bribe intended to influence Nuru to act in Recology's favor. *Dkt 67,* ¶ 11.

//
//
//

## IV.   CONCLUSION

The defendant is free to challenge the government's allegations as to whether defendant Porter violated the honest services fraud, bribery, and conspiracy statutes when, among other payments, he approved $55,000 in payments for Nuru's holiday parties by authorizing payments through the Lefty O'Doul's Foundation for Kids.  What defendant should not be allowed to do is to use a legal expert to provide her legal opinion as to the legality of those payments.

STEPANIE M. HINDS
Attorney For the United States

Dated: April 21, 2023

__/s/ David J. Ward_____
DAVID J. WARD
ILHAM A. HOSSEINI
Assistant United States Attorneys