# Exhibit B

STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-00270 WHO |
| Plaintiff, | **REBUTTAL EXPERT REPORT OF PATRICK FORD** |
| v. | |
| JOHN FRANCIS PORTER | |
| Defendant. | |

    I am voluntarily appearing on behalf of the United States in the above-captioned matter. I submit this expert report on Fed. R. Crim P. 16 regarding my proposed testimony as a rebuttal witness.

**I. Qualifications**

    1. My opinions are based on years of experience, primarily in San Francisco, California, working on issues of law and government ethics.

    2. I am currently the Director of Enforcement for the San Francisco Ethics Commission. The Ethics Commission is a nonpartisan regulatory agency that administers laws concerning government ethics, campaign finance, lobbying, and other related subject matters. The Commission was created by the

1

voters through the citizens' initiative process in 1993. The Enforcement Division that I oversee investigates potential violations of these laws and, where violations are found, pursues penalties before the five-member Ethics Commission. My work overseeing the Commission's enforcement operations requires me to have a thorough understanding of state and local laws that pertain to government ethics.

3. Prior to assuming my current role, I served as the Ethics Commission's Senior Policy and Legislative Affairs Counsel. In this capacity I was responsible for leading the Commission's policy operations, the process of evaluating how well current laws and programs are achieving their intended purposes and designing and implementing improvements wherever necessary. In this role I led a major project to review and analyze San Francisco's ethics laws beginning in 2020 after multiple City officials were charged with federal crimes related to ethics and corruption. This project required me to thoroughly evaluate all relevant state and local laws concerning behested payments, gifts, bribery, conflicts of interest, and related matters and to identify improvements to those laws. Through this project, I played a leading role in designing and writing sections of San Francisco's current behested payment laws.

4. As part of my duties with the San Francisco Ethics Commission's Policy Division, I was also responsible for providing advice to City officials about how San Francisco and California ethics laws, including those governing gifts and behested payments, apply to specific situations. This work required me to be fully familiar with all applicable laws, analyze how they apply to unique scenarios occurring in the City, and to explain to City officials what they could and could not do under the law.

5. I am a member of the Program Committee of the Council on Governmental Ethics Laws (COGEL), an international organization that connects government regulators, NGOs, and ethics attorneys to discuss current trends in government ethics laws. I have served as a panelist at COGEL's annual conferences discussing behested payments and pay-to-play laws. As a member of the Program Committee, I participate in planning the content for the annual conference and arranging for experts to participate as panelists, which requires me to be familiar with emerging issues and national experts in the field.

6. Prior to joining the staff off the San Francisco Ethics Commission, I practiced corporate law as an associate at a global law firm.

2

7. I received my law degree from the University of the Pacific McGeorge School of Law in Sacramento, California. I graduated first in my class, received Valedictorian Honors, was named to the Order of the Coif, the Traynor Honor Society, and was named to the Dean's Honor List all three years of law school. I received a full tuition scholarship for academic performance.

8. During law school I was a member of the McGeorge Law Review. In this role I published an article analyzing changes to California law to address the problem of undisclosed contributions, or "dark money," in California elections. I was also a member of the California Initiative Review, a publication that analyzes measures appearing on the California ballot. I published an article analyzing California's initiative and referendum process and comparing it to similar processes around the world.

9. I have a BA in Philosophy from the University of California, Santa Barbara.

II. **Summary of Opinions**

10. I have reviewed the Superseding Indictment, the Indictment and the Complaint in the above-captioned case.

11. I have reviewed the Expert Report of Ann Ravel, as well as the supporting documentation included in that report. Based on my years of experience with the San Francisco Ethics Commission specifically addressing payments made to elected and appointed local officials, I believe that Ms. Ravel misstates and misinterprets the rules governing behested payments, and ignores other state and local rules, such as gift rules, that also govern under what circumstances it is proper and legal for a corporation and its executives to provide funding to be used by a public official that oversees and regulates that company.

12. Ms. Ravel states that "a behested payment is not considered a gift to a public official under the PRA." (Ravel Report ¶ 27). In fact, the PRA does anticipate that a payment that may otherwise meet the definition of "behested payment" may confer a personal benefit on a public official and thus may constitute a gift to that official, resulting in additional public disclosure and limitations, including a ban on such payments in certain circumstances. (See Cal. Gov. Code § 82004.5(c)(1)). Under the PRA, a "gift" is " any payment that confers a personal benefit on the recipient, to the extent that consideration of equal or greater value is not received ...." (*Id.* at § 82028). Many government officials need to report gifts on the Form 700 Statement of Economic Interests, are subject to an annual limit on gifts from a

3

single source, and, under San Francisco Law, cannot accept gifts from persons who do business with their City department or who have attempted to influence their official actions in the last twelve months.[1]

13. This is important because, even though a payment may otherwise meet the definition of "behested payment," it could trigger other laws that might require further disclosure or render the payment unlawful. In other words, meeting the definition of "behested payment" does not alone mean that a payment is lawful: additional laws also apply. These include rules regarding gifts and bribery. In other words, behested payment disclosure laws operate in addition to gift and bribery rules, and behested payments are not exempt from being considered gifts or bribes.

14. For example, in 2016, State Senator Ron Calderon pleaded guilty to honest services fraud after, among other things, he solicited a $25,000 payment from an undercover agent to a nonprofit called Californians for Diversity in exchange for supporting certain state legislation. This may have appeared to be a behested payment because Calderon asked someone to make a payment that was ostensibly for charitable purposes. But in reality, Calderon and his brother controlled Californians for Diversity, and they used the money for their own personal purposes. This behested payment thus constituted a bribe and was therefore unlawful.[2]

15. Additionally, I do not believe that, based on the allegations in the Superseding Indictment, that the four payments to the Lefty O'Doul's Foundation for Kids paid by Recology in 2016, 2017, 2018, and 2019, are genuine behested payments. Instead, they appear to be sham behested payments: the general appearance of a behested payment was given to the payments to disguise their true nature, which was purely as gifts to government officials. A behested payment must be made for a legitimate charitable, legislative, or government purpose. Based on the charges in the Superseding Indictment, it does not appear that these payments were made for any genuine charitable, legislative, or governmental

---

[1] *See* Cal. Gov. Code §§ 87207, 89503; San Francisco Campaign & Gov. Conduct Code § 3.216(b).

[2] U.S. Attorney's Office, Central District of California, *Former State Senator Ronald Calderon Agrees to Plead Guilty to Federal Corruption Charge; Admits Receiving Tens of Thousands of Dollars in Bribes* (June 13, 2016), *available at* https://www.justice.gov/usao-cdca/pr/former-state-senator-ronald-calderon-agrees-plead-guilty-federal-corruption-charge.

purpose. Rather, these payments were made for the purpose of paying for a holiday party for Mr. Nuru and other City officials. Although the payments were made through a nonprofit, the Lefty O'Doul's Foundation for Kids, this does not make the payments truly charitable in nature. Instead, it appears that the payments were made through the Lefty O'Doul's Foundation for Kids to make them appear to be charitable payments when in fact they were not. If the purpose of the payments was to fund holiday parties for City officials, this would constitute a personal benefit that would qualify the payments as gifts.

16. Behested payments are generally understood to support operations that serve the community, such as services for indigent persons or the rehabilitation of public parks. Although the payments from Recology may meet the definition of "behested payment" merely because of the fact that they were made at Mr. Nuru's request, this does not mean the payments were lawful or legitimate. Meeting the definition of "behested payment" only means that a payment becomes subject to additional disclosure requirements if made at the behest of certain government officials. Based on the facts of this case, I believe that Mr. Porter and others took steps to make the payments from Recology resemble a behested payment to prevent others from knowing that the payments were in fact gifts to Mr. Nuru and others at DPW.

17. Additionally, even if f the purpose of the payments in question was to support governmental operations of the Department of Public Works, which it was not, the payments would still have constituted gifts to the department, which are subject to additional disclosure. San Francisco law requires public disclosure of gifts to City departments, and no such disclosure appears to have been made in connection with the payments from Recology. The San Francisco Sunshine Ordinance states: "No official or employee or agent of the City shall accept, allow to be collected, or direct or influence the spending of, any money, or any goods or services worth more than one hundred dollars in aggregate, for the purpose of carrying out or assisting any City function unless the amount and source of all such funds is disclosed as a public record and made available on the website for the department to which the funds are directed."[3] Because no such disclosures were made for the payments from Recology, this

---

[3] San Francisco Admin. Code § 67.29-6.

makes it less likely that the payments were intended as legitimate behested payments to support the Department of Public Works.

18. Further, even if these payments were to meet the definition of "behested payments," Ms. Ravel's report is misleading in stating that "[t]he actions of Mr. Porter in approving funding to the non-profit Lefty O'Doul's Foundation for Kids to host a public employee celebration were consistent with the State and Local law regarding behested payments,...." Neither California nor San Francisco laws in effect at the times relevant to this case regulated behested payments made at the behest of employees of the City and County of San Francisco. It is thus misleading to state that the payments at issue in this case complied with behested payment laws when in fact no such laws applied to the conduct in question.

19. Additionally, insofar as Ms. Ravel's report attests that behested payments similar to those approved by Mr. Porter "were common at the time, and continue to be common now throughout the State," this statement is misleading. While in the past, genuine behested payments to support public service have been made regularly, it is not the case that payments such as those made through the Lefty O'Doul's Foundation as alleged in the indictment were common or proper. Legitimate behested payments are not commonly (or properly) directed by local government officials to a charitable organization so that the money can later be secretly redirected away from the charity to fund a party for the local government official. This practice has not been widely documented in behested payment disclosures and few documented instances are known. Some of those that are known have been found to be unlawful, as described below. I believe that this practice is not common because of the deception that is involved.

20. Finally, Ms. Ravel fails to note that that Recology is a "restricted source" for all employees of the Department of Public Works because of its contracts and other dealings with the department, such as the refuse rate setting process. As such, Recology is prohibited from providing any gifts to department officials, subject to certain exceptions.[4] This means that Recology was largely prohibited at the time of the payments from giving gifts to Mr. Nuru or others working for DPW. The fact that the payments in question ended up providing direct personal benefits to Mr. Nuru and other DPW

---

[4] *See* San Francisco Campaign & Gov. Conduct Code § 3.216(b).

employees means that the payments were not intended as genuine behested payments to support public services. Because Recology was prohibited from providing gifts directly to DPW employees, the company appears to have used an undisclosed intermediary organization to transmit the payments in way that would leave the appearance that the payments were behested payment for a charitable purpose.

21. Ms. Ravel cites to other political figures in the state that have engaged in what she claims are legitimate behested payments. But, Ms. Ravel chooses to ignore many other cases involving government officials and entities with interests before those officials in which the rules regarding behested payments and charitable contributions were abused. In addition to the Calderon case discussed above, behested payments were involved in the racketeering scheme to which former Los Angeles City Councilmember Jose Huizar pleaded guilty in January of this year. Mr. Huizar solicited payments from developers and others with interests before the City Council. In exchange for these payments, Mr. Huizar used his official position to make favorable governmental decisions affecting those entities and individuals.[5]

22. Similarly, Former Los Angeles City Councilmember Mark Ridley-Thomas was convicted of bribery and fraud on March 30, 2023, after, among other things, Mr. Ridley-Thomas conspired with a dean at the University of Southern California to disguise an illegal $100,000 payment from Mr. Ridley-Thomas' campaign funds to a nonprofit operated by Mr. Ridley-Thomas' son. By disguising the payment as a charitable donation to the university, Mr. Ridley-Thomas was able to evade the rules governing the use of campaign funds. In exchange for the university funneling the money, Mr. Ridley-Thomas used his official position to support three governmental actions that the university desired. These cases help illustrate that, even though a payment might constitute a behested payment or a charitable contribution on its face, the payment can also constitute an unlawful gift or bribe.

23. Ms. Ravel's proposed testimony also misstates and misconstrues the San Francisco Office of the Controller's study of the use of non-profit organizations by City departments. (See Ravel Report

---

[5] *See* U.S. Attorney's Office, Central District of California, *Former Los Angeles City Politician José Huizar Pleads Guilty to Racketeering Conspiracy and Tax Evasion Charges*, available at https://www.justice.gov/usao-cdca/pr/former-los-angeles-city-politician-jose-huizar-pleads-guilty-racketeering-conspiracy.

7

¶¶ 26—28.) Ms. Ravel's report states that "[t]he Controller's report focuses on the Parks Alliance and the lack of effective controls at that organization,…." In fact, the report focuses primarily on the serious danger of pay-to-play when City officials request payments to non-City organizations from those with official matters before the City. The report states that "a non-city organization can serve as an intermediary between the City and a contractor or potential contractor, wherein the contractor donates money to influence (or try to influence) a city department to grant, extend, or augment a city contract, subcontract, or grant. Similarly, a non-city organization can also serve as an intermediary between the City and a building permit applicant, wherein the applicant donates money to influence (or try to influence) the permit approval process."[6] Based on the facts of this case, I believe that the same problem identified by the Controller in this report is what Mr. Porter, Mr. Nuru, and others engaged in when Recology made payments to the Lefty O'Doul's Foundation for Kids that were in fact intended to personally benefit Mr. Nuru.

24. Additionally, Ms. Ravel misrepresents the findings of the Controller's report regarding nonprofits that interact with City government. Specifically, Ms. Ravel conflates nonprofits that provide public services to the community with that those that exist to provide financial support to City departments. Nonprofits that provide public services are often called community based organizations (CBOs) or service provider nonprofits. "Friends of" organizations, on the other hand, typically do not provide services to the public but instead exist to provide additional financial support to City departments beyond what is provided for in the department's City budget. This distinction is important because when money is directed to a nonprofit for the purpose of providing services to the public, that money should not instead be used to provide personal benefits to City officials. The Lefty O'Doul's Foundation for Kids was not a "friends of" organization that existed to provide financial support to the Department of Public Works; it existed to provide services related to youth baseball activities to the community. When Recology made payments to the foundation, the money should have been used for

---

[6] City & County of San Francisco Office of the Controller, *Public Integrity Review Preliminary Assessment: Gifts to Departments Through Non-City Organizations Lack Transparency and Create "Pay-to-Play" Risk* (Sept. 24, 2021) p. 29, *available at* https://sfcontroller.org/sites/default/files/Documents/Auditing/Public%20Integrity%20Review%20-%20Non-City%20Organizations%2009.24.20.pdf.

8

youth baseball activities. It was not normal or appropriate for the funds to be used instead to provide personal benefits to Mr. Nuru and others at DPW.

25.     Ms. Ravel cites numerous examples of what she refers to as behested payments which differ materially from the payments defendant Porter approved to the Lefty O'Doul's Foundation for Kids. Ms. Ravel states that "these examples demonstrate how significant behested payments are to non-profit organizations in California. Moreover, as the examples show, nonprofits frequently partner with elected officials to further their causes"  However, in this case, the payments made to the Lefty O'Doul's Foundation did not go to further that organization's causes, but were rather diverted to pay for Mohammed Nuru's holiday parties, which was a private gain to Mr. Nuru, and not a "donation" to further the foundation's causes. Ms. Ravel's report fails to acknowledge this difference or to provide any explanation of how the Lefty O'Doul's payments could be legitimate behested payments when the funds did not go to a charitable organization, but rather were improper personal gifts from a restricted source.

Dated: April 12, 2023

PATRICK FORD