STEPHANIE M. HINDS (CABN 154284)
Attorney for the United States

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
ILHAM A. HOSSEINI (CABN 256274)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-22-00270-WHO |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE** |
| v. | |
| JOHN FRANCIS PORTER, | Judge: Hon. William H. Orrick |
| Defendant. | Pretrial Conf.: May 2, 2023 |
| | Time: 2:00 p.m. |
| | Trial Date: May 30, 2023 |

## I. INTRODUCTION

The United States respectfully submits the following oppositions to defendant's Motions *in Limine*: (1) the Court should allow the government to question witnesses about Recology's Deferred Prosecution Agreement; (2) the Court should allow the government to impeach defendant Porter if he testifies as to the facts and circumstances related to his firing from Recology for misconduct; (3) the Court should deny defendant's motion to exclude a document the government intends to introduce because it is non-privileged and is a relevant communication from the defendant; and (4) the Court should deny defendant's motion to exclude relevant evidence of corrupt payments that defendant Porter and others approved to pay for internships for the son of Mohammed Nuru, Recology's regulator. The payments are evidence of the honest services fraud conspiracy charged in the Superseding Indictment.

The government respectfully requests the opportunity to supplement these motions *in limine* if additional legal issues requiring the Court's intervention arise.

## II. MOTIONS IN LIMINE

### A. Opposition to Motion in Limine No. 1: The Court should Admit Evidence of Recology Inc.'s Deferred Prosecution Agreement.

The government does not seek to admit Recology's Deferred Prosecution Agreement into evidence in its case in chief. However, the Court should allow the government to question witnesses about the fact that Recology has entered into a Deferred Prosecution Agreement (DPA). Recology (and its subsidiaries) were charged by Information with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349. *See United States v. Recology, 21-CR-356 WHO, Dkt. 1.* (Information). The Information names Nuru, Porter, Giusti, and another Recology executive and describes "a stream of payments and benefits from SF Recology Group to Nuru." *Id.* at 3. On September 9, 2021, the United States and Recology (and its subsidiaries) entered into a DPA. *See Recology, Dkt 2* (Deferred Prosecution Agreement). As part of that Agreement, Recology "shall cooperate fully with the government in any and all matters relating to the conduct described in this Agreement." *See Id.* at 4. The DPA is relevant in this case because it explains Recology's posture at this trial – many of the

witnesses will be current or former Recology employees. Additionally, it is likely that Porter's defense will be that others at Recology had conducted business with DPW similar to Porter, so he followed their lead. Thus, it is important for the jury to know that Recology as a corporate entity was charged for the conduct of several of its employees, in addition to Porter, for how they conducted business with DPW. Recology's DPA is broader than just Porter's involvement; it encapsulates another Recology executive as well as Giusti, who reported to Porter during the latter part of the offense, in how they dealt with DPW. To be clear, the government is not seeking to admit the actual DPA itself, but to elicit testimony from witnesses that Recology entered into such an agreement for the conduct of its employees.

**B. Opposition to Motion in Limine No. 2: The Court Should Allow the Government to Cross-Examine Defendant Porter on the Circumstances Surrounding his Firing, including Concealment of the Rate Error in Recology's Application to the City for an Increase in its Rates.**

On January 27, 2021, defendant Porter was terminated from his job at Recology for misconduct. Specifically, Recology fired Porter because he concealed from the company the size and extent of an error that resulted in residents of San Francisco being overcharged by Recology by almost $100 million. The rate error originally occurred during Recology's 2017 application to the City of San Francisco for an increase in the rates it could charge residents and business, a process that defendant Porter oversaw. By defendant's own admission, Porter became aware of the rate error in 2018, but it was not made public until 2021. *See Dkt. 89* (Def.'s Motions in Limine). Porter was fired for concealing the rate error from senior Recology executives for two years. After senior Recology executives and City officials finally discovered the true size of the rate error, the City of San Francisco filed a complaint against Recology, and Recology agreed to a settlement with the City that included a staggering $94.25 million restitution payment to the residents of San Francisco, along with an additional $7 million settlement payment. *See Dkt. 89,* Adkins Decl., Ex. I

If defendant Porter testifies, the government is entitled to cross-examine him on the facts and circumstances surrounding his termination. *See Fed. R. Evid. 608(b).* Under Rule 608, "the Court, may on cross examination, allowing specific instances of conduct to be inquired into if they are probative of

1  the character for truthfulness or untruthfulness of . . . the witness." *Fed. R. Evid. 608(b)*. Under Rule

2  608(b), a party may ask a witness about specific conduct if determined by the Court to be probative of

3  the witness's credibility. Generally, the impeaching party may not go beyond questions to a witness,

4  and may not seek to admit extrinsic evidence simply to impeach the witness. *See United States v.*

5  *Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009) (noting that Rule 608(b) "generally prohibits the

6  introduction of extrinsic evidence to attack the credibility of a witness"). However, while Rule 608(b)

7  generally prohibits the use of extrinsic evidence for impeachment, there is a limited exception for

8  impeachment that involves "impeachment by contradiction." As the Ninth Circuit explained, a Court has

9  discretion to admit extrinsic evidence to contradict false testimony by a witness:

> Impeachment by contradiction "permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir.1999). Impeachment by contradiction is an exception to the collateral fact rule embodied in Federal Rule of Evidence 608(b), which generally prohibits the introduction of extrinsic evidence to attack the credibility of a witness. When impeaching by contradiction, the fact to be contradicted must be material. 4 Joseph M. Mclaughlin, Weinstein's Federal Evidence, § 608.20[3] [a], at 608-38 (2d ed.1999).
>
> Impeachment by contradiction is permitted to prevent witnesses from engaging in perjury and then using the prohibition on collateral fact testimony to conceal the perjury. *Castillo*, 181 F.3d at 1132-33 (citing 2A Charles A. Wright & Victor J. Gold, Federal Practice & Procedure, § 6119, at 116-17 (1993)). We have also recognized that, when making the decision whether to permit impeachment by contradiction, trial courts should consider the Rule 403 factors, such as confusion of the jury or the cumulative nature of the evidence. *See id.* at 1133; 4 McLaughlin, § 607.06[3][b], at 607-79.
>
> Impeachment by contradiction comes with an important limitation. In general, a witness may be impeached by contradiction only if "the statements in issue [have] been volunteered on *direct* examination." *United States v. Green*, 648 F.2d 587, 596 n. 12 (9th Cir.1981) (emphasis added). In *Castillo*, we read our cases to hold that "extrinsic evidence may not be admitted to impeach testimony invited by questions posed during cross-examination." 181 F.3d at 1133. We explained that when the testimony to be contradicted is offered under cross-examination, impeachment by contradiction is far less likely to achieve its intended purpose of rooting out perjury because "opposing counsel may manipulate questions to trap an unwary witness into 'volunteering' statements on cross-examination" and because "it is often difficult to determine whether testimony is invited or whether it is volunteered on cross-examination." *Id.* at 1133-34.

*Kincaid-Chauncey*, 556 F.3d at 932 (emphasis in original).

1   Here, the fact and circumstances of Porter's firing go directly to his credibility for truthfulness
2   and honesty.  Recology fired Porter because in their view, he was not truthful to them about the size and
3   scope of the rate error, an error that occurred during a rate application process overseen by Porter.
4   Defendant Porter claims that he told others at Recology about the size and scope of the rate error, and he
5   may testify to this if he takes the stand.  But the evidence is clear that Recology did not believe that
6   Porter was truthful and forthcoming about the rate error, and they terminated him for this concealment
7   and dishonesty.  This is highly probative as to Porter's character for truthfulness, and is therefore
8   admissible on cross-examination.

9   Defendant Porter argues that even if the Court allows some limited cross-examination of Porter
10  on the rate error, it cannot introduce evidence that a defendant was suspended or disciplined for the
11  conduct that is the subject of impeachment, citing *United States v. Davis*, 183 F.3d 231, 257 n. 12 (3d
12  Cir. 1990, *citing* Fed. R. Evid 608 advisory committee note to the 2003 amendments).  *Davis*, however,
13  reflects the minority view of Circuits that have addressed this issue.  For example, in *United States v.*
14  *Dvorkin,* the Seventh Circuit held that the district court had erred in failing to allow a witness to be
15  questioned regarding a decision by the Illinois Secretary of State to bar him from selling securities
16  because of misconduct.  799 F. 3d 867, 883 (7th Cir. 2015), *quoting United States v. Holt*, 486 F.3d 997,
17  1002 (7th Cir. 2007) (Rule 608 "does not mandate the prohibition of questions regarding the punishment
18  imposed on a witness for a given course of conduct.").  Multiple other circuit courts have reached the
19  same conclusion.  *See United States v. Ruiz*, 579 F.2d 670 (1st Cir. 1968) (policemen may be
20  interrogated about their disciplinary record in order to show possible bias); *United States v. Bright*, 588
21  F.2d 504 (5th Cir. 1979) (character witness for a defendant lawyer may be cross-examined about
22  disciplinary action against lawyer); *United States v. Whitehead,* 618 F.2d 523, 529 (4th Cir.1980).

23  Recology determined that Porter was dishonest by not fully and truthfully disclosing to the
24  company a monumental error in the rates Recology was charging the residents of San Francisco, an error
25  so significant the company was forced to refund residents of the City of San Francisco $94.25 million.
26  Such dishonesty by defendant Porter is clearly probative of his character for truthfulness, and the
27  government is entitled to cross examine him on his termination and the facts surrounding that
28  termination if he chooses to take the stand.

### C. Opposition to Motion in Limine No. 3: There is No Basis To Exclude Government's Proposed Exhibit 95 (the 1/28/2020 Email From Porter "Let's hold off approving this for now."

Defendant Porter has moved *in limine* to exclude the government from introducing an email sent by the defendant on January 28, 2020, the day Mohammed Nuru's arrest became public. *See* Dkt. 89 (Def.'s Motions in Limine), at 13-14. In that email, defendant Porter directs two of his subordinates, writing: "let's hold off on approving this for now" referring to payments Recology was scheduled to make shortly to a non-profit, the Clean City Coalition, at the request of Mohammed Nuru. *Id.* Defendant Porter claims that this email was sent during a meeting with Recology's general counsel, and claims, wrongly, that this is a meeting a "over which Recology has claimed privileged that the government has chosen not to contest." *Id.* Defendant's implication is that he was acting at the advice of counsel when he sent the email, and therefore, the communication is privileged.

First, Recology has specifically <u>not</u> claimed privilege over this email, or the communications therein. In April 2020, Recology was served with a grand jury subpoena, and produced voluminous amounts of documents to the government in response. *See Ward Decl.,* ¶ 2. On January 22, 2021 the government served Recology with a second subpoena, and again, it produced voluminous numbers of documents in response. *Id.* On May 14, 2021, counsel for Recology sent the government a "claw-back" letter and a privilege log, requesting that the government "return" and otherwise delete documents over which Recology was asserting a privilege claim. *Id.* ¶ 3. In its privilege log, Recology claimed that the documents it was seeking to claw back were documents related to actions and communications following a February 3, 2020 email from the company's general counsel. Recology's privilege log makes no mention of a privileged January 28, 2020 meeting and makes no related privilege claim. *Id.* And subsequently, Recology counsel has specifically made clear to the government that it is not claiming privilege over the email that defendant seeks to exclude. *Id.* ¶¶ 4, 5. To the contrary, Recology has been explicit in that it is not asserting privilege over that email. *Id.*

The burden of establishing that the attorney-client or attorney work product privilege applies rests with the party asserting the privilege. *United States v. Blackman,* 72 F.3d 1418, 1423 (9th Cir.1995). Defendant Porter cannot meet that burden here because, first, it is not his privilege to assert. It is well-settled that a corporation's attorney-client privilege belongs to the corporation, not to

executives or employees of that corporation. *Upjohn v. United States*, 449 U.S. 383, 389–90 (1981); *United States v. Place*, 913 F.2d 1375, 1381 (9th Cir. 1990) (privilege is held by the corporation and is not the employees to assert). An officer or employee of a corporation may not assert privilege on communications he may have had as a representative or employee of the corporation. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 349 (1985) ("Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."); *accord Citibank, N.A. v. Andros,* 666 F.2d 1192, 1195 (8th Cir.1981). Furthermore, an employee cannot prevent a corporation from waving privilege if it so chooses. *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997) (holding that an employee typically may not prevent a corporation from waiving privilege); *see also Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 n.5 (8th Cir. 1978) (*en banc*) ("Ordinarily, the privilege belongs to the corporation and an employee cannot himself claim the attorney client privilege and prevent disclosure of communications between himself and the corporation's counsel if the corporation has waived the privilege.").

Because defendant Porter knows that it is Recology that holds the privilege over the corporate communications of its officers and employees, including the defendant's communications while he was a senior executive at Recology, he seeks to create a convoluted claim that admitting the January 28, 2020 email is unfairly prejudicial because he cannot then admit later communications over which Recology may have claimed privilege. *Dkt. 89.* Defendant Porter claims that these later documents would help explain that the January 28, 2020 document is also privileged. *Id.* Defendant claims this violates the Rule of Completeness, and out of fairness, the January 28, 2020 email must be excluded. *Id.* Defendant Porter argues that "the Court should not allow the government to use the attorney-client privilege as a sword to introduce Mr. Porter's email by itself in violation of the Rule of Completeness, and a shield to exclude other documents and statements that would put Mr. Porter's email in context and avoid misleading the jury." *Dkt. 89,* at 15-16

Defendant's reasoning doesn't hold up. Defendant Porter wants to claim that he was acting at the direction of counsel when he sent the email on January 28, 2020. But Recology is not claiming that Porter was in fact acting at the direction of counsel, and as a legal matter, it is for Recology to say

whether communications are privileged or not. Because Porter was not acting at the direction of counsel when he sent his January 28, 2020 email, and the communication is not privileged, the introduction of other emails that may be privileged because Porter was acting at the direction of counsel *at a later time* have no relevance here, and are no basis to exclude the January 28, 2020 email.

Defendant's email on January 28, 2020 is relevant and admissible statements of a party opponent, being introduced by the government to show Porter's state of mind and actions following the arrest of Mohammed Nuru, particularly as it relates to Recology's fundings for non-profits. Porter is charged with Bribery and Honest Services Fraud for other payments he approved to be paid to Nuru, also at Nuru's request, also funneled through a (different) non-profit. So, his reaction to Nuru's arrest, and his instruction to "hold off" on payments to a non-profit that were also made at Nuru's request, are highly relevant to Porter's state of mind. As such they are admissible statements of a party-opponent. They are not privileged. Defendant has no valid basis to exclude them.

### D. Opposition to Motion in Limine No. 4: There is No Basis To Exclude Evidence Related to the Charged Conspiracy, Even if Not Specified in the Superseding Indictment

Defendant Porter seeks to bar the government from introducing evidence at trial that defendant Porter, working with co-conspirator Paul Giusti, approved a $14,000 payment to fund an internship for Mohammed Nuru's son, and concealed and misrepresented that payment as a donation for a "Summer Youth Program" to the non-profit Asian Pacific American Community Center. *See Dkt. 89* (Def. Motions in Limine), at 16-17. Defendant Porter claims, wrongly, that the government abandoned this evidence when it filed a Superseding Indictment. *Id.*

The government has charged defendant Porter with participating in a wide-ranging conspiracy to deprive the residents of the City and County of San Francisco of the honest services of Mohammed Nuru, then the Director of the San Francisco Department of Public Works, through a stream of bribes and kickbacks. *See Dkt. 67* (Superseding Indictment). The Superseding Indictment alleges that defendant Porter and co-conspirators "helped direct a stream of benefits from Recology to Nuru or his designees, including payments for parties Nuru organized, along with meals, drinks, and other things of value to Nuru. The purpose of this stream of payments and benefits was to influence Nuru to act in Recology's favor as opportunities arose, and to have Nuru take official action and exercise official

influence in Recology's favor in exchange for such payments and benefits." *Id.* ¶ 7.

Defendant Porter claims that because the payment for Nuru's son's internship was not specifically enumerated in the Superseding Indictment, it cannot be presented at trial as a part of the charged honest services fraud conspiracy. This is incorrect. An indictment need only be "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The United States is not required to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972). As the Court correctly noted in denying defendant's motion for a bill of particulars, "[a] defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case." Dkt. 79, citing *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (citation omitted) (emphasis in original). Specifically to this motion, there is no requirement in conspiracy cases that the government even disclose all of the overt acts in furtherance of the conspiracy. *See United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979), *citing United States v. Murray*, 527 F.2d. 401, 411 (5th Cir. 1976); *United States v. Armocida*, 515 F.2d 49, 54 (3d. Cir. 1975); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975).

But the Court need not even reach the determine whether the Superseding Indictment or discovery provided adequate notice, such that defendant Porter was given fair and timely notice of the allegations regarding the payments of Mookie Nuru's internship, because the government specifically disclosed this to the defendant last February. As defendant Porter concedes in his Motion *in Limine*, on February 13, 2023, government counsel emailed defendant's counsel the following:

> In your motion for a bill of particulars, you asked whether the government considered the paid internship for Mookie Nuru at Recology, and a Recology-funded internship for Mookie Nuru at APACC, to be part of the honest services fraud scheme. While the government is not required to disclose at this point every piece of evidence it may use at trial, because you specifically inquired, *we wanted to let you know that we do see those payments as part of the charged honest services fraud scheme and conspiracy*. Specifically, it is part of the stream of benefits directed at Mohammed Nuru as referenced in paragraph 7 of the Superseding Indictment. It is also referenced specifically in paragraph 8 of the original Indictment. As part of the government's Rule 16 discovery last fall, you were provided with the relevant documents and witness testimony summaries currently in the government's possession regarding these internships. If and when we obtain additional evidence, that will be disclosed to you promptly.

*See Dkt. 89, Declaration of Robb Adkins., Ex. J (Ward Email) (Emphasis added).*

Defendant Porter next claims that the evidence of payments by Recology to fund internships for the son of Recology's regulator should be excluded because there is no evidence that Porter had any involvement in approving the payments or was aware that any payments would be used to fund the internship for Nuru's son. *Dkt. 89,* at 17.

This is wrong in several respects. First, contrary to defendant Porter's claim, there is evidence of defendant Porter's knowledge that Recology was paying to fund Nuru's son's internship at APAC, including Porter's approval of one of the APACC invoices. The government has produced in discovery a copy of an invoice from APACC for $14,000, falsely labeled as a payment for a "Summer Youth Intern Program for 2018." *See Ward Decl.,* ¶ 7, Ex A. The invoice clearly includes a hand-written signature of defendant Porter approving the payment. *Id.*[1]

The government expects to prove at trial that defendant Porter approved this $14,000, knowing that the funds were being used to fund an internship for Nuru's son, and did so at the very time that Porter and others at Recology were seeking Nuru's approval for a multi-million increase in the "tipping fees" that San Francisco DPW (then led by Nuru) was paying Recology for accepting city asphalt and cement for recycling.

Finally, defendant claims that even if payments to Nuru's son could be considered part of the overall honest services fraud scheme and conspiracy, it should nonetheless be excluded because they are unduly prejudicial under Fed. R. Evid. 403, because they were acts committed by others. *Dkt 89* ("the alleged crimes of others have no probative value on Mr. Porter's guilt or innocence in this matter.").

But even if some of the payments to Nuru's son for an internship occurred without Porter's knowledge or approval, he is charged in a conspiracy. The Superseding Indictment alleges a conspiracy to commit honest services fraud, beginning "on a date unknown, but no later than December 2016, and continuing until on or about January 28, 2020." *Dkt. 67*. It is well-settled that a conspirator who joins an existing conspiracy is bound by the prior acts and statements of his co-conspirators. *See United*

---

[1] Defendant Porter also produced a version of this invoice as an attachment to his Motions in Limine, but only produced the copy that did not include defendant Porter's signature. *See Dkt. 89* (Def.'s Motions in Limine).

*States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984) (defendant who joins pre-existing conspiracy is bound by the prior acts and statements of co-conspirators); *Seguro-Gallegos*, 41 F.3d 1266, 1272 (9th Cir. 1994) (approving introduction of co-conspirator statements made prior to defendant joining conspiracy as overarching evidence of the conspiracy; *United States v. Barksdale-Contreras*, 972 F.2d 111, 114 (5th Cir. 1992) (joinder into existing conspiracy "does not bar [the defendant] holding them responsible for the prior acts [of co-conspirators]."

The payments to fund Mookie Nuru's internships – at Recology and through an unrelated non-profit – are part of the stream of benefits the government alleges were paid to influence Nuru to act in Recology's favor. They are part of the honest services fraud scheme. The defendant has full discovery, and has been on notice that these payments were pat of the alleged scheme since February 2023 via an explicit email, as well as long before the Superseding Indictment was filed because the allegations regarding the Mookie Nuru internship were contained in the original Complaint and Indictment. There is no basis to exclude them. Defendant's motion should be denied.

### III. CONCLUSION

For all the foregoing reasons, the Court should deny defendant's Motions *in Limine*.

DATED: April 25, 2023

Respectfully submitted,

STEPHANIE M. HINDS
Attorney for the United States

_/s/_
DAVID J. WARD
ILHAM A. HOSSEINI
Assistant United States Attorneys